

KC **FILED**

NOV 0 8 2007
NOV 0 8 2007
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

North Shore Sanitary District for the use
and benefit of Great American Insurance
Company,

        *Plaintiff*

      v.

Travelers Casualty and Surety Company
of America,

        *Defendant.*

**07CV6322
JUDGE ZAGEL
MAGISTRATE JUDGE COX**

## COMPLAINT ON SURETY BOND

Plaintiff, North Shore Sanitary District for the use and benefit of Great American Insurance Company ("Great American"), by its attorneys, Jennifer A. Nielsen and Ryan A. Hiss of Lyman and Nielsen, for its complaint against Defendant, Travelers Casualty and Surety Company of America ("Travelers"), states as follows:

### BACKGROUND, JURISDICTION AND VENUE

1.    Plaintiff, Great American, is an Ohio Corporation, licensed to transact business in the State of Illinois, having its principal office in Cincinnati, Ohio.

2.    Defendant, Travelers, is a Connecticut Corporation, licensed to transact business in the State of Illinois, with its principal office in Hartford, Connecticut.

3.    Performance of the contracts forming the basis of this lawsuit by Great American took place in Lake County, Illinois.

4.    This is an action by Great American on the payment bond submitted by Joseph J. Henderson & Sons, Inc. ("Contractor") to the North Shore Sanitary District ("Owner") pursuant to

the Illinois Public Construction Bond Act, 30 ILCS 550/1 and 550/2, in connection with the project known as the North Shore Sanitary District Zion Township Sludge Recycling Facility located in Zion, Lake County, Illinois ("Project").

5.      The amount in controversy in this Complaint exceeds $75,000.00

6.      This Court has jurisdiction pursuant to 28 U.S.C.A. §1332(a)(1).

7.      Venue is proper in this Court pursuant to 28 U.S.C.A. §1391(a)(2).

### GREAT AMERICAN'S PERFORMANCE

8.      On information and belief and on a date unknown to Plaintiff, Contractor entered into a contract with the Owner to do certain general construction work on the Project.

9.      By contract dated March 26, 2004, Contractor entered into a subcontract with Interstate Welding & Fabrication, Inc. ("Interstate") to perform certain structural steel and miscellaneous metal work required by Contractor under its contract with the Owner in the amount of $2,400,000.00. Interstate's subcontract is attached hereto as **Exhibit A.**

10      Great American issued a Performance and Payment Bond as Surety, with Interstate as Principal and Contractor as Obligee in the principal amount of Interstate's subcontract ("Interstate's Bond").

11.     Interstate performed certain work in connection with the Project under its subcontract with Contractor and was paid certain amounts under its subcontract.

12.     Contractor terminated Interstate and made a demand under Interstate's Bond to complete Interstate's subcontract work on the project.

13.     Contractor and Great American entered into a Takeover Agreement under which Great American agreed to complete or procure the performance of Interstate's subcontract work pursuant to the terms of Interstate's subcontract. A copy of the Takeover Agreement is attached

hereto as **Exhibit B.**

14.     Under the terms of the Takeover Agreement, Great American was entitled to all rights, title and interest of Interstate in the Subcontract, including payment from Contractor under Interstate's subcontract.

15.     Upon execution of the Takeover Agreement by Contractor, Great American caused work under Interstate's subcontract to be performed.

16.     Contractor failed to pay Great American monies due it for the completion of Interstate's subcontract and extra work ordered by Contractor in the amount of $420,969.89.

17      Great American performed all conditions on its part to be performed except those which were excused by Contractor's failure to perform its obligations.

18.     On February 9, 2006, Great American substantially completed all of Interstate's subcontract work and last performed work in connection with the project.

19.     There remains due and owing to Great American from Contractor the sum of $420,969.89.

20.     Despite demand for payment, Contractor failed and refused to pay Great American for the work Great American caused to be performed on the Project.

## CLAIM ON SURETY BOND

21.     Contractor and Travelers executed and delivered to the Owner a payment bond pursuant to the Public Construction Bond Act 30 ILCS 550/0/01 *et seq*, a copy of which is attached hereto as **Exhibit C** and incorporated herein by this reference.

22.     Great American caused a verified notice of a bond claim to be delivered to the Owner, Contractor and Travelers. A copy of Great American's notice is attached hereto as **Exhibit D.**

23.     The Public Construction Bond Act states at 30 ILCS 550/1 as follows:

The principal and sureties on the bond agree that all the undertakings, covenants, terms, conditions and agreements of the contract or contracts entered into between the principal and the State or any political subdivision thereof will be performed and fulfilled and to pay all persons, firms, and corporations having contracts with the principal or with subcontractors, all just claims due them under the provisions of such contracts for labor performed or materials furnished in the performance of the contract, on account of which this bond is given, when such claims are not satisfied out of the contract price of the contract on account of which this bond is given, after final settlement between the officer, board, commission or agent of the State or of any political subdivision thereof and the principal has been made.

24.    There remains due and owing to Great American from Travelers the sum of $420,969.89 under the Payment Bond provided by Travelers in connection with the Project.

WHEREFORE, Plaintiff, Great American Insurance Company, claims the following relief:

A.    that an accounting be taken as to the amount due to Plaintiff and the Defendant, Travelers, be decreed to pay the same to Plaintiff within a short date certain;

B.    that Defendant, Travelers, be ordered and adjudged to pay Plaintiff the sum of $420,969.89 with interest thereon from a date fixed by this Court;

C.    for such other and further relief as this Court deems just and proper

Great American Insurance Company

By: _____
Jennifer A. Nielsen, One of its Attorneys

**EXHIBITS ATTACHED**

A.    Interstate Subcontract
B.    Takeover Agreement
C.    Travelers Bond
D.    Bond Claim

Jennifer A. Nielsen
Ryan A. Hiss
Lyman & Nielsen
1301 West 22nd Street, Suite 914
Oak Brook, IL 60523
Tel:630/575-0020
Fax:630/575-0999
Attorney No. 6224821



| Subcontract Number: | 1080-00-05-101-03 |
| --- | --- |

This Subcontract is made as of the    26    day of    March , 2004    , between

**Contractor:** JOSEPH J. HENDERSON & SON, INC., P.O. BOX 9, 4288 OLD GRAND AVE., GURNEE, IL 60031

and

**Subcontractor:** Interstate Welding & Fabrication Inc
1670 East Davis Drive
Terra Haute, IN 47802

*8146*

**Federal I.D. No.:** 35-1270463    **Phone:** 812-232-0474    **Fax:** 812-234-6641

The Contractor and Subcontractor agree as set forth below:

## ARTICLE 1 - INFORMATION AND DEFINITIONS:

This Subcontract is based on the following entities, definitions and subject matter:

**Project:** NSSD Zion Twp Sludge Recycling Fac.
Southwest Corner of , Greenbay and 9th Street, Zion, IL 60099

**Owner:** North Shore Sanitary District
PO Box 750, William Koepsel Drive, Gurnee, IL 60031

**Architect:** Donohue & Associates
4343 South Taylor Drive, Sheyboygan, WI 53081

SCANNED

JUL 2 3 2004

By_____

**Subcontract Amount:** $2,400,000.00

**Billing Requirements:** See Attached Rider B

**Retainage:** 10 %

**Subcontractor's Work:** Provide all required labor, equipment, and materials necessary to perform all structural steel and miscellaneous metals work complete in accordance with the Contract Documents.
See attached Rider C for further scope definition.

**Schedule Requirements:** Will be forwarded

**Bond Requirements:** Provide 100 % performance and payment bond.

**Subcontract Riders:** A. Insurance Requirements
B. Billing Requirements
C. Detailed Work Scope - See Attached Rider C

**Subcontract Exhibits:** A. Contractor's Equal Employment Opportunity Statement
B. Certificate of Insurance (example) & Additional Insured Endorsement (examples).
C. Waiver & Affidavit Completion Instructions with sample & forms.



RECEIVED
MAR 2 9 2004
I. W. F., INC.



RECEIVED
JUL 2 3 2004
I. W. F., INC.

14.2    Subcontractor will use best efforts to cooperate with the Contractor and any other affected parties to resolve any jurisdictional disputes that may arise during the prosecution of the Subcontractor's Work, and shall abide by the procedures contained in and any decisions rendered under any applicable plan for settlement of jurisdictional disputes. Subcontractor shall, in all cases, continue to work while any jurisdictional dispute remains unresolved.

14.3    Subcontractor shall work in harmony with Contractor and all other subcontractors to assure that no labor disputes of any kind involving the Contractor, Subcontractor or any other contractors, subcontractors or sub-subcontractors, or their respective employees or agents shall occur or be manifested on the Project, and Subcontractor shall only employ persons on the Project who will work at all times in harmony with other persons and trades employed on the Project. If Subcontractor has labor agreements with any organized labor unions, Subcontractor shall work in harmony with any and all contractors, subcontractors or sub-subcontractors who employ personnel that are not represented by an organized union.

14.4    Subcontractor shall not be relieved of its obligations under this Subcontract by any work stoppage, slowdown or any other actions by its employees that cause, create or aggravate any interference, delay, suspension or other form of impairment to performance or completion of any work by any person on the Project. If any such work stoppage, slowdown or any other action does occur due to any type of labor dispute or a picket line established for any reason, Subcontractor shall immediately adopt any and all measures (including, but not limited to, a separate gate) as necessary to eliminate and avoid delay or disruption to the Subcontractor's Work or any other work of others at the Project. If a labor dispute involving the Subcontractor does occur and, in the judgment of Contractor or Owner, such dispute causes or threatens to cause delay or disruption to the orderly and efficient progress of construction, then such occurrence shall be deemed a default hereunder and just cause for termination of this Subcontract or other action or remedy permitted by the Contract Documents or applicable laws.

This Subcontract shall become effective on the date stated on the first page hereof. Any acceptance by Subcontractor purporting to add, delete or otherwise alter the terms stated herein as submitted by Contractor shall have no force or effect except as otherwise separately and expressly agreed upon in writing by Contractor.

| | | | |
|---|---|---|---|
| Contractor: | Joseph J. Henderson & Son, Inc. | Contractor: | Interstate Welding & Fabrication Inc |
| By (Signature): | _William Marshalla_ | By (Signature): | |
| (Printed): | William Marshalla | (Printed): | MATT VAN DIEKINGEN |
| (Title): | Senior Project Manager | (Title): | Vice President |
| Date: | 3-26-04 | Date: | 7-1-04 |

The parties also agree to the terms as set forth in the attached 5/3/04 letter from Steven L. Jones.

BM
7-20-04

ARTICLE 2 - THE CONTRACT DOCUMENTS

2.1    The Contract Documents consist of this Subcontract and all Riders and Exhibits listed or referred to herein, plus all other documents that form or govern the Prime Agreement between Contractor and Owner, and any items defined as Contract Documents therein. The Contract Documents may include, without limitation, general, supplementary and other Conditions of the Contract, Drawings, Plans, Specifications, the Project Manual, accepted alternates, all Addenda issued prior to execution of this Subcontract, schedules, and all Modifications issued subsequent hereto. Except as otherwise specifically provided herein, the Contract Documents shall not include any proposal, bid or other submissions furnished by Subcontractor to Contractor prior to the date of this Subcontract.

2.2    The Contract Documents govern the Subcontractor's Work, including any such Work performed by Subcontractor prior to the effective date of this Subcontract. Subcontractor shall be bound to Contractor by all of the terms of the Contract Documents with respect to the Subcontractor's Work, and Subcontractor shall assume toward Contractor at least the same obligations that Contractor by the Contract Documents has assumed toward the Owner or other parties, including, but not limited to obligations pertaining to warranties, assumed risks, audits, records, cost and payment restrictions, labor relations, payment procedures, submittals, coordination, scheduling, working conditions, indemnification, changes and completion. Furthermore, Contractor shall, in addition to other rights and remedies provided by this Subcontract, have the same rights and remedies against Subcontractor that the Owner or any other party has against Contractor. Subcontractor has had an adequate opportunity to review and/or obtain copies of all currently existing Contract Documents and, in any case, Subcontractor shall not be excused from any provisions therein due to any lack of knowledge or understanding of the existence or contents thereof at the time of executing this Subcontract.

2.3    Contractor makes no representation or warranty concerning the acceptability, accuracy or completeness of any Contract Documents or other information and data prepared by persons other than Contractor or those for whose acts or omissions Contractor is responsible, and shall have no liability to Subcontractor in respect of any patent or latent defects, deficiencies, errors and omissions therein.

2.4    The Subcontractor shall perform no portion of the Subcontractor's Work at any time without Contract Documents and, where required, approved Shop Drawings, Product Data, Samples or other approved submissions. The Subcontractor shall keep at the Project site, for the Contractor's ready reference, one up-to-date copy of the Contract Documents, in good order and marked currently to record all changes made during construction.

2.5    The Contractor, Owner and Architect/Engineer may render interpretations and decisions concerning the proper execution or progress of the Subcontractor's Work, and any such interpretation, if given in good faith, shall resolve and take precedence over any ambiguity or other inconsistency within, between or among the Contract Documents. Interpretations are not Change Orders or Change Directives, and do not authorize any increase in the contract amount or contract time. If Subcontractor believes that an interpretation gives rise to a claim for an increase in the contract amount or contract time, Subcontractor must give notice pursuant to Paragraph 7.4 of this Subcontract in order to preserve its right to recover such increase.

2.6    The minimum quality and fitness of products and workmanship shall be based on the requirements that all Subcontractor's shall conform with the quality levels established by the Contract Documents and any decisions as to the acceptability of products or workmanship shall rest with the Contractor or other parties as provided by the Contract Documents. What is or has been usual or customary in a given trade or on other projects shall not limit, qualify or reduce the standards of quality, fitness and/or performance of products and workmanship established by or inferable from the Contract Documents.

2.7    The Contract Documents shall be deemed to include and require all items and aspects of labor, material, equipment, services and transportation incidental to or necessary for the proper execution and completion of the Subcontractor's work as it relates to the Project. The Contract Documents are complementary, and what is required by any one shall be as binding as if required by all. Work not specifically covered in the Contract Documents or which is subject to question and interpretation because of conflicts, duplications or ambiguities may, at Contractor's option, be required of Subcontractor if it is consistent herewith and is reasonably inferable therefrom as being necessary to produce the results intended by this Subcontract.

2.8    This Subcontract and the other Contract Documents shall be read to complement each other. In the event of an irreconcilable conflict between the terms of this Subcontract and terms stated in any other Contract Documents, the terms of the Subcontract shall govern. In all other circumstances of irreconcilable conflict, the term(s) which give greater rights

to the Contractor or impose greater or more extensive obligations on Subcontractor shall take precedence, at Contractor's option, without regard to the party or person who drafted the instrument wherein the term is stated.

2.9    This Subcontract and the Contract Documents contain the entire integrated agreement between the parties. Any executory agreement hereafter made shall be ineffective to change, modify or discharge this Subcontract in whole or in part, unless such executory agreement is in writing and signed by both Contractor and Subcontractor. All verbal or written negotiations, agreements and representations made or conducted by or between either party prior to the date of this Subcontract are hereby voided and shall not serve to supplement, vary or contradict the terms hereof.

## ARTICLE 3 - THE WORK

3.1    The Subcontractor's Work is described generally in Article 1. Such description is subject to any additional detailed descriptions that may be stated elsewhere in the Contract Documents. Such description supercedes any description or definition of the Subcontractor's Work contained in he Subcontractor's bid or proposal.

3.2    Subcontractor has examined the Contract Documents, acknowledges the Contract Documents to be suitable for said Subcontractor's Work and sufficient for their intended purposes, and agrees to perform the Subcontractor's Work and complete same in full and strict accordance therewith and to the entire satisfaction of Contractor, Owner and Architect/Engineer.

3.3    Subcontractor shall coordinate and schedule its Work to insure it is accomplished as an integrated whole with the work of Contractor, other subcontractors and separate contractors. Any labor, materials, equipment, machinery or services necessary to accomplish such integration shall be undertaken by Subcontractor as part of the Subcontractor's Work and at no additional cost to Contractor, whether or not explicitly shown or described in drawing or other Contract Documents. If part of Subcontractor's Work depends for proper execution or results upon construction or operations by the Contractor, Owner, another subcontractor or a separate contractor, the Subcontractor shall, prior to proceeding with that portion of the Subcontractor's Work, promptly report any discrepancies or defects in such other construction to Contractor. Failure to report any discrepancy or defect that was known to the subcontractor, or that could have been known through the exercise of reasonable diligence, shall constitute Subcontractor's acceptance of such other construction, and a waiver of any claims arising out of or relating to such discrepancy or defect.

3.4    All of Subcontractor's workmanship, materials, submissions, and samples shall be subject to the approval of Owner, Contractor and Architect/Engineer but such approval, if and when given, shall neither relieve Subcontractor of its obligations hereunder nor mitigate its liability to Contractor for failure to perform in accordance with the Contract Documents.

3.5    Subcontractor shall promptly comply with any directives issued by Contractor concerning locations where Subcontractor's Work is to be suspended, transferred or performed, the sequence of such Work, and the elements of Work to be executed in preference to other portions. Contractor is not, however, obligated to notify Subcontractor when to begin, cease or resume work, or to superintend the Subcontractor's Work so as to relieve Subcontractor of responsibility for any consequence of neglect or carelessness by Subcontractor or those for whose acts and omissions Subcontractor is responsible.

## ARTICLE 4 - COMMENCEMENT AND COMPLETION

4.1    Subcontractor shall adhere to any Schedule Requirements stated herein and, furthermore, shall commence all elements of Subcontractor's Work when and as directed by Contractor and diligently and continuously prosecute and coordinate such Work using such work forces, supervision, materials and equipment as required to insure that Contractor, other subcontractors and third parties will not be delayed, interrupted, hindered or disrupted by Subcontractor's activities or operations and to insure completion of the work for the Project within the time specified by any construction schedule dates and/or milestones now or hereafter established in accordance with this Subcontract or other Contract Documents.

4.2    Time is of the essence of this Subcontract and any breach of same shall go to the essence thereof. If, in the opinion of the Contractor, the Subcontractor is behind schedule in its Work or fails, without cause, to maintain progress of its Work to conform to the general progress and sequence of all work for the Project, Subcontractor shall, at its own expense, perform any overtime work, use extra labor, and undertake all other means necessary to bring its Work back into conformity therewith.

4.3    Initial or revised Project schedules may, from time to time, be issued by Contractor or other parties to schedule and

participate and cooperate in scheduling the times and sequences required in Subcontractor's area of Work and shall perform such Work in accordance with any such schedules. Subcontractor shall continuously monitor current schedules and advise Contractor of the status of Subcontractor's progress in respect thereto as requested. In addition, Contractor, Owner and Architect/Engineer shall have free and open access to any other locations on or off the site of the Project where any part of the Subcontractor's Work is being performed, and may observe, test and inspect any element of such Work during the course of construction, fabrication or assembly of same. Subcontractor shall fully cooperate in connection with all such observations, tests and inspections. Further, Subcontractor shall afford Contractor's separate subcontractors reasonable opportunity for introduction and storage of their materials and equipment for execution of their work.

4.4    Subcontractor shall immediately notify Contractor of any circumstance that may affect the times and sequences in the schedule, and shall submit all notices, claims and requests for extensions of time in writing to Contractor pursuant to Paragraph 7.4 of the Subcontract.

4.5    Subcontractor shall prepare and submit periodic written work reports in such form and at such times as Contractor may prescribe. A representative of Subcontractor shall attend all meetings scheduled by Contractor or other third parties for the purpose of scheduling and coordinating work for the Project, and any such representative attending any such meeting shall be conclusively deemed to have the authority to bind Subcontractor during the course thereof.

4.6    If Subcontractor refuses or neglects to supply an adequate quality or quantity of workers, supervision, materials, equipment, services or facilities, or fails in any respect to prosecute the Subcontractor's Work with promptness, diligence and in accordance with the Contract Documents, or fails to perform and fulfill any other obligations arising thereunder, Contractor may upon 48 hours written notice to Subcontractor, and without prejudice to any other remedy Contractor may have, take such steps as Contractor may, in good faith, deem advisable, necessary or expedient to correct or otherwise address such refusal, neglect or failure. Contractor may deduct any cost incurred for such corrective action, including a reasonable allowance for overhead and profit, from any money due or thereafter to become due from Contractor to Subcontractor. Any such refusal, neglect or failure by Subcontractor shall also constitute grounds for default termination by Contractor as provided by Article 12.

4.7    Subcontractor shall be liable for all costs and damages sustained by Contractor as a result of any unexcused delay or other failure by Subcontractor or those persons for whom Subcontractor is responsible to prosecute and complete Subcontractor's Work as prescribed by the Contract Documents, including, without limitation, any actual or liquidated damages assessed against Contractor by the Owner, separate contractor or other party. If any period of delay or disruption is caused, in whole or in part, by the concurrent acts, omissions or neglect of the Subcontractor and Contractor, other subcontractors, or other third parties, a proportionate share of the damages sustained by or assessed against Contractor, including liquidated damages, may be assessed by Contractor against Subcontractor.

4.8    It is contemplated that Subcontractor's performance under this Subcontract may be delayed, accelerated suspended, hindered or disrupted (a) by acts or omissions of the Owner, Contractor, Architect/Engineer, other subcontractors and other parties involved with the Project, or (b) by other circumstances not caused by or within the control of Subcontractor and recognized by the Contract Documents as excusable conditions justifying extension of the time afforded for performing and completing Subcontractor's Work. In such cases, Subcontractor may request an extension of time for performance and completion of the Subcontractor's Work. Any such request must be made in writing, pursuant to Paragraph 7.4 of this Subcontract. The extension of time to which Subcontractor may be entitled under this Paragraph shall under no circumstances exceed the extension of time granted to Contractor. Furthermore, such time extension shall be Subcontractor's sole and exclusive remedy in respect of its Work being delayed, accelerated suspended, hindered or disrupted. Accordingly, Subcontractor shall not be entitled to recover any damages or additional compensation of any type whatsoever as a consequence thereof, notwithstanding the nature of the circumstances giving rise thereto or the extent or duration thereof, any and all such circumstances and consequences being within the contemplation of the parties.

4.9    Contractor may, at any time, schedule and direct Subcontractor to perform Subcontractor's Work using multiple crews or shifts, or on an overtime basis. If overtime work is directed and such work is not required due to Subcontractor's acts, omissions or delays, Contractor shall pay the cost of the premium time only, without overhead or profit, and Subcontractor agrees to accept such portion in complete settlement of any and all claims for damages, loss, cost or expense caused by or in any way related to overtime conditions or directives, including, but not limited to, costs for owned or rented machinery or equipment. As a condition to its right to payment under this Paragraph, Subcontractor shall keep and present a satisfactory and verifiable accounting of compensable overtime labor costs, with appropriate supporting documentation as required by Contractor.

4.10   All materials and labor shall be furnished at such time as shall be for the best interests of the Contractor and all subcontractors concerned to the end that the combined work of all may be properly and fully completed in accordance with scheduling and coordination requirements for the Project.

## ARTICLE 5 - PAYMENT

5.1   As full consideration for complete and timely performance of the Subcontractor's Work and for all obligations and conditions undertaken and risks assumed by Subcontractor in connection therewith, Subcontractor shall be paid the Subcontract Amount stated in Article 1.  The Subcontract Amount shall be the total sum paid to Subcontractor, except as may be amended by Change Order as provided herein.

5.2   The Subcontract Amount includes all allowances stated in the Contract Documents for the Subcontractor's Work, if any. Items covered by these allowances shall be supplied for such amounts and by such persons as the Contractor may direct. Unless otherwise provided in the Contract Documents, allowances shall cover the cost to the Subcontractor, less any applicable trade discount, of the materials and equipment required by the allowance delivered at the site, and all applicable taxes. Costs for unloading and handling on the site, labor, installation, overhead, profit and other expenses associated with items covered by allowances are included in the Subcontract Amount and no additional compensation shall be paid to Subcontractor therefor. Whenever the actual cost of the materials and equipment delivered at the Site is more than or less than the allowance, the Subcontract Amount shall be adjusted accordingly by Change Order.

5.3   Subcontractor shall submit to Contractor a schedule of values of the various parts of the Subcontractor's Work aggregating the total sum of this Subcontract. Such schedule of values must be submitted to and approved by Contractor as a condition precedent to Subcontractor's right to apply for or receive any payments hereunder, and shall be in such form, and contain such detail and categories for Work, as Contractor may prescribe. The schedule of values, as approved by Contractor, shall be used as a basis for applications for payments, unless later found by Contractor to be in error. If requested by Contractor, Subcontractor shall also furnish a sworn list of sub-subcontractors and material suppliers intended to be used by Subcontractor for any part of the Subcontractor's Work.

5.4   Except as otherwise provided herein, and provided Subcontractor is not in default hereunder, progress payments will be made to Subcontractor on a monthly basis for Subcontractor's Work performed through the preceding month. The amount of an interim or final payment to Subcontractor shall not exceed the value of labor and materials incorporated by Subcontractor in the Subcontractor's Work as of the date of the application for payment, less retainage thereon to be withheld therefrom in such percentages as may be provided in this Subcontract, and less the aggregate of previous pay applications. Furthermore, the amount of a progress payment shall not exceed the percentage of completion allowed to Contractor by Owner for the Subcontractor's Work, less the specified retainage.

5.5   Payments shall not become due to Subcontractor for any portion of its Work unless and until Contractor receives payment for such portion of Work from Owner and the amount due shall not exceed the net amount actually received by Contractor as applicable to Subcontractor's Work after deducting Contractor's profit and overhead margin. Such receipt of payment by Contractor is intended as a condition precedent to any obligation of the Contractor or its surety to pay Subcontractor and Subcontractor accepts the risks associated with such contingency.

5.6   Subcontractor's applications for payments shall be submitted in strict conformity with any Billing Requirements set forth herein or as otherwise prescribed by Contractor. Each application shall be submitted on such forms as Contractor may prescribe, and shall be accompanied by breakdown data and other documentation as necessary to permit checking and verification of amounts properly payable to Subcontractor on account of Subcontractor's Work.

5.7   If the Contract Documents permit payment for materials, machinery or equipment not incorporated into Subcontractor's Work, but delivered and suitably stored on or off the site of the Project, Subcontractor shall, as a condition to its right to receive any such payment, provide all certificates, documents of title, insurance coverages and other items prescribed by the Contract Documents to establish, ensure and protect Contractor's or Owner's title and right of possession and access to any such materials for which payment is being sought.

5.8   Subcontractor shall promptly pay for all materials, machinery, equipment and labor used in, or in connection with, the performance of this Subcontract, and no interim or final payments shall become due until Subcontractor has furnished affidavits, waivers, releases, certificates, or other evidence satisfactory to Contractor to establish that Subcontractor has paid for or discharged all actual or prospective claims and liens in respect of such materials, machinery, equipment and labor.

statement identifying all sub-subcontractors, materialmen and laborers engaged or employed by Subcontractor to furnish labor, materials, equipment or services to or for the Project and the respective amounts claimed by each to be due and owing from Subcontractor, in which event the submission of such affidavit or statement shall be an additional condition to Contractor's obligations in respect of payment to Subcontractor hereunder.

5.9     Payments otherwise due to Subcontractor may be withheld by Contractor upon the existence or reasonable belief of Contractor concerning the existence or probability of (i) uncorrected defective or non-conforming Work, (ii) claims or liens filed, (iii) Subcontractor's failure or neglect to make payments properly due to its sub-subcontractors or for materials, machinery, fuel or labor, or applicable taxes, fees and fringe benefits or (iv) reasonable doubt that the Subcontract can be completed for the balance then unpaid, (v) any other breach of this Subcontract or (vi) any other conditions specified elsewhere in the Contract Documents as grounds for withholding of payment. If the said causes are not removed, Contractor may, upon written notice, rectify the same at Subcontractor's expense and may make direct disbursement to unpaid claimants from payments withheld; however, the right of Contractor to make such direct payment shall not be construed to create a duty to do so. Contractor may offset against any sums due Subcontractor the amount of any liquidated or unliquidated obligations of Subcontractor to Contractor, whether or not arising out of this Subcontract.

5.10   No payment to Subcontractor shall operate as an approval of Subcontractor's Work, or any part thereof, or as a release of Subcontractor from any of its obligations under this Subcontract.

5.11   Amounts paid to Subcontractor prior to the date of this Subcontract for Work performed pursuant to a Letter of Intent or other interim authorization given by Contractor, if any, shall be applied against the Subcontract Amount.

5.12   Final payment of the unpaid balance of the Subcontract Amount shall not become due until and unless (a) Subcontractor's Work is fully completed and performed in accordance with the Contract Documents and is satisfactory to and approved by Owner, Contractor and Architect/Engineer, and (b) Subcontractor has delivered all manuals, record drawings, guarantees, and warranties for material, machinery and equipment furnished by Subcontractor, and testing and/or inspection results or reports applicable to Subcontractor's Work, and (c) delivery to Contractor of satisfactory evidence that all labor and material accounts incurred by Subcontractor in connection with his work have been paid in full, and (d) other submittals have been provided as prescribed elsewhere in this Article, and (e) Subcontractor has fulfilled all other requirements established by the Contract Documents to serve as conditions for final payment, and (f) Contractor has received full and final payment from Owner for such Work, which receipt of payment shall be a condition precedent to Contractor's obligation to make final payment to Subcontractor.

5.13   The making and acceptance of any sum tendered as final payment to Subcontractor shall constitute a waiver of any and all claims by the Subcontractor, excepting those claims previously made in writing and specifically identified as unresolved in the Subcontractor's application for final payment.

ARTICLE 6 - BONDS AND INSURANCE

6.1    If Bonds are required to be provided by Subcontractor as set forth in Article 1 or elsewhere in the Contract Documents, such Bonds shall name Contractor as obligee, and each such Bond shall be in a penal sum equal to the Subcontract Amount, and be executed on such form and with such surety as is acceptable to Contractor. The premium costs incurred for such Bond(s) shall be included in such Subcontract Amount.

6.2    If Bonds are not required as of the date of this Subcontract, the Contractor may nevertheless, by written notice to Subcontractor at any time before final completion and acceptance of Subcontractor's Work, require Subcontractor to provide the performance and/or payment Bonds in such penal sums as Contractor may determine to represent the value of Subcontractor's Work remaining to be performed, completed or corrected as of the date of the notice. If Subcontractor is not then in default under this Subcontract and no cause exists for withholding of payment to Subcontractor pursuant to Article 5, the premium costs for such bonds, excluding overhead and profit, will be added to the Subcontract Amount by Change Order; otherwise, such costs shall be paid by Subcontractor without increase in the Subcontract Amount.

6.3    Subcontractor shall have no right receive any payments under this Subcontract until and unless required payment and performance bonds are properly executed and furnished to Contractor, regardless of the status of the Subcontractor's Work or performance by Subcontractor.

6.4    Subcontractor shall maintain at its own cost, such insurance as will protect it from claims under the worker's compensation laws of the state in which the Subcontractor's Work is being performed and also public liability and property

the indemnification requirements and any claim, damage, loss or expense described in this Subcontract. Liability insurance shall be carried on an occurrence basis. Amounts and specific coverages for insurance to be provided hereunder shall be as required by the Contract Documents, as provided in any exhibit to this subcontract, or as otherwise separately agreed between the parties in writing. Such insurance shall provide coverage regardless of the negligent acts of any of the Owner, Contractor, Architect/Engineer, Subcontractor and sub-subcontractors and any of their respective officers, directors, consultants, agents and employees, and shall be endorsed to include the Owner, Contractor, Architect/Engineer, and their respective officers, directors, consultants, agents and employees as additional insureds. Prior to commencing the Subcontractor's Work, Subcontractor shall cause a Certificate of Insurance, with additional insured endorsements form attached naming the Contractor, Owner and Architect/Engineer as additional insureds, to be executed by one or more companies acceptable to Contractor and shall file a copy thereof with Contractor. Should Contractor request a copy of the actual policy from Subcontractor, the actual policy or copy thereof will be supplied to Contractor. Contractor may withhold payment to Subcontractor pending receipt of such Certificate in satisfactory form. Subcontractor shall provide primary coverage, Subcontractor will be solely responsible for the payment of any deductible and there will be no contribution by Contractor or from its insurance until the limits of Subcontractor's coverage have been completely exhausted.

6.5    Should Subcontractor fail or neglect to provide the required insurance, Contractor shall have the right, but not the duty, to provide such insurance and deduct the cost thereof from any money due to Subcontractor any and all premiums paid by Contractor for and on account of said insurance. The policy or policies shall further provide that the insurance will not be canceled or changed prior to at least 30 days after written notice by certified mail of such cancellation or change has been received by Contractor.

6.6    Contractor and Subcontractor waive all rights against each other, the Owner and Architect/Engineer, as those persons with whom they are in privity of contract, for damages caused by fire or other causes of loss to the extent covered by property insurance applicable to the Work for the Project, except such rights as they may have to proceeds of such insurance held by the Owner or other person as a fiduciary.

ARTICLE 7 - CHANGES

7.1    The Subcontractor's Work may at any time be modified in any respect by changes, additions or deletions directed by or on behalf of Owner or Contractor, and the Subcontract Amount and time for completion may be adjusted accordingly, by written Change Order or Change Directive in accordance with the Contract Documents.

7.2    The Contractor will provide Subcontractor with a written notice describing the change in the form of drawings or otherwise. In such case, the Subcontractor shall submit to Contractor a firm Change Order proposal for any adjustments in the Subcontract Amount and/or time for completion resulting from the proposed change. The proposal shall be submitted within such time limits prescribed by the Contractor and shall not thereafter be modified or withdrawn without Contractor's written approval. If the Contractor issues a written Change Directive for Subcontractor to commence performance of all or any portion of the change without a signed Change Order or other agreement concerning the amount of adjustments, if any, in the Subcontract Amount or time for completion, the Subcontractor shall promptly proceed with the change as directed, in which case said adjustments shall be determined in accordance with terms, limitations and procedures established elsewhere in the Contract Documents.

7.3    No alterations, increases or decreases shall be made in the Subcontractor's Work as shown or described by the Contract Documents except as specifically authorized by a written Change Order or Change Directive signed by a duly authorized representative of Contractor. Subcontractor shall have no claim for additional, extra or changed Work unless such Work is undertaken in pursuance of such written signed Change Order or Change Directive. Any Work performed without such written Change Order or Change Directive will be at Subcontractor's sole risk and expense.

7.4    Except as otherwise provided by Paragraph 7.2 in respect of changes in the Subcontractor's Work proposed by Contractor, Owner or other third parties, in all circumstances whereby Subcontractor desires to preserve the right to claim or recover an increase in the Subcontract Amount, recovery of costs or damages or extension of time, Subcontractor shall, as a condition to such right, give Contractor written notice thereof (i) within ten (10) days after the first occurrence of the event giving rise to such claim, or (ii) at least ten (10) days before the date when Contractor is required by the terms of the Contract Documents to provide the same or similar notice to Owner or other third party, whichever occurs first. The notice shall particularly set forth the event(s) or fact(s) supporting and giving rise to such claim, the cost thereof and the time extension requested, if any. In no event shall Subcontractor prevail upon any monetary claim or request for extension of time in connection with any individual or cumulative changes, matters, circumstances or conditions that have

previously been addressed by a Change Order or written contract modification executed between the parties. It is further expressly agreed that under no circumstances shall any failure or delay in giving such notice be excused, and no reservation of rights to make or submit a claim at a later date shall be effective to preserve the claim if not timely and properly made in accordance with this Paragraph. The provisions of this Paragraph shall not be deemed to establish or enhance any rights and/or remedies otherwise excluded by other provisions of this Subcontract or the Contract Documents.

7.5   The sums payable to Subcontractor for changes in Subcontractor's Work shall be calculated according to Rider B, unless otherwise provided in the Contract Documents. In no case shall compensation for changes in Subcontractor's Work include an allowance for profit and overhead in excess of ten percent (10%).

7.6   Subcontractor shall, in respect of changes ordered by Contractor, including but not limited to disputed Change Directives, submit labor, time and other appropriate records to Contractor for review on a daily basis. Such records shall accurately describe all work performed in compliance with the Change Directives in such detail as necessary to permit Contractor to verify Subcontractor's costs for performing such work. Signature of Contractor's representatives upon such records shall be solely for the purpose of confirming review thereof and shall not itself constitute an agreement by Contractor to make payment to Subcontractor.

7.7   If Owner, Contractor or Architect/Engineer disputes the validity or amount of a Change proposal or claim submitted by Subcontractor or if a dispute exists between Subcontractor and Contractor concerning whether Work entitles Subcontractor to additional compensation but Contractor nevertheless directs Subcontractor to proceed with the disputed work, Subcontractor shall promptly commence, prosecute and complete such Work pending resolution of the dispute.

7.8   Only representative(s) specifically designated by Contractor in writing shall have the authority on behalf of Contractor under this Subcontract to make economic decisions affecting Subcontractor to direct the actions of Subcontractor, to authorize changes in the Subcontractor's Work and to issue Change Orders or otherwise modify the terms of this Subcontract. No officer, employee or agent of Contractor is authorized to direct any extra or changed work by oral order.  Contractor may rely on the authority of any on-site or off-site managerial or supervisory employee or officer of the Subcontractor to bind the Subcontractor concerning such matters.

## ARTICLE 8 - WARRANTY AND CORRECTION OF DEFECTS

8.1   Subcontractor warrants to the Owner, Contractor and Architect/Engineer that all materials, machinery and equipment furnished and incorporated pursuant to this Subcontract shall be new unless otherwise specified, and that all Work under this Subcontract shall be and remain of good quality, free from faults, liens, security interests and defects and in strict conformance with the Contract Documents. All Work not conforming to these standards shall be considered defective. The Subcontractor agrees to indemnify and hold Owner, Contractor and Architect/Engineer harmless from any losses, costs or other damages or expenses (including attorneys' fees) resulting from any breach of the foregoing warranty. Nothing herein shall in any way limit the right of Owner, Contractor or Architect/Engineer to assert claims for damages resulting from patent or latent defects in the Subcontractor's Work for the period of limitations prescribed by law. The Subcontractor shall bear all expenses incurred in connection with the inspection, removal, repair, correction, handling and transportation of defective or nonconforming Work or Work whose acceptance has been revoked. In addition, at Contractor's option, Subcontractor shall: (i) bear the costs of replacement materials, equipment and labor and all damages incurred by Contractor and (ii) pay Contractor for all expenses incurred in and delay caused by remedying defective or otherwise nonconforming Work. The provisions of this Paragraph shall survive the making and acceptance of final payment and/or termination of this Subcontract

8.2   The Subcontractor shall, at its sole expense, promptly and properly repair, replace or otherwise correct any Work that is (i) rejected by Owner, Contractor or Architect/Engineer, or (ii) known, observed or discovered at any time by Subcontractor, Contractor, Owner or Architect/Engineer to be defective or failing to conform to the Contract Documents. Furthermore, if, within one year after final completion and acceptance of the Project, or such longer period as established in respect of Contractor's obligations under the Contract Documents, the Work or any portion thereof is found to be not in accordance with the requirements of the Contract Documents, Subcontractor shall correct it promptly after receipt of written notice from Contractor to do so. The period within which Subcontractor shall be obligated to correct Work shall be extended with respect to portions of Work, including corrective work, first performed after final completion and acceptance of the Project. Subcontractor's obligations under this Paragraph shall survive completion and acceptance of the Subcontractor's Work and Project and termination of this Subcontract.

Subcontract, issue a written order to Subcontractor to stop the Work, or any portion thereof, until the cause for such order has been eliminated; however, Contractor's right to stop the Work shall not give rise to a duty on the part of Contractor to exercise such right for the benefit of Subcontractor or other persons or entities.

8.4   Nothing contained in this Article shall be construed to establish a period of limitation with respect to obligations of Subcontractor arising from defective or non-conforming Work. Specifically, the obligation of Subcontractor to correct the Subcontractor's Work has no relationship to the time within which the Subcontractor's warranty obligations may be sought to be enforced, nor to the time within which proceedings may be commenced to establish Subcontractor's obligations other than the correction of the Subcontractor's Work nor to the time within which defects or deficiencies in the Subcontractor's Work must first be observed or experienced.

8.5   All rights and remedies afforded to Contractor by this Article as against Subcontractor may be assigned to the Owner.

## ARTICLE 9 - GENERAL OBLIGATIONS

9.1   Subcontractor shall at his own expense (i) take all necessary precautions to protect the work of other trades from any damage caused by Subcontractor's operations, and (ii) watch over, care for and protect from damage or injury by any cause whatsoever, all of Subcontractor's Work, complete or otherwise, and all of his materials, supplies, tools, machinery and equipment at or near the Project. Subcontractor agrees, without loss or damage to Contractor, to make good any loss or damage to any and all such Work, materials, supplies, tools, machinery and equipment up to the final acceptance of the entire Project by the Owner.

9.2   Subcontractor shall take all reasonable safety precautions with respect to Subcontractor's Work, and shall comply with such safety measures and accident reporting procedures as may be initiated by Contractor or authorized third parties. Furthermore, Subcontractor shall strictly comply with all applicable laws, ordinances, rules, regulations and orders of any public authority for the safety of persons or property and for reporting, disclosing, communicating about, disposing, treating and handling of hazardous or toxic substances. Subcontractor shall furnish Material Safety Data Sheets for materials associated with its Work.  Subcontractor shall have primary responsibility for compliance with all applicable federal and state laws and regulations pertaining to workplace safety, including but not limited to the Occupational Safety and Health Act, and Contractor's authority to initiate safety measures shall not relieve Subcontractor or such responsibility.

9.3   Subcontractor shall be responsible for unloading and hoisting all of its materials, supplies, tools, machinery and equipment in order to ensure the timely completion of Subcontractor's Work and shall provide all temporary facilities and services necessary to complete the Work in accordance with the Contract Documents and as required by weather and other work conditions at the Project site. The Contractor shall not be responsible for providing any temporary facilities or services necessary for the Subcontractor to perform the Work, except as may be specifically noted otherwise herein or otherwise separately agreed in writing.

9.4   Subcontractor shall not subcontract, or transfer this Subcontract or any part thereof or amounts due or to become due hereunder without the prior written consent of Contractor.

9.5   Subcontractor shall give all notices and comply with the requirements of all applicable insurance policies and all codes, laws, ordinances, rules, regulations and orders of any public authority, bearing on the performance of the Work under this Subcontract, whether now existing or hereafter promulgated. Subcontractor shall secure and pay for all permits, fees and licenses necessary for the execution of the Subcontractor's Work, and shall pay all local, state and federal taxes in connection with the Subcontractor's Work, and agrees that all costs thereof are included in the Subcontract Amount. There shall be no increase in the Subcontract Amount resulting from any new or additional taxes or contributions. When required by Contractor, Subcontractor will furnish satisfactory evidence showing that all such payments have been made. If Subcontractor performs any Work contrary to such requirements, codes, laws, ordinances, rules and regulations Subcontractor shall assume full responsibility therefor, and shall bear all costs and damages attributable thereto.

9.6   To the fullest extent permitted by law, Subcontractor shall indemnify, hold harmless and defend Contractor, Owner and Architect/Engineer, and all of their officers, directors, agents, employees and consultants, from and against all claims, damages, fines, penalties, losses and expenses, including attorney's fees, arising out of or resulting from the performance of Subcontractor's Work or the use of any products, materials, machinery or equipment furnished by

8.3    If Subcontractor fails to correct any defective or nonconforming Work as required or persistently fails to carry out

Subcontractor, and caused in whole or in part by any negligent act or omission or non-performance hereunder by Subcontractor or anyone directly or indirectly employed by him or anyone for whose acts he may be liable, regardless of whether it is caused in part by any negligent act or omission of a party indemnified hereunder. By way of illustration only, and without limiting the scope of the foregoing, Subcontractor's obligations under this Paragraph shall extend to claims, damages and expenses attributable to (a) bodily injury, sickness, disease, or death, (b) patent or other intellectual property infringement, (c) injury to or destruction of tangible property including the loss of use resulting therefrom, and (d) actual or alleged violations of laws or regulations governing safety or environmental hazards or toxic substances. Furthermore, Subcontractor's obligations under this Paragraph shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for Subcontractor under worker's compensation acts, disability benefit acts or other employee benefit acts. The obligations of Subcontractor under this Paragraph shall not apply to Architect/Engineer, its agents or employees for any negligent act or omission of Subcontractor in whole or in part caused by or arising out of (1) the preparation or approval of maps, drawings, opinions, reports, surveys, Change Orders, designs or specifications, or (2) the giving of or failure to give directions or instructions by Architect/Engineer, its agents or employees, provided such giving or failure to give is the primary cause of the injury or damage.

9.7    To the fullest extent permitted by law, Subcontractor will save and keep the Project structures and improvements, the real estate within which the Project is situated, the interests of the Owner and all other persons in such Project and real estate and the contract proceeds or other monies now due or hereafter to become due and payable by the Owner to Contractor free from all mechanic's and other liens and from any claim against contract proceeds or to establish the personal liability of the Owner or other third party by reason of the Subcontractor's Work or any labor, materials or other things used therein and hereby, for itself and all of its sub-subcontractors, material suppliers and all other persons for whom Subcontractor is responsible, unconditionally waives any and all rights to any such liens or claims. If Subcontractor fails to remove any lien or claim against the Owner or contract proceeds by any of its sub-subcontractors, material suppliers or others for whom it is responsible, by bonding or otherwise as directed by Contractor, Contractor may retain sufficient funds out of any money due or thereafter to become due by Contractor to Subcontractor to pay the same and all costs incurred by reason thereof and may pay or bond said lien and costs out of any funds at any time in the hands of Contractor and otherwise owing to Subcontractor.

9.8    Subcontractor will clean up and haul off the premises, or to a place on the premises specifically designated by Contractor, all debris occasioned by the Work done hereunder and will leave the Project and premises clean and free of equipment, machinery, materials, temporary facilities and debris. Any trash, debris, or liquid that poses a possible threat of fire or safety shall be removed from the premises immediately. If, after 24 hours notice by Contractor to Subcontractor, Subcontractor has not diligently proceeded with clean-up as outlined in this Paragraph, then Contractor may proceed with such clean-up work at Subcontractor's cost and expense. Clean-up charges involving the work of multiple subcontractors may be apportioned among them by the Contractor, and Subcontractor shall be responsible for its share of such costs as determined by Contractor.

9.9    Subcontractor shall, at its sole expense and in such manner and within such time limits as Contractor may prescribe, submit to Contractor complete shop drawings, data, catalog cuts, samples and other appropriate submittals as required by the Contract Documents in respect of Subcontractor's Work. Review, approval or other actions by Contractor and/or Architect/Engineer upon such submittals shall not relieve Subcontractor of its obligation to perform the Work in strict accordance with the Contract Documents, nor of its responsibility for the proper matching and fitting of its Work with contiguous work. Failure of Subcontractor to make original or revised submittals in a timely fashion and in the manner required to assure timely and proper completion of all work for the Project shall be cause for termination of this Subcontract as provided by Article 12 or other remedies available to Contractor in respect of Subcontractor's breach or default hereunder.

9.10   Notwithstanding the dimensions given on the plans, specifications and other Contract Documents, it shall be the obligation and responsibility of Subcontractor to take such measurements as will insure the proper matching and fitting of all items and components of the Work covered by the Subcontract with other elements of the Work and with contiguous work of others. Subcontractor shall verify measurements, lines and grades of existing conditions and structures at the site, and when indicated dimensions are not in agreement with field measurements, shall notify the Contractor immediately, in writing, requesting clarification. Subcontractor is responsible for his own layout and for the protection and preservation of all installed engineering data and layout points and shall take all necessary precautions to insure that said data or points are not damaged, destroyed, altered or changed. Re-engineering, if required, shall be performed at Subcontractor's expense. Subcontractor shall be responsible for all cutting and patching required in the prosecution of the Subcontractor's Work.

9.11    Subcontractor acknowledges that he has investigated and satisfied himself as to the conditions affecting the Subcontractor's Work, including but not restricted to those bearing upon transportation, disposal, handling and storage of materials, availability of labor, water, electric power, roads or other forms of access, and uncertainties of weather, river stages, tides or similar physical conditions of the site, the conformation and conditions of the ground with the character and content of all other contracts related to the Project, and the character of machinery, equipment and facilities needed preliminary to and during prosecution of the Subcontractor's Work. Subcontractor further acknowledges that he has satisfied himself as to the character, quality and quantity of surface and subsurface materials, obstacles and other conditions which may be encountered. Contractor assumes no responsibility for any conclusions or interpretations made by Subcontractor on the basis of the information made available by the Owner, Architect/Engineer or other third parties.

9.12    Except as may otherwise be specifically provided by this Subcontract to the contrary, Subcontractor shall take directions and orders regarding the performance of this Subcontract only from Contractor and shall be solely responsible to Contractor for all construction means, methods, techniques, sequences and procedures utilized in performance of the Subcontractor's Work. Contractor shall not be liable for any costs or damages incurred by Subcontractor to respond or conform to any orders, directives or other form of communications made directly to Subcontractor by any persons other than Contractor's authorized personnel.

9.13    Subcontractor shall pay all royalties and defend any suit or proceeding brought against Contractor, Owner or Architect/Engineer so far as based on a claim that any machinery, equipment or any part thereof, or software furnished under this contract constitutes an infringement of any patent right.

9.14    The Subcontractor shall limit use of the site to areas defined by Contractor and to the construction limits for its Work and storage to allow for work of other contractors and third parties and shall assume full responsibility for the protection and safekeeping of materials, machinery and products provided under the Subcontract and stored on the site or elsewhere during fabrication, storage and shipping. Subcontractor shall, at no cost to Contractor, move any stored products which interfere with operations of the Contractor or other contractors or subcontractors as directed by Contractor and obtain and pay for the use of additional storage or work areas needed for the Subcontractor's operations.

9.15    If the Contractor determines that any Work requires special inspection, testing, or approval he may perform or order Subcontractor to perform such special inspection, testing or approval. If such special inspection or testing reveals a failure of the Subcontractor's Work to comply with the requirements of the Subcontract documents, the Subcontractor shall bear all costs thereof by deductive Change Order or direct reimbursement to Contractor as appropriate.

ARTICLE 10 - DISPUTES

10.1    Any decision or determination by the Owner or Architect/Engineer under the Contract Documents that in any manner and by whatever means becomes binding upon Contractor shall also become equally binding upon Subcontractor insofar as it relates to or affects Subcontractor's Work or other obligations assumed or to be fulfilled by Subcontractor, including without limitation any amounts and payments to which Subcontractor may be entitled or for which Subcontractor may be liable. Any award, judgment or agreement in settlement of a dispute concerning such matters and resulting from arbitration, litigation or negotiations in which the Owner and Contractor are parties or participants shall be as binding upon Subcontractor and its Surety as though Subcontractor and its Surety were named and joined in such proceeding, provided that Subcontractor has been given a reasonable opportunity to join, participate, assist or provide supporting evidence in the presentation of any claim, defense or other issue in controversy that is settled or resolved thereby.

10.2    No dispute shall interfere with the progress of the Subcontractor's Work, and Subcontractor shall proceed with all Work, including disputed work, despite the existence of, and without awaiting the resolution of, any such dispute.

10.3    In any instance or proceeding whereby any claim, dispute or other matter in controversy between Contractor and Subcontractor involves, arises from or gives rise to a similar claim, dispute or other matter in controversy as between the Contractor and Owner or another third party, Subcontractor shall furnish and present evidence, documentation and other information to support its claim, defense or other position in respect thereof and shall pay or reimburse Contractor for all costs, fees and expenses associated with the negotiation, settlement, arbitration, litigation or other means undertaken to resolve such matter. It is expressly understood that as to any and all Work performed or agreed to be performed by the Subcontractor and as to any and all actual or alleged damages incurred by Subcontractor in connection with the Project, Contractor shall under no circumstances be liable to Subcontractor to any greater extent than Owner or other third party is found liable to Contractor.

10.4   In any instance whereby Contractor is entitled, under the terms of this Subcontract, to be indemnified by or recover any monies from Subcontractor, Contractor shall be entitled to, in addition, recover from Subcontractor (i) interest on any sums due from Subcontractor at the rate of twelve percent (12%) per annum to accrue from the date due until paid, notwithstanding any dispute or uncertainty concerning the means or standards by which the amount of monetary recovery is to be ascertained, (ii) reasonable attorney's fees incurred by Contractor for all investigation, negotiation, litigation, arbitration and other such services commonly performed by attorneys, and (iii) all court costs, fees paid to experts, arbitration fees and like expenses.

## ARTICLE 11 - MISCELLANEOUS PROVISIONS

11.1   No action or failure to act by the Owner, Contractor or Architect/Engineer shall constitute a waiver of any right or duty afforded any of them under the Contract Documents, nor shall any such action or failure to act constitute an approval of or acquiescence in any breach hereunder, except as may be specifically agreed in writing.

11.2   Written notice shall be deemed to have been duly served if delivered in person to the individual or member of the firm or entity or to an officer of the corporation or Subcontractor's Authorized Representative for whom it was intended, or if delivered at or sent by registered or certified mail, or if transmitted and received by facsimile telephone transmission (FAX), to the last business address or fax telephone number known to him who gives the notice.

11.3   Should either party to the Subcontract suffer injury or damage to person or property because of any act or omission of the other party or of any of his employees, agents or others for whose acts he is legally liable, claim shall be made in writing to such other party within ten (10) days after the injury or damage was made known to the party making claim. This Paragraph shall not apply to injury or damage to property caused by or resulting from breach of warranty or duty to correct defective work as provided in Article 8.

11.4   Subcontractor acknowledges the right of the Contractor to assign all or any portion of this Subcontract to the Owner or other third party as may be provided by the Contract Documents. Contractor shall furnish written notice of such assignment to Subcontractor and upon Subcontractor's Work receipt thereof, the assignee shall succeed to the rights and obligations of Contractor under this Subcontract and under any surety bond furnished by Subcontractor, without recourse by Subcontractor against Contractor, except as such notice of assignment may otherwise provide.

11.5   This Subcontract shall be governed by the State of Illinois.

11.6   If any provision of this Subcontract or the application thereof to any person or circumstance shall be invalid, illegal or unenforceable to any extent, the remainder of the Subcontract and the application thereof shall not be affected and shall be enforceable to the fullest extent permissible by law.

## ARTICLE 12 - TERMINATION

12.1   Contractor shall have the right at any time, upon 48 hours prior written notice to Subcontractor, to terminate this Subcontract in whole or in part and require Subcontractor to cease work thereunder; such termination shall be rightful as against Subcontractor whether undertaken because of Subcontractor's default or for the convenience of the Owner or Contractor. If termination is for default, the respective rights and obligations of the parties shall be as provided in Paragraph 12.2; if termination is for the convenience of Contractor or Owner, or if the Subcontract is terminated upon Contractor's belief that Subcontractor is in default but it is subsequently determined that Subcontractor was not then in default, the rights and obligations of the parties shall be as provided in Paragraph 12.3 hereof.

12.2   If Subcontractor at any time (i) refuses or neglects to supply adequate and competent supervision or a sufficiency of properly skilled workmen or of materials of the proper quality or quantity, or (ii) fails in any respect to prosecute the work with promptness and diligence or otherwise in accordance with the Contract Documents, or (iii) fails in the performance of any agreement or obligation on its part herein contained or provided by the Contract Documents, or (iv) otherwise delay the work of Contractor, other subcontractors or other third parties, or (v) is otherwise in default as defined by the provisions of the Contract Documents as applicable to the right of the Owner or other third party to terminate its contract with Contractor, or if any of the above stated events or conditions of default shall exist under any uncompleted separate or additional subcontract between Subcontractor and Contractor, whether for this Project or any other project, then Contractor may terminate the employment of Subcontractor on the Project upon the grounds of Subcontractor's default, whereupon Contractor shall have the right in addition to such other rights and remedies as may be afforded to Contractor under this the Contract Documents, or by law, to enter upon the premises and take possession of Subcontractor's materials, equipment

more other persons or use its own forces to finish the Subcontractor's Work and/or to correct or take other action to bring the Subcontractor's Work into conformity with the requirements of the Contract Documents. In such case Subcontractor shall not be entitled to receive any payment under this Subcontract which might otherwise be due it until the Subcontractor's Work shall be finished and payment in full therefor shall be made by Owner to Contractor, at which time, if the unpaid balance of the amount to be paid under this Subcontract shall exceed the expenses incurred by Contractor in completing and correcting Subcontractor's Work, plus any costs and damages sustained by Contractor by reason of such failure or lack of performance by Subcontractor, including attorney's fees, costs of administration, and a reasonable allowance for overhead and profit, such excess shall be paid by Contractor to Subcontractor, but if such expense plus costs and damages shall exceed such unpaid balance, Subcontractor and its sureties shall be liable to Contractor for such deficiency. A determination of default made by Contractor in good faith under the belief that a default exists under the terms hereof, shall be conclusive on the fact of such default and on Contractor's right to proceed as provided in this Paragraph.

12.3    If this Subcontract is terminated for the convenience of Contractor, or if terminated upon Contractor's belief that Subcontractor is in default but Subcontractor is not then in default, then Contractor shall pay to Subcontractor an amount limited to the unpaid Subcontract value of authorized and approved Work performed by Subcontractor prior to notice of termination, adjusted for amounts and damages, if any, for which Subcontractor is liable or which the Contractor is entitled to retain and withhold pursuant to the terms of this Subcontract. Recovery by Subcontractor of lost anticipated profit, overhead, or other direct, indirect or consequential damages relating to portions of Subcontractor's Work not performed under the uncompleted portions of this Subcontract are hereby specifically excluded. The payment provided by this Paragraph shall constitute Subcontractor's exclusive remedy in the event of such termination. A termination caused by disapproval of Subcontractor by Owner or other third party shall not entitle Subcontractor to recover termination expenses under this Paragraph.

## ARTICLE 13 - ADDITIONAL PROVISIONS

13.1    This Subcontract is contingent upon execution of the Prime Agreement by Contractor and Owner.

13.2    Within two (2) weeks following the date of this Subcontract, the Subcontractor shall submit the following to the Contractor:

1. Twelve (12) copies of required shop drawings, catalog cuts, certificates, samples, etc. in accordance with the Contract Documents and submittal control log.
2. Certificate of Insurance with additional insured endorsements.
3. Subcontractor's affidavit (see attached) listing all persons or firms who will furnish material and/or labor for Subcontractor's Work.
4. Material Safety data sheets (MSDS) as required by the OHSHA Hazard Communication Standard for all required products used for the Project (in duplicate).
5. Breakdown of subcontract Amount, in a form acceptable to the General Contractor and Engineer, for use in preparing a schedule of values.
6. Detailed breakdown of Subcontractor's Work activities, with duration for each showing number of workdays, for use in preparing the project schedule.

13.3    Subcontractor shall coordinate all Work and deliveries with the Contractor's project superintendent and with the project schedule (original or as may be revised from time to time) to assure that Subcontractor's Work and all other Work for the Project is performed and completed without any delay, disruption, suspension or acceleration.

## ARTICLE 14 - SPECIAL LABOR PROVISIONS

14.1    Subcontractor shall recognize and comply with any and all labor agreements between Contractor and organized trade unions relating to the Project as applicable to the Project and shall be bound to all terms and conditions thereof, including payment of required hourly wages and fringe benefits, paying fringe benefits to the appropriate fund trustee, work rules, trade jurisdictional determinations, subcontracting requirements and, if necessary, signing a Project Agreement between Subcontractor and the union(s). If Subcontractor is a party to one or more union labor agreements, Subcontractor represents that it has, prior to execution of this Subcontract, notified Contractor in writing as to the specific unions with which Subcontractor has entered into labor agreements.

## RIDER A – INSURANCE REQUIREMENTS

Subcontractor and each sub-subcontractor shall have the following endorsement added to its general public liability policy:

It is agreed that the "persons insured" provisions is amended to include as an additional insured person or organization, Joseph J. Henderson & Son, Inc., Owner, and others as required by general contract with respect to liability arising out of subcontractor's operations hereunder.

It is further understood that any insurance carried by the above "additional insured persons" shall not contribute with and shall be in excess of any coverage provided by subcontractor and any sub-subcontractor. All insurance carried by subcontractor and any sub-subcontractor shall be primary coverage and shall not be in addition to or contribute with the insurance carried by any of the above additional insured persons,

Evidence of the required insurance coverage shall be provided as soon as possible, but prior to the performance of any work on site.

RIDER B – BILLING REQUIREMENTS

Construction Draws

- Original application for payments and invoices must be received in our offices no later than the 20th of each month. Applications and invoices received after that date will be submitted with the next month's draw.
- Applications for payment must be submitted in duplicate and include invoice and Schedule of Value.

Change Orders and Extra Work

The billable amount of any additional work performed pursuant to Change Order or Change Directives on a time and material or cost-plus basis shall be calculated as follows, unless the terms of the General Contract provide otherwise:

- Actual rate paid for direct labor employed in the work, including foremen, but not including general supervision, not to exceed the prevailing rates in the Project area; plus
- The actual cost of material used in the work, after application of all cash, trade or other discounts available to Subcontractor; plus
- The actual cost of sub-subcontractors or independent contractors, not to exceed market price in the Project area; plus
- Insurance and taxes on payroll, including unemployment, workmen's compensation, public liability, property damage insurance and social security taxes shall be added at the Contractor's actual cost but not to exceed __30 percent of direct labor costs as specified above; plus
- The actual cost of welfare and pension fund assessment on direct labor costs shall be added at cost; plus
- The rental for use of large pieces of equipment, the original cost of which exceeds $2,000.00 at prevailing rates and approved by the Contractor, for the period only that such equipment is actually needed on the job, shall be added. Contractor has the right to designate whether such equipment shall be rented on a daily, weekly, monthly or other basis. Rates shall include fuel, repairs, maintenance, and overhead and profit but not the operator.
- To the above costs shall be added a fee of _10_ percent, which shall fully compensate Subcontractor for all costs and expenses not enumerated herein and shall include overhead and profit.

**RIDER C**                                    1080-00-05-101-03
**SCOPE OF WORK**                              Interstate Welding & Fabrication, Inc.

Provide all required labor, equipment, and materials necessary to perform all structural steel and miscellaneous metals work complete in accordance with the Contract Documents. Specifically including, but not necessarily limited to:

DIVISION 1 GENERAL REQUIREMENTS- As Applicable

DIVISION 5 METALS-Furnish and Install Complete

**05120 STRUCTURAL STEEL**
-Provide structural steel as needed for a complete and proper installation.

**05311 STEEL DECK**
-Steel floor and roof deck and accessories.
-Framing for openings up to and totaling 18-inches.
-Formed steel closure panels

**05500 METAL FABRICATION**
-Provide miscellaneous metals as needed for a complete and proper installation
-Concrete anchors
-Stairs and Platforms
-Ladders
-Equipment access platforms
-Lintels
-Metal Frames
-Floor Access Hatches
-Roof and Equipment Hatches
-Screen Wall Gates
-Rolling Platform Ladder
-Miscellaneous Items

**05520 ALUMINUM HANDRAIL AND RAILING**
Aluminum handrail and railing as required for a complete and proper installation

**05530 BAR GRATING**
-Provide metal bar grating as needed for a complete and proper installation

**05540 DIAMOND TREAD ALUMINUM PLATE**    *[handwritten: 05540 DIAMOND TREAD ALUMIN[UM] PLATE WILL BE SUPPLIED A[S] [...]IFIED]*
-Diamond tread plate, perimeter closure and fasteners

**09960 COATINGS- Shop painting of structural steel work as defined**

Furnish and install Aluminum sunscreens complete.

*[handwritten signature: BM 7-2[...]04]*

EXHIBIT A -- CONTRACTOR'S EQUAL OPPORTUNITY EMPLOYMENT STATEMENT

## EQUAL EMPLOYMENT OPPORTUNITY STATEMENT

Joseph J. Henderson & Son, Inc. is an Equal Employment Opportunity employer. The company does not discriminate on the basis of an individual's race, religion, color, national origin, ancestry, sex, age, disability, marital status, veteran status, sexual orientation or citizen status. This policy of Equal Employment Opportunity applies to all personnel matters including, but not limited to, hiring, compensation, benefits, promotions, transfers, terminations, layoffs and rehiring as well as all training, social or recreational activities.

Joseph J. Henderson & Son, Inc. is determined to implement this policy by a program of specific positive practices; therefore, it will continue to:

   Recruit, hire, train and promote persons in all job classifications without regard to race, religion, color, national origin, ancestry, sex, age, disability, marital status, veteran status, sexual orientation or citizenship status, except where sex is a bona fide occupational qualification;

   Base decisions on employment so as to further the principle of Equal Employment Opportunity;

   Insure that promotion decisions are in accord with the principle of Equal Employment Opportunity by imposing only valid requirements for promotional opportunities;

   Insure that all personnel actions such as compensation, benefits, transfers, layoffs, Company sponsored training and education, and social and recreational programs will be administered without regard to race, religion, color, national origin, ancestry, sex, age, disability, marital status, veteran status, sexual orientation or citizenship status.

David A. Henderson, EEO Officer, is responsible for implementing Equal Employment Opportunity.

Michael L. Henderson, President and CEO                                    January 23, 2003

EXHIBIT B – CERTIFICATE OF INSURANCE (EXAMPLE)

| PRODUCER | THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. |
|---|---|
| **INSURANCE AGENT** | |
| **INSURED** | **COMPANIES AFFORDING COVERAGE** |
| **SUBCONTRACTOR NAME & ADDRESS** | COMPANY LETTER A<br>COMPANY LETTER B<br>COMPANY LETTER C<br>COMPANY LETTER D<br>COMPANY LETTER E |

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED, NOTWITHSTANDING ANY REQUIREMENTS, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES, LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| CO LTR | TYPE OF INSURANCE | POLICY NUMBER | POLICY EFFECTIVE DATE | POLICY EXPIRATION DATE | ALL LIMITS IN THOUSANDS | |
|---|---|---|---|---|---|---|
| | GENERAL LIABILITY<br>COMMERCIAL GENERAL LIABILITY<br>    CLAIMS MADE    OCCUR.<br>OWNERS & CONTRACTORS PROT. | XXXXXXXX* | | | GENERAL AGGREGATE<br>PRODUCTS - COMP/OPS AGGREGATE<br>PERSONAL & ADVERTISING INJURY<br>EACH OCCURRENCE<br>FIRE DAMAGE (any one fire)<br>MED. EXPENSE (any one person) | 1,00<br>1,00<br>1,0<br>1,00<br>5 |
| | AUTOMOBILE LIABILITY<br>ANY AUTO<br>ALL OWNED AUTOS<br>SCHEDULED AUTOS<br>HIRED AUTOS<br>NON-OWNED AUTOS<br>GARAGE LIABILITY | XXXXXXXX | | | COMBINED SINGLE<br>LIMIT<br>BODILY INJURY<br>(PER PERSON)<br>BODILY INJURY<br>(PER ACCIDENT)<br>PROPERTY DAMAGE | 1,00 |
| | EXCESS  LIABILITY<br>OTHER THAN UMBRELLA FORM | XXXXXXXX | STEEL ERECTORS REQUIRED............ | ......................... | EACH OCCURRENCE<br>AGGREGATE | 5,00 |
| | WORKER'S COMPENSATION<br>AND<br>EMPLOYER'S LIABILITY | XXXXXXXX | | | (EACH ACCIDENT)<br>(DISEASE - POLICY LIMIT)<br>(DISEASE - EACH EMPLOYEE) | 50<br>50<br>50 |
| | OTHER | | | | | |

DESCRIPTION OF OPERATION/LOCATIONS/VEHICLES/SPECIAL ITEMS
       JOB:  NAME OR CONTRACT NUMBER
       * ADDITIONAL INSURED:  CG2010 ENDORSEMENT FORM OR COMPARABLE MUST BE ATTACHED

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| JOSEPH J. HENDERSON & SON, INC.<br>4288 GRAND AVENUE/PO BOX 9<br>GURNEE, IL 60031 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, THE ISSUING COMPANY WILL MAIL **30** DAYS WRITTEN NOTICE TO THE CERTIFICATE HOLDER NAMED TO THE LEFT.<br><br>AUTHORIZED REPRESENTATIVE |

EXHIBIT C – ADDITIONAL INSURED ENDORSEMENT (EXAMPLE)

*SUBCONTRACTOR:*
*THIS SAMPLE FORM MUST BE FORWARDED TO YOUR INSURANCE AGENT IMMEDIATELY.*

**INSURANCE AGENT:**
**PLEASE ENSURE ALL INFORMATION REQUIRED (☒) IS PROPERLY PROVIDED SO AS NOT TO
DELAY PAYMENT TO THE SUBCONTRACTOR.**

### SAMPLE FORM

Policy Number ☒ _____                    Commercial General Liability

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ IT CAREFULLY

**ADDITIONAL INSURED - OWNERS, LESSEES OR CONTRACTORS (FORM B)**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

SCHEDULE

Name of Person or Organization:

☒ Joseph J. Henderson & Son, Inc. _____        (General Contractor)
4288 Old Grand Avenue _____
Gurnee, IL 60031 _____

☒ North Shore Sanitary District _____          (Owner)
Wm. Koepsel Drive, P.O. Box 750 _____
Gurnee, IL 60031 _____

☒ Donohue & Associates _____                   (Engineer)
4343 S. Taylor Drive _____
Sheboygan, WI 53081 _____

☒ Environmental Management Consulting _____     (Other)

☒ Graef, Anhalt, Schloemer & Associates Inc. _____  (Other)

☒ Giles Engineering Associates Inc. _____       (Other)

(If no entry appears above, information required to complete this endorsement will be shown in the
Declarations as applicable to this endorsement.)

WHO IS AN INSURED (Section II) is amended to include as an insured person or organization shown in the
Schedule, but only with respect to liability arising out of "your work" for that insured by or for you.

Standard ISO CG 20 10 11 8

EXHIBIT D – WAIVER & AFFIDAVIT COMPLETION INSTRUCTIONS

## WAIVER & AFFIDAVIT COMPLETION INSTRUCTIONS

The following information is being provided in an effort to minimize the delays cause by incomplete or improperly completed waivers or contractor's affidavit forms. If you are familiar with the preparation of these forms, then no further reading is necessary. If not, we suggest you read and comply with the information as provided below.

The forms titled Partial Waiver or Final Waiver are in reality two forms each. The Partial Waiver form is a Waiver of Lien to Date form and a Contractor's Affidavit form. The Final Waiver form is a Final Waiver of Lien and a Contractor's Affidavit form. You must complete and sign both the waiver section and the affidavit section on each form before you submit the form to the General Contractor. The signature on the affidavit section of the form must be notarized. A failure to fully complete each section of the form could result in a delay in the processing of a construction draw request.

### WAIVER OF LIEN SECTION

Section 1.     Enter name of the party you contracted with for the service to be performed. Review your contract for correct name, if necessary.

2.     Enter the service or materials you agreed to perform or supply (type of work).

3.     Enter the complete street address or a sufficient legal description to identify the property, if vacant.

4.     Enter the name of the record owner of the property.

5.     Enter the dollar amount of this payment, spelled out in words.

6.     Enter the same dollar amount of this payment, written in numbers.

7.     Date of waiver

8.     Enter the name and address of your company or business; sign the waiver and state your title (i.e. owner, president, partner, etc.).

### CONTRACTOR'S AFFIDAVIT SECTION

Section 1.     Enter your name.

2.     Identify your position held in the company (i.e., owner, president etc.)

3.     Enter your company or business name.

4.     Enter the service or materials you agreed to perform or supply (type of work).

5.     Enter the complete street address or a sufficient legal description to identify the property, if vacant.

6.     Enter the name of the record owner of the property.

7.     Enter the total contract amount, written in numbers, including all change orders.

8.     Enter the total amount of all payments you previously received, written in numbers. If you previously received nothing, use "0".

9.     Identify all subcontractors and materialmen with whom your company has contracted for labor, materials, or supplies for the project.

Section 9. (Cont.)

## FOR EACH SUBCONTRACTOR OR MATERIALMAN LISTED:

a.  Describe the type of work performed or the materials supplied by the sub-subcontractor or materialmen:

b.  Enter the total amount of the subcontract, including change orders, both oral and written.

c.  Enter the total amount of all payments previously made to the subcontractor or materialmen, and attach waivers for those payments;

d.  Enter the total amount of the current payment to the subcontractor or materialmen, and attach a waiver for the payment;

e.  Enter the balance due under the subcontract; and

f.  Total all columns.

If no subcontractors or materialmen are hired, because all materials were taken form fully paid stock, the following statement must be made:

**"My suppliers are:**    _____

                                     **name**

                                _____

                                     **address**

**All material is taken from fully PAID stock and delivered to job site in our own trucks.  All labor is PAID IN FULL.  Balance due is zero (0)."**

Enter "0" in the Balance Due column for each supplier listed.

If there are no subcontractors for labor, then the following statement must be made (refers to your employees:

**"All labor is paid in full."**

Section 10.    Date the affidavit.

11.    Sign the affidavit.

12.    Have a notary date, sign and seal the affidavit.

EXHIBIT E

# SAMPLE: WAIVER OF LIEN TO DATE or FINAL

STATE OF ILLINOIS }
COUNTY OF _____ } SS
TO WHOM IT MAY CONCERN:

WHEREAS the undersigned has been employed by _____ **Joseph J. Henderson & Son, Inc.** *(or subcontractor if waiver is from sub-sub)*
to furnish _____ *(Insert a brief description of work or material supplied)*
for the premises known as _____ *Insert the legal description or property address*
of which _____ *insert legal owner's name* _____ is the Owner.

THE UNDERSIGNED, for and in consideration of _____ *Insert the current payment amount (written out in words - i.e. "Ten Thousand and no/100—")*
(**$** *(numerical - i.e. 10,000.00)* _____ ) Dollars, and other good and valuable considerations, the receipt whereof is hereby acknowledged,
does hereby waive and release any and all lien, or claim of lien, or right to lien, with respect to and on the above described premises, and the improvements thereon,
and on the material, fixtures, apparatus or machinery furnished, and on the monies, funds or other consideration due or to become due from the Owner, on account
of labor, services, material, fixtures, apparatus or machinery heretofore furnished, or which may be furnished at any time hereafter, by or on behalf of the
undersigned, for the above-described premises.

The undersigned does further release any and all claims of any nature whatsoever, against Joseph J. Henderson and Son, Inc., or its surety, relating to or
arising out of the performance of the Work, including claims under 40 U.S.C. sections 270a-270d ("the Miller Act"), or any state statute serving a substantially similar
purpose.

Given under _____ hand _____ and seal

this _____ day of _____ , 20 _____ .         **CORPORATE SEAL**

Signature and Seal: *Signed by Officer of the Company (Owner/President, etc)*

Company name and address: _____

NOTE: All waivers must be for the full amount paid. If waiver is for a corporation, corporate name should be used, corporate seal affixed and title of officer
signing waiver should be set forth; if waiver is for a partnership, the partnership name should be used, partner should sign and designate himself as partner.

# CONTRACTOR'S AFFIDAVIT

STATE OF ILLINOIS}
COUNTY OF _____ } SS
TO WHOM IT MAY CONCERN:

THE UNDERSIGNED, being duly sworn, deposes and says that he/she is *(Insert the name and position or title of the person signing the affidavit.)*
Of _____ *(Insert your company name)*
Who is the contractor for the _____ *(Insert a brief description of work or material supplied)*
Work on the building located at _____ *insert the legal description or property address*
owned by _____ *insert legal owner's name*
that the total amount of the contract including extras is **$** _____ *(Insert the amount of the current subcontract including all executed change orders)*
on which he has received payment of $ _____ *(Insert total of previous payments)* prior to this payment. That all waivers are true, correct and genuine and
delivered unconditionally and that there is no claim either legal or equitable to defeat the validity of said waivers. That the following are the names of all
parties who have furnished material or labor, or both, for said work and all parties having contracts for specific portions of said work or for material
entering into the construction thereof and the amount due or to become due to each, and that the items mentioned include all labor and material required to
complete said work according to plans and specifications:

| NAMES | WHAT FOR | CONTRACT PRICE | AMOUNT PAID | THIS PAYMENT | BALANCE DUE |
|---|---|---|---|---|---|
| *This area to be updated monthly* | | | | | |
| *Include all sub-subcontractors and suppliers* | | | | | |
| *Include a line for subcontractor to total subcontract amount* | | | | | |
| | | | | | |
| *Include the following wording along with your supplier's name ONLY if this statement applies:* | | | | | |
| * *All materials come from PAID stock and are delivered to the job site in our trucks.* | | | | | |
| *All labor is PAID IN FULL. Balance due is zero (0). Our Principal Suppliers are:"* | | | | | |
| TOTAL LABOR AND MATERIAL TO COMPLETE | | | | | |

That there are no other contracts for said work outstanding, and that there is nothing due or to become due to any person for material, labor or other work
of any kind done or to be done upon or in connection with said work other than above stated.

Signed this _____ Day of _____ , 20 _____ .

Signature: _____

Subscribed and sworn to before me this _____ Day of _____ , 20 _____ .

| NOTARY SEAL | Notary Public: _____ |
|---|---|

EXHIBIT F

# WAIVER OF LIEN TO DATE

STATE OF ILLINOIS }
COUNTY OF          } SS
TO WHOM IT MAY CONCERN:

    WHEREAS the undersigned has been employed by _____

to furnish _____

for the premises known as _____

of which _____ is the Owner.

    THE UNDERSIGNED, for and in consideration of _____
($_____) Dollars, and other good and valuable considerations, the receipt whereof is hereby acknowledged, does hereby waive and release any and all lien, or claim of lien, or right to lien, with respect to and on the above described premises, and on the material, fixtures, apparatus or machinery furnished, and on the monies, funds or other consideration due or to become due from the Owner, on account of labor, services, material, fixtures, apparatus or machinery heretofore furnished, or which may be furnished at any time hereafter, by or on behalf of the undersigned, for the above-described premises.

    The undersigned does further release any and all claims of any nature whatsoever, against Joseph J. Henderson and Son, Inc., or its surety, relating to or arising out of the performance of the Work, including claims under 40 U.S.C. sections 270a-270d ("the Miller Act"), or any state statute serving a substantially similar purpose.

      Given under _____ hand _____ and seal

this _____ day of _____, 20_____.

    Signature and Seal: _____

NOTE: All waivers must be for the full amount paid. If waiver is for a corporation, corporate name should be used, corporate seal affixed and title of officer signing waiver should be set forth; if waiver is for a partnership, the partnership name should be used, partner should sign and designate himself as partner.

---

# CONTRACTOR'S AFFIDAVIT

STATE OF ILLINOIS}
COUNTY OF          } SS
TO WHOM IT MAY CONCERN:

    THE UNDERSIGNED, being duly sworn, deposes and says that he/she is _____

of _____

who is the contractor for the _____

work on the building located at _____

owned by _____

that the total amount of the contract including extras is $ _____

on which he has received payment of $ _____ prior to this payment. That all waivers are true, correct and genuine and delivered unconditionally and that there is no claim either legal or equitable to defeat the validity of said waivers. That the following are the names of all parties who have furnished material or labor, or both, for said work and all parties having contracts for specific portions of said work or for material entering into the construction thereof and the amount due or to become due to each, and that the items mentioned include all labor and material required to complete said work according to plans and specifications:

| NAMES | WHAT FOR | CONTRACT PRICE | AMOUNT PAID | THIS PAYMENT | BALANCE DUE |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
| TOTAL LABOR AND MATERIAL TO COMPLETE |  |  |  |  |  |

That there are no other contracts for said work outstanding, and that there is nothing due or to become due to any person for material, labor or other work of any kind done or to be done upon or in connection with said work other than above stated.

    Signed this _____ Day of _____, 20_____.

      Signature: _____

Subscribed and sworn to before me this _____ Day of _____, 20_____.

    Notary Public:

EXHIBIT G

# FINAL WAIVER

STATE OF ILLINOIS }
COUNTY OF          } SS
TO WHOM IT MAY CONCERN:

WHEREAS the undersigned has been employed by _____

to furnish _____

for the premises known as _____

of which _____ is the Owner.

THE UNDERSIGNED, for and in consideration of _____

($_____)Dollars, and other good and valuable considerations, the receipt whereof is hereby acknowledged, does hereby waive and release any and all lien, or claim of lien, or right to lien, with respect to and on the above described premises, and the improvements thereon, and on the material, fixtures, apparatus or machinery furnished, and on the monies, funds or other consideration due or to become due from the Owner, on account of labor, services, material, fixtures, apparatus or machinery heretofore furnished, or which may be furnished at any time hereafter, by or on behalf of the undersigned, for the above-described premises.

The undersigned does further release any and all claims of any nature whatsoever, against Joseph J. Henderson and Son, Inc., or its surety, relating to or arising out of the performance of the Work, including claims under 40 U.S.C. sections 270a-270d ("the Miller Act"), or any state statute serving a substantially similar purpose.

Given under _____ hand _____ and seal

this _____ day of _____, 20_____.

Signature and Seal: _____

NOTE: All waivers must be for the full amount paid. If waiver is for a corporation, corporate name should be used, corporate seal affixed and title of officer signing waiver should be set forth; if waiver is for a partnership, the partnership name should be used, partner should sign and designate himself as partner.

---

# CONTRACTOR'S AFFIDAVIT

STATE OF ILLINOIS}
COUNTY OF          } SS
TO WHOM IT MAY CONCERN:

THE UNDERSIGNED, being duly sworn, deposes and says that he/she is _____

of _____

who is the contractor for the _____

work on the building located at _____

owned by _____

that the total amount of the contract including extras is $ _____

on which he has received payment of $ _____ prior to this payment. That all waivers are true, correct and genuine and delivered unconditionally and that there is no claim either legal or equitable to defeat the validity of said waivers. That the following are the names of all parties who have furnished material or labor, or both, for said work and all parties having contracts for specific portions of said work or for material entering into the construction thereof and the amount due or to become due to each, and that the items mentioned include all labor and material required to complete said work according to plans and specifications:

| NAMES | WHAT FOR | CONTRACT PRICE | AMOUNT PAID | THIS PAYMENT | BALANCE DUE |
|---|---|---|---|---|---|
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
|  |  |  |  |  |  |
| TOTAL LABOR AND MATERIAL TO COMPLETE |  |  |  |  |  |

That there are no other contracts for said work outstanding, and that there is nothing due or to become due to any person for material, labor or other work of any kind done or to be done upon or in connection with said work other than above stated.

Signed this _____ day of _____, 20_____.

Signature: _____

Subscribed and sworn to before me this _____ day of _____, 20_____.

Notary Public.

**Please provide the following information for our records.  This will help us to communicate with your organization easily and effectively.  Thank you.**

Subcontractor:    Interstate Welding & Fabrication Inc        Job:   1080-00  NSSD Zion Township Landfill
Sludge Recycling Facility

## TABLE OF ORGANIZATION

| | Contact Name | Cell/Mobile Phone # | Phone # | Fax # |
|---|---|---|---|---|
| Owner or President: | | | | |
| Project Manager: | | | | |
| Jobsite Foreman/ Superintendent: | | | | |
| Invoices/ Pay Requests: | | | | |
| Payroll: | | | | |
| Waivers: | | | | |
| Other contacts we might need: | | | | |

**Please return the completed form to:**

**Joseph J. Henderson & Son, Inc.**
**P.O. Box 9**
**Gurnee, IL  60031**

**Or Fax to (847) 244-9572**
**Attn:  <u>Charla Nguyen</u>**

## AFFIDAVIT

That for the purpose of said Subcontract Agreement or Material Purchase Agreement, the following persons or firms have been or will be contracted with, and will furnish the material for and/or will do labor on said improvements. That there is due or to become due them, respectively, the amounts set opposite their names for materials and/or labor as stated. That this statement is made to said GENERAL CONTRACTOR for the purpose of procuring from said General CONTRACTOR Partial or Final Payment on said Subcontract Agreement or Purchase Agreement, and is a full, true, and complete statement of ALL such persons or firms, and the amounts due and to become due them.

| NAME AND ADDRESSES | CONTRACT FOR | AMOUNT | F.E.I.N. # |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

That this statement is made in compliance with the Statues relating to Mechanics or Construction Liens and for the purpose of procuring from the General Contractor Final/Partial payment in accordance with the terms of the contract and is a full, true, and complete statement, of all parties furnishing labor and/or material and of amount due and to become due them. I agree to furnish Waivers of Lien for all material and/or subcontractors under my contract with each and every request for payment. I agree to submit an updated affidavit with each and every request for payment. I agree to itemize any applicable taxes for items shown on this Affidavit.

SIGNED:_____

NAME and TITLE:_____

Subscribed and sworn to before me this _____ day of _____, 20____

_____(Seal)

      Notary Public

My commission expires:_____, 20____.

# Interstate Welding & Fabrication, Inc.

1670 E. Davis Drive Terre Haute. IN 47802
PHONE # (812) 232-0474     FAX # (812) 234-6641

May 3rd, 2004

**VIA FACSIMILE (847-244-9572)**
Mr. William Marshalla
Joseph J. Henderson & Son, Inc.
4288 Old Grand Avenue
P.O. Box 9
Gurnee, IL  60031-0009



**RECEIVED**

JUL 2 3 2004

**I. W. F., INC.**

RE:     Contract Changes for the NSSD Zion Township Sludge Recycling Facility Project
Our Project No. 8146

Dear Mr. Marshalla:

Per our discussion last week, this letter shall memorialize our agreed upon changes to the terms of the contract for the above-referenced project. This letter shall modify the contract between Interstate Welding & Fabrication, Inc. ("IWF") and Joseph J. Henderson & Son, Inc. dated 3/26/04 for the NSSD Zion Township Sludge Recycling Facility project. It is further agreed that in the event of any conflict between the terms of this letter and the contract dated 3/26/04, the terms of this letter shall control.

2.1     This paragraph shall remain as originally typed.

2.3     This paragraph shall remain as originally typed but the following sentence shall be inserted at the end of the paragraph: "This paragraph shall not preclude Subcontractor from seeking and being entitled to recover its extra costs from the Owner via the Contractor."

2.7     The last two sentences of this paragraph shall be deleted.

2.8     The last sentence of this paragraph shall be deleted.

2.9     This paragraph shall remain as originally typed.

3.3     Agreed to insert after "and at no additional cost to Contractor provided the integration requirements are reasonable ….".

4.6     This paragraph shall remain as originally typed.

4.7     This paragraph shall remain as originally typed. *No schedule has been provided to IWF. According IWF agrees to liquidated damages based on IWF beginning steel delivery and erection in early October, 2004 and provided Contractor's schedule gives IWF reasonable durations which are agree*

4.8     The last two sentences of this paragraph shall be deleted and replaced with the following: *to IWF's erect*
"Subcontractor shall to the extent permitted by Contractor's contract with the Owner be *vw*
entitled to recover its costs due to Subcontractor's work being delayed by others."

*WM*
*7-20 v*

5.1     This paragraph shall remain as originally typed.

5.2     This paragraph shall be deleted in its entirety.

5.4     Insert the following language at the end of this paragraph: "Subcontractor shall be permitted to invoice and shall be paid for off site stored material."

5.5     The last sentence of this paragraph shall be deleted.

5.9     The first sentence of this paragraph shall be modified by inserting "only to the extent necessary to protect contractor" after "Payments otherwise due to Subcontractor may be withheld by Contractor".

5.12    Item (f) of this paragraph shall be deleted and replaced with the following language: "Subcontractor's retainage shall be reduced to 5% within 90 days after Contractor's substantial completion of its work or within 3 business days of payment by Owner to Contractor of its retainage reduction, whichever occurs first. Additionally, final payment of retainage shall be made to Subcontractor within 180 days of IWF's work being substantially complete or within 3 business days of Owner issuing final payment to Contractor, whichever occurs first."

6.2     This paragraph shall be deleted in its entirety.

6.4     The following language shall be deleted from the third sentence of this paragraph which beings "Such insurance shall provide coverage": "regardless of the negligent acts of any of the Owner, Contractor, Architect/Engineer,…and sub subcontractors".

7.4     Item (ii) within this paragraph shall be revised as follows "(ii) at least three (3) business days before the date when Contractor is required by the terms of the Contract Documents to provide the same or similar notice to Owner or other third party provided Subcontractor is given at least three (3) business days in which to respond…".

8.1     The following sentence shall be inserted at the end of this paragraph: "If the Subcontractor does not begin to take the necessary corrective action in item (i) within 5 business days after receipt of written notice from Contractor then the Contractor will take the necessary action as described in item (ii)."

9.1     This paragraph shall be modified by inserting "caused by Subcontractor"in the last sentence after "Subcontractor agrees, without loss or damage to Contractor, to make good any loss or damage to any and all such Work".

9.5     This paragraph shall remain as originally typed.

9.6     The following language contained within the first sentence of this paragraph shall be deleted: "regardless of whether it is caused in part by any negligent act or omission of a party indemnified hereunder."

9.7     The last sentence of this paragraph shall be modified by inserting "valid" in front of "lien or claim against the Owner…".

9.8     The first sentence of this paragraph shall be modified as follows: "Subcontractor will

clean up and place in dumpsters provided by Contractor all debris occasioned by the Work done hereunder and will leave the Project and premises clean and free of equipment, machinery, materials, temporary facilities and debris."

9.14    The last sentence of this paragraph which begins "Subcontractor shall, at no cost to Contractor..." shall be deleted and replaced with the following language "An agreed upon laydown/storage area will be designated for the use of the Subcontractor."

10.3    The first sentence of this paragraph shall be modified by inserting "reasonable" in front of "costs, fees and expenses...".

10.4    This paragraph shall remain as originally typed.

10.5    This paragraph shall be added as shall provide as follows: "In any instance whereby Subcontractor is entitled, under the terms of this Subcontract, to be indemnified by or recover any monies from Contractor, Subcontractor shall be entitled to, in addition, recover from Contractor (i) interest on any sums due from Contractor at the rate of twelve percent (12%) per annum to accrue from the date due until paid, notwithstanding any dispute or uncertainty concerning the means or standards by which the amount of monetary recovery is to be ascertained, (ii) reasonable attorney's fees incurred by Subcontractor for all investigation, negotiation, litigation, arbitration and other services commonly performed by attorney's, and (iii) all court costs, fees paid to experts, arbitration fees and like expenses."

12.1    The following language within this paragraph shall be deleted: "or if the Subcontract is terminated upon Contractor's belief that Subcontractor is in default but it is subsequently determined that Subcontractor was not then in default".

12.2    The last sentence of this paragraph shall be deleted.

12.3    The following language contained within the first sentence of this paragraph shall be deleted "or if terminated upon Contractor's belief that Subcontractor is in default but Subcontractor is not then in default".

Signing below shall acknowledge the parties' agreement to all the terms as stated herein.

Sincerely,

Steven L. Jones
General Counsel

cc:    SV, MV, JH

William Marshalla
Joseph J. Henderson & Son, Inc.

Matt Von Bielingen
Interstate Welding & Fabrication, Inc.

3

## TAKEOVER AGREEMENT

THIS AGREEMENT is between Great American Insurance Company ("GAIC"), and Joseph J. Henderson & Son, Inc. ("Obligee"), and is effective on the date provided below.

### Recitals

WHEREAS on or about March 26, 2004, Obligee entered into a written Contract (JJH-IWF Contract) with Interstate Welding & Fabrication, Inc., ("Original Contractor" also sometimes referred to herein as "the Principal.") for the Structural Steel & Miscellaneous Metals, NSSD Zion Township Sludge Recycling Facility ("Project") in the amount of $2,400,000.00, which JJH-IWF Contract has not been modified except by change orders contemplated under the JJH-IWF Contract; and

WHEREAS on or about March 26, 2004, GAIC, as surety for Principal, executed a Performance and Payment Bond in favor of Obligee for the Project each in the amount of $2,400,000.00; and

WHEREAS Obligee advises $1,970197.20 has been paid to or on behalf of the Original Contractor on the Project as of August 24, 2005; and

WHEREAS on July 7, 2005, Obligee issued a Notice of Termination of Default on the Contract, with copy to GAIC and in July, 2005, the exact date of demand being a matter of dispute between the parties, Obligee made demand upon GAIC to complete the Contract pursuant to the Performance Bond; and

WHEREAS Principal asserts that Obligee has improperly terminated the Contract and Obligee denies same; and

WHEREAS while GAIC has yet to complete its investigation into the propriety of the Notice of Termination of Default, GAIC, under a complete reservation of rights, and Obligee, under a complete reservation of rights, are entered into this agreement so that the completion of the work covered by the Contract can proceed to avoid any additional costs and delays; and



WHEREAS GAIC is willing to complete or procure the completion of the JJH-IWF Contract in accordance with the terms of the JJH-IWF Contract, its Performance Bond and limiting penal sum, and this Agreement, provided that in doing so, it will receive the entire JJH-IWF Contract balance, as set forth herein, that is due or may become due pursuant to the JJH-IWF Contract and that its liability shall not exceed in any manner the penal sum of the bond; and

WHEREAS in consideration of GAIC agreeing to complete the work required by said JJH-IWF Contract and for other good and valuable consideration, the receipt of which is hereby acknowledged, GAIC and Obligee hereby agree as follows:

### AGREEMENTS:

1.    **Recitals are Incorporated into this Agreement.**   The recitals are incorporated and made a part of this Agreement.

2.    **GAIC Assumes the Undertakings of the Original Contractor.**  GAIC hereby undertakes to cause the performance of each and every one of the terms, covenants and conditions of the JJH-IWF Contract, including all modifications thereto, and agrees to be bound by the Contract subject to the limits of the Performance Bond's penal sum.  Obligee acknowledges that GAIC, by its execution of this Agreement, is acting in its capacity as Surety for the Original Contractor in making its arrangements for the performance and completion of the Contract, and not as a completing contractor, and that GAIC is not assuming any obligations or liabilities beyond those set forth in the Bonds.  As to the completion of the Contract, except as otherwise provided in this Agreement, GAIC is entitled to all rights, title and interest of the Original Contractor to the JJH-IWF Contract in all respects as if GAIC were the original party to the Contract.  Similarly, GAIC assumes all duties and responsibilities to the Obligee and the Owner, North Shore Sanitary District, due under the JJH-IWF Contract , subject only to the limits of the Performance Bond's penal sum. The term "Contractor" as used in the

Contract shall be deemed, after the effective date of this Agreement, to refer to GAIC rather than to the Original Contractor.

3.    **The Scope of the Work.** The work under the Contract to be performed by GAIC under this Agreement is detailed in the Contract Documents.

4.    **Obligee Acknowledges the work will be performed by the Completion Contractor.** Obligee acknowledges that GAIC will subcontract the performance of the work under the JJH-IWF Contract to a completion contractor (the "Completion Contractor"). GAIC may satisfy the required insurance obligations under the JJH-IWF Contract by providing evidence of the required insurance coverage carried by the Completion Contractor, with GAIC being named as an additional insured under the policy or policies.

5.    **GAIC and Owner Stipulate to the Contract Amount, Amount Paid, Contract Adjustments and Pending Change Orders.** As of the date of the execution of this Agreement, GAIC and Owner agree that:

a)    The amount of the original Contract is  $ 2,400,000.00 .

b)    The amount of the approved change orders is:  $ 152,000.00.

c)    The adjusted Contract amount is:  $ 2,552,000.00./

d)    The amounts paid to date for the Contract work is  $1,970,197.20

e)    The amount remaining to be paid under the Contract and that is available to GAIC for completion of the work including any correction or repair of the work previously performed by the Original Contractor is $581,802.80  less any outstanding unpaid claims, debts or liens of subcontractors or suppliers for JJH-

IWF Contract work, and less set-offs or backcharges by Obligee per terms of the JJH-IWF Contract.

f)     The amount of the pending change orders that have been submitted to Obligee, rejected by the Owner as unsupported and unacceptable as to costs claimed, with an Owner counter-offer of approximately $35,000.00 , which counter-offer had not yet been responded to by Original Contractor is: $ 210,119.21, and were submitted for the work and for the values described in the Interstate Change Order log attached as Exhibit A and JJH Change Order Request log attached as Exhibit B to this Agreement.

g)     Obligee advises $ 100,969.99 is the amounts of the costs it has incurred as of the date of this Agreement that are setoffs from the Contract Balance. GAIC reserves its rights to contest the amount and appropriateness of such setoff by Obligee.

6.     Obligee will pay GAIC Original Contract Balance for Completion of the Work.  Obligee shall pay to GAIC the JJH-IWF Contract Balance, as adjusted to account for any additional amounts of money or deletions on account of any modifications requested and authorized by Obligee, as the work progresses. The payment of the Contract Balance to GAIC shall be made in accordance with the terms of the Contract and as modified by Paragraph 7 of this Agreement. Payment of this Balance is subject to all the terms of the JJH-IWF Contract, including , but not limited to, keeping the Project free of claims or liens from subcontractor or suppliers employed by the Original or Completing Contractors.

7.     GAIC will pay costs of Completion in Excess of the Original Contract Balance; Penal Sum of the Bond is the Maximum Liability of GAIC.  GAIC agrees to spend its own funds as may be necessary from time to time to pay for the performance of the JJH-IWF Contract by the Completion Contractor in the event that the JJH-IWF Contract Balance is insufficient, with any such payments being credited against the penal sum of the Performance

Bond. Nothing in this Agreement constitutes a waiver of the applicable penal sum or a waiver of Obligee's right to claim against GAIC up to the full amount of the penal sum. Upon exhaustion of the penal sum, GAIC's liability is extinguished under the Performance Bond. Exhaustion of the penal sum is defined as the point in time when GAIC's expenditure toward completion of the Project exceeds $2,400,000.00 more than it has received of the Contract Balances. **GAIC shall give notice to Obligee of all such Excess costs expended which reduce the available penal sum of the Performance Bond within ten business days of such expenditure.**

8.      **Obligee will permit GAIC use of Equipment and Materials.** Insofar as the Obligee has any right, title or interest therein, the Obligee agrees that GAIC and its Completion Contractor shall have the right to use without charge, any of the equipment, materials and appurtenances furnished or supplied by the Original Contractor which may have been fabricated for use in connection with the Contract, whether or not presently upon the Project site, **provided such equipment, materials, or appurtenances have been paid for and appropriate lien waivers supplied to the Obligee** .

9.      **GAIC will Designate an Authorized Representative to Communicate with Obligee about the work on a Day-to-Day Basis.** GAIC shall be represented at the Project by the Completion Contractor. Prior to the issuance of the Notice to Proceed, GAIC shall specifically authorize in writing an individual with the Completion Contractor to be its representative (the "Authorized Representative") solely for the purposes set forth in this paragraph. The Authorized Representative will represent GAIC in dealing with Obligee on day-to-day construction issues with respect to the Project. **Costs for such Authorized Representative** may reduce the penal sum of the Performance Bond by up to $30,000.00.      GAIC hereby designates the Authorized Representative to prepare and process pay requisitions on the Contract. GAIC, however, will sign all pay requisitions submitted to Obligee. Payments from Obligee shall be made payable to GAIC and transmitted to GAIC at the following address, unless Obligee is notified in writing that such payments are to be made to another **individual at GAIC.**

Jeffrey S. Jubera, Esq.
Bond Claim Manager
Great American Insurance Company
PO Box 2119
Cincinnati, OH 45201

10.    **The Authorized Representative is empowered to Negotiate Changes and Scope Issues for GAIC.** The Authorized Representative shall have, on behalf of GAIC, the authority to negotiate and sign change orders for extra work (work that is different from, in excess of, or beyond the scope of the work required by the Original Contract) requested or required by Obligee (hereinafter "Change Order") without GAIC's prior written approval, provided the Completion Contractor is given additional time to perform the Change Order. If no additional time is given to the Completion Contractor to perform the Change Order, the Change Order must be signed by GAIC and not the Authorized Representative. This provision is inserted to allow GAIC to ensure a reasonable period for the performance of such Change Order work is allowed, in order to avoid assessment of penalties for delay. GAIC agrees to promptly process such change orders and not unreasonably withhold approval. Even if GAIC fails to agree with the time allotment for the Change Order, nothing in this paragraph alters or amends the duties of GAIC or its Completion Contractor under the assumed JJH-IWF Contract, including the duty to perform work when and as directed, including Change Order work.

11.    **Payment Bond Remains in Effect.** The Obligee shall not withhold any of the Contract Balance from GAIC because of or on account of any claims, liens, suits or demands by any persons or entities furnishing or alleging to have furnished labor and/or materials to the Project except as provided by statute or as provided in the Original Contract. There are several claims for outstanding work by subcontractors or suppliers of the Original Contractor. GAIC intends to resolve all of these claims under its Payment Bond or otherwise and provide lien waivers for such work to Obligee. The Payment Bond shall remain in full force and effect in accordance with its terms and provisions as they apply to

Original Contractor as Contractor for the Completion Contractor as well.

The total liability of GAIC under the Payment Bond is limited to and shall not exceed the penal sum of the Bond in the amount of $2,400,000.00. All Payment Bond payments properly made by GAIC shall be credited against the penal sum of the Payment Bond. Nothing in this Agreement constitutes a waiver of such penal sum or an increase in the liability of GAIC under the Payment Bond.

12. **Corrective Work Arising from Original Contractor's Work. The Owner already has deemed certain work performed by the Original Contractor to be defective or incorrect and may so deem other work of the Original or Completion Contractor; such work must be corrected pursuant to the terms of the JJH-IWF Contract. Nothing in this paragraph is intended to alter or amend the duties of the Original Contractor, GAIC, JJH, or the Completing Contractor under the assumed JJH-IWF Contract. Any and all warranties that were to be provided under the JJH-IWF Contract shall be provided. Any rights provided under the JJH-IWF Contract shall not be deemed waived by performance of corrective work, and when notice of corrective work is required to be given IWF under the Contract, it shall be given to GAIC's Authorized representative.**

13. **GAIC reserves the right of the Original Contractor to Challenge the Obligee's Declaration of Default and Termination.** By execution of this Agreement, GAIC does not waive the Original Contractor's rights, if any, to contest the validity of the default or any other rights the Original Contractor may have.

14. **Notices:** Notices under this Agreement shall be provided to the following individuals and addresses:

a) All written notices made by Obligee in accordance with the Contract shall be made both to the Authorized Representative and to GAIC as follows:

b) As to the Authorized Representative:

> Daniel Power
> Lovett Silverman
> 33 Bryant St., Suite 310
> San Francisco, CA 94107

c) As to GAIC:

Jeffrey S. Jubera, Esq.
Bond Claim Manager
Great American Insurance Company
PO Box 2119
Cincinnati, OH 45201

d)     All written notices made by GAIC or its Authorized Representative

shall be made both to Obligee and its Attorneys:

e)     As to Obligee:

David Henderson
Joseph J. Henderson & Son, Inc.
4286 Old Grand Avenue
P.O. Box 9
Gurnee, Illinois 60031-0009

f)     As to Attorneys of Obligee:

Henderson & Henderson, P.C.
700 S. Lewis Avenue
Waukegan, IL 60085

15.    **Obligee may opt to Take a Lump Sum Payment from GAIC in Lieu of
Performance under the terms of this Agreement.**  Within 20 days of the effective date of this
Agreement, obligee may elect to accept a lump sum payment for completion of the Contract work
in lieu of the obligations undertaken by GAIC under the terms of this Agreement.  If a lump sum
option is offered by the Obligee and accepted by GAIC, the lump sum payment would fully
discharge and release the performance bond.  In the event the performance bond is discharged by
a lump sum payment, GAIC agrees: a) the payment bond remains in effect for labor performed
and materials supplied before the receipt of the lump sum payment by the Obligee, and b) to
assign, upon the request of the Obligee, any rights GAIC has under the Completion Agreement or
under subcontracts of the Original Contractor.  The performance bond is effectively discharged
upon receipt of payment of the lump sum by GAIC.

16. **This Agreement is the Complete Agreement of the Parties.** This Agreement constitutes the entire understanding, discussions, and agreements between the parties hereto with regard to the completion of the Contract.

17. **This Agreement is solely for the Benefit of the Parties.** This Agreement is solely for the benefit of Obligee and GAIC. Obligee and GAIC do not intend by any provision of this Agreement to create any rights in or increase the rights of any third-party beneficiaries, nor to confer any benefit upon or enforceable rights under this Agreement or otherwise upon anyone other than Obligee and GAIC.

19. **Illinois law applies.** This Agreement shall be governed by and controlled by the laws of the State of Illinois.

21. **Execution and Effective Date of the Agreement.** The undersigned represent they are authorized to sign this Agreement for the parties; and that the Agreement was negotiated at arms length between the parties. This Agreement shall be effective when of the parties have executed a counterpart.


JOSEPH J. HENDERSON & SON, INC.

By: _____

Its: VICE PRESIDENT


GREAT AMERICAN INSURANCE COMPANY

By: _____

Its: _____

## EXHIBIT A TO TAKEOVER AGREEMENT

## SUBMITTED CHANGE ORDERS

| CWO/CO# | Submit Date | Description | Amount |
|---|---|---|---|
| COR 17.1 | 01/29/2005 | Unit F changes | $736.00 |
| COR 16.1 | 02/12/2005 | Revised Contract Drawings | $145,660.31 |
| COR 15.1 | 01/29/2005 | Unit D Canopy change | $561.20 |
| COR 14.0 | 01/12/2005 | Clip Angle changes | $4,393.82 |
| COR 12.1 | 01/30/2004 | Unit E approval changes | $12,686.70 |
| COR 11.1 | 01/29/2005 | Unit D approval changes | $9,730.96 |
| COR 10.1 | 01/29/2005 | Added Stub - RFI #8 | $1,880.18 |
| | | | |
| COR 8.1 | 01/30/2005 | Unit C Mezzanine Framing | $10,128.28 |
| COR 7.1 | 01/31/2005 | RFI #135 | $3,899.55 |
| COR 5.1 | 01/31/2005 | Added Beam Unit E | $6,659.31 |
| COR 4.1 | 01/31/2005 | Bracing Changes Unit B | $6,244.44 |
| COR 1.1 | 01/31/2005 | Column Splice Change | $7,538.48 |

Total  $210,119.21

## EXHIBIT B TO TAKEOVER AGREEMENT

| JJH COR # | Interstate COR # | | |
|---|---|---|---|
| 8 | 1.1 | $ | 7,538.48 |
| 9 | 4.1 | $ | 6,244.44 |
| 10 | 5.1 | $ | 6,659.31 |
| 11 | 7.1 | $ | 3,899.55 |
| 12 | 8.1 | $ | 10,128.28 |
| 13 | 10.1 | $ | 1,880.18 |
| 14 | 11.1 | $ | 9,730.96 |
| 15 | 12.1 | $ | 12,686.70 |
| 16 | 14 | $ | 4,393.82 |
| 17 | 15.1 | $ | 561.20 |
| 18 | 16.1 | $ | 145,660.31 |
| 19 | 17.1 | $ | 736.00 |
| | Total | | $ 210,119.21 |

Bond Number: 8510337849

# Construction Performance Bond

Any singular reference to Contractor, Surety, Owner or other party shall be considered plural where applicable.

CONTRACTOR (Name and Address):

Joseph J. Henderson & Son, Inc.
4288 Old Grand Avenue
Gurnee, IL  60031-0009

SURETY (Name and Principal Place of Business):

Travelers Casualty and Surety Company
of America
One Town Square
Hartford, CT 06183-9062

OWNER (Name and Address):

North Shore Sanitary District
WM. Koepsel Drive
Gurnee, IL  60031

CONSTRUCTION CONTRACT
Date: March 16, 2004
Amount: Twenty Eight Million Two Hundred Eleven Thousand --- no/100  ($28,211,000.00)
Description (Name and Location):
Zion Township Landfill Sludge Recycling Facility
Gurnee, Illinois

BOND
Date (Not earlier than Construction Contract Date): March 24, 2004
Amount: Twenty Eight Million Two Hundred Eleven Thousand --- no/100  ($28,211,000.00)
Modifications to this Bond Form:

CONTRACTOR AS PRINCIPAL
Company: Joseph J. Henderson & Son, Inc.       (Corp. Seal)
Signature:
Name and Title: Michael L. Henderson, President

SURETY
Company: Travelers Casualty And Surety       (Corp. Seal)
Company of America
Signature:
Name and Title: R.O. Drost
Attorney - In - Fact

CONTRACTOR AS PRINCIPAL
Company:                          (Corp. Seal)
Signature:
Name and Title:

SURETY
Company:                          (Corp. Seal)
Signature:
Name and Title:

EJCDC No. 1910-28A (1984 Edition)
Prepared through the joint efforts of The Surety Association of America, Engineers' Joint Contract Documents Committee, The Associated General Contractors of America, and the American Institute of Architects.

1. The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner for the performance of the Construction Contract, which is incorporated herein by reference.

2. If the Contractor performs the Construction Contract, the Surety and the Contractor shall have no obligation under this Bond, except to participate in conferences as provided in Subparagraph 3.1.

3. If there is no Owner Default, the Surety's obligation under this Bond shall arise after:

3.1. The Owner has notified the Contractor and the Surety at its address described in Paragraph 10 below, that the Owner is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and the Surety to be held not later than fifteen days after receipt of such notice to discuss methods of performing the Construction Contract. If the Owner, the Contractor and the Surety agree, the Contractor shall be allowed a reasonable time to perform the Construction Contract, but such an agreement shall not waive the Owner's right, if any, subsequently to declare a Contractor Default; and

3.2. The Owner has declared a Contractor Default and formally terminated the Contractor's right to complete the contract. Such Contractor Default shall not be declared earlier than twenty days after the Contractor and the Surety have received notice as provided in Subparagraph 3.1; and

3.3. The Owner has agreed to pay the Balance of the Contract Price to the Surety in accordance with the terms of the Construction Contract or to a contractor selected to perform the Construction Contract in accordance with the terms of the contract with the Owner.

4. When the Owner has satisfied the conditions of Paragraph 3, the Surety shall promptly and at the Surety's expense take one of the following actions:

4.1. Arrange for the Contractor, with consent of the Owner, to perform and complete the Construction Contract; or

4.2. Undertake to perform and complete the Construction Contract itself, through its agents or through independent contractors; or

4.3. Obtain bids or negotiated proposals from qualified contractors acceptable to the Owner for a contract for performance and completion of the Construction Contract, arrange for a contract to be prepared for execution by the Owner and the contractor selected with the Owner's concurrence, to be secured with performance and payment bonds executed by a qualified surety equivalent to the bonds issued on the Construction Contract, and pay to the Owner the amount of damages as described in Paragraph 6 in excess of the Balance of the Contract Price incurred by the Owner resulting from the Contractor's default; or

4.4. Waive its right to perform and complete, arrange for completion, or obtain a new contractor and with reasonable promptness under the circumstances:

1. After investigation, determine the amount for which it may be liable to the Owner and, as soon as practicable after the amount is determined, tender payment therefor to the Owner; or

2. Deny liability in whole or in part and notify the Owner citing reasons therefor.

5. If the Surety does not proceed as provided in Paragraph 4 with reasonable promptness, the Surety shall be deemed to be in default on this Bond fifteen days after receipt of an additional written notice from the Owner to the Surety demanding that the Surety perform its obligations under this Bond, and the Owner shall be entitled to enforce any remedy available to the Owner. If the Surety proceeds as provided in Subparagraph 4.4, and the Owner refuses the payment tendered or the Surety has denied liability, in whole or in part, without further notice the Owner shall be entitled to enforce any remedy available to the Owner.

6. After the Owner has terminated the Contractor's right to complete the Construction Contract, and if the Surety elects to act under Subparagraph 4.1, 4.2, or 4.3 above, then the responsibilities of the Surety to the Owner shall not be greater than those of the Contractor under the Construction Contract, and the responsibilities of the Owner to the Surety shall not be greater than those of the Owner under the Construction Contract. To the limit of the amount of this Bond, but subject to commitment by the Owner of the Balance of the Contract Price to mitigation of costs and damages on the Construction Contract, the Surety is obligated without duplication for:

6.1. The responsibilities of the Contractor for correction of defective work and completion of the Construction Contract;

6.2. Additional legal, design professional and delay costs resulting from the Contractor's Default, and resulting from the actions or failure to act of the Surety under Paragraph 4; and

6.3. Liquidated damages, or if no liquidated damages are specified in the Construction Contract, actual damages caused by delayed performance or non-performance of the Contractor.

7. The Surety shall not be liable to the Owner or others for obligations of the Contractor that are unrelated to the Construction Contract, and the Balance of the Contract Price shall not be reduced or set off on account of any such unrelated obligations. No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators, or successors.

8. The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

9. Any proceeding, legal or equitable, under this Bond may be instituted in any court of competent jurisdiction in the location in which the work or part of the work is located and shall be instituted within two years after Contractor Default or within two years after the Contractor ceased working or within two years after the Surety refuses or fails to perform its obligations under this Bond, whichever occurs first. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

10. Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page.

11. When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in this Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is that this Bond shall be construed as a statutory bond and not as a common law bond.

12. Definitions.

12.1. Balance of the Contract Price: The total amount payable by the Owner to the Contractor under the Construction Contract after all proper adjustments have been made, including allowance to the Contractor of any amounts received or to be received by the Owner in settlement of insurance or other claims for damages to which the Contractor is entitled, reduced by all valid and proper payments made to or on behalf of the Contractor under the Construction Contract.

12.2. Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

12.3. Contractor Default: Failure of the Contractor, which has neither been remedied nor waived, to perform or otherwise to comply with the terms of the Construction Contract.

12.4. Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

(FOR INFORMATION ONLY—Name, Address and Telephone)

AGENT or BROKER:
T.J. Adams Group, LLC
333 East Butterfield Rd.
Lombard, IL 60148
(630) 324-2500

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):
Donohue & Associates
4343 So. Taylor Drive
Sheboygan, WI 53081
(920) 208-0296

1. The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner to pay for labor, materials and equipment furnished for use in the performance of the Construction Contract, which is incorporated herein by reference.

2. With respect to the Owner, this obligation shall be null and void if the Contractor:

  2.1. Promptly makes payment, directly or indirectly, for all sums due Claimants, and

  2.2. Defends, indemnifies and holds harmless the Owner from claims, demands, liens or suits by any person or entity whose claim, demand, lien or suit is for payment for labor, materials or equipment furnished for use in the performance of the Construction Contract, provided the Owner has promptly notified the Contractor and the Surety (at the address described in Paragraph 12) of any claims, demands, liens or suits and tendered defense of such claims, demands, liens or suits to the Contractor and the Surety, and provided there is no Owner Default.

3. With respect to Claimants, this obligation shall be null and void if the Contractor promptly makes payment, directly or indirectly, for all sums due.

4. The Surety shall have no obligation to Claimants under this Bond until:

  4.1. Claimants who are employed by or have a direct contract with the Contractor have given notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and, with substantial accuracy, the amount of the claim.

  4.2. Claimants who do not have a direct contract with the Contractor:

    1. Have furnished written notice to the Contractor and sent a copy, or notice thereof, to the Owner, within 90 days after having last performed labor or last furnished materials or equipment included in the claim stating, with substantial accuracy, the amount of the claim and the name of the party to whom the materials were furnished or supplied or for whom the labor was done or performed; and

    2. Have either received a rejection in whole or in part from the Contractor, or not received within 30 days of furnishing the above notice any communication from the Contractor by which the Contractor has indicated the claim will be paid directly or indirectly; and

    3. Not having been paid within the above 30 days, have sent a written notice to the Surety (at the address described in Paragraph 12) and sent a copy, or notice thereof, to the Owner, stating that a claim is being made under this Bond and enclosing a copy of the previous written notice furnished to the Contractor.

5. If a notice required by Paragraph 4 is given by the Owner to the Contractor or to the Surety, that is sufficient compliance.

6. When the Claimant has satisfied the conditions of Paragraph 4, the Surety shall promptly and at the Surety's expense take the following actions:

  6.1. Send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and that basis for challenging any amounts that are disputed.

  6.2. Pay or arrange for payment of any undisputed amounts.

7. The Surety's total obligation shall not exceed the amount of this Bond, and the amount of this Bond shall be credited for any payments made in good faith by the Surety.

8. Amounts owed by the Owner to the Contractor under the Construction Contract shall be used for the performance of the Construction Contract and to satisfy claims, if any, under any Construction Performance Bond. By the

Contractor furnishing and the Owner accepting this Bond, they agree that all funds earned by the Contractor in the performance of the Construction Contract are dedicated to satisfy obligations of the Contractor and the Surety under this Bond, subject to the Owner's priority to use the funds for the completion of the work.

9. The Surety shall not be liable to the Owner, Claimants or others for obligations of the Contractor that are unrelated to the Construction Contract. The Owner shall not be liable for payment of any costs or expenses of any Claimant under this Bond, and shall have under this Bond no obligations to make payments to, give notices on behalf of, or otherwise have obligations to Claimants under this Bond.

10. The Surety hereby waives notice of any change, including changes of time, to the Construction Contract or to related subcontracts, purchase orders and other obligations.

11. No suit or action shall be commenced by a Claimant under this Bond other than in a court of competent jurisdiction in the location in which the work or part of the work is located of after the expiration of one year from the date (1) on which the Claimant gave the notice required by Subparagraph 4.1 or Clause 4.2 (iii), or (2) on which the last labor or service was performed by anyone or the last materials or equipment were furnished by anyone under the Construction Contract, whichever of (1) or (2) first occurs. If the provisions of this Paragraph are void or prohibited by law, the minimum period of limitation available to sureties as a defense in the jurisdiction of the suit shall be applicable.

12. Notice to the Surety, the Owner or the Contractor shall be mailed or delivered to the address shown on the signature page. Actual receipt of notice by Surety, the Owner or the Contractor, however accomplished, shall be sufficient compliance as of the date received at the address shown on the signature page.

13. When this Bond has been furnished to comply with a statutory or other legal requirement in the location where the construction was to be performed, any provision in the Bond conflicting with said statutory or legal requirement shall be deemed deleted herefrom and provisions conforming to such statutory or other legal requirement shall be deemed incorporated herein. The intent is, that this Bond shall be construed as a statutory bond and not as a common law bond.

14. Upon request by any person or entity appearing to be a potential beneficiary of this Bond, the Contractor shall promptly furnish a copy of this Bond or shall permit a copy to be made.

15. DEFINITIONS

  15.1. Claimant: An individual or entity having a direct contract with the Contractor or with a subcontractor of the Contractor to furnish labor, materials or equipment for use in the performance of the Contract. The intent of this Bond shall be to include without limitation in the terms "labor, materials or equipment" that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental equipment used in the Construction Contract, architectural and engineering services required for performance of the work of the Contractor and the Contractor's subcontractors, and all other items for which a mechanic's lien may be asserted in the jurisdiction where the labor, materials or equipment were furnished.

  15.2. Construction Contract: The agreement between the Owner and the Contractor identified on the signature page, including all Contract Documents and changes thereto.

  15.3. Owner Default: Failure of the Owner, which has neither been remedied nor waived, to pay the Contractor as required by the Construction Contract or to perform and complete or comply with the other terms thereof.

---

(FOR INFORMATION ONLY—Name, Address and Telephone)

AGENT or BROKER:
T.J. Adams Group, LLC
333 East Butterfield Rd.
Lombard, IL  60148
(630) 324-2500

OWNER'S REPRESENTATIVE (Architect, Engineer or other party):
Donohue & Associates
4343 So. Taylor Drive
Sheboygan, WI  53081
(920) 208-0296

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA      Bond No.: 8S10337849
TRAVELERS CASUALTY AND SURETY COMPANY
FARMINGTON CASUALTY COMPANY
Hartford, Connecticut 06183-9062

## POWER OF ATTORNEY AND CERTIFICATE OF AUTHORITY OF ATTORNEY(S)-IN-FACT

KNOW ALL PERSONS BY THESE PRESENTS, THAT TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, corporations duly organized under the laws of the State of Connecticut, and having their principal offices in the City of Hartford, County of Hartford, State of Connecticut, (hereinafter the "Companies") hath made, constituted and appointed, and do by these presents make, constitute and appoint: *Gerald C. Olson, Joanne F. Costa, Robert W. Mielke, John E. Adams, Robert D. Jacobson, Mary Ann Powell, R. O. Drost, James M. Drost, Gregory A. Field, Kathy B. Subak,* of *Lombard / Palatine, Illinois,* their true and lawful Attorney(s)-in-Fact, with full power and authority hereby conferred to sign, execute and acknowledge, at any place within the United States, the following instrument(s): by his/her sole signature and act, any and all bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking and any and all consents incident thereto, *not limited to a specified dollar amount,* and to bind the Companies, thereby as fully and to the same extent as if the same were signed by the duly authorized officers of the Companies, and all the acts of said Attorney(s)-in-Fact, pursuant to the authority herein given, are hereby ratified and confirmed.

This appointment is made under and by authority of the following Standing Resolutions of said Companies, which Resolutions are now in full force and effect:

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President, any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary may appoint Attorneys-in-Fact and Agents to act for and on behalf of the company and may give such appointee such authority as his or her certificate of authority may prescribe to sign with the Company's name and seal with the Company's seal bonds, recognizances, contracts of indemnity, and other writings obligatory in the nature of a bond, recognizance, or conditional undertaking, and any of said officers or the Board of Directors at any time may remove any such appointee and revoke the power given him or her.

VOTED: That the Chairman, the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President may delegate all or any part of the foregoing authority to one or more officers or employees of this Company, provided that each such delegation is in writing and a copy thereof is filed in the office of the Secretary.

VOTED: That any bond, recognizance, contract of indemnity, or writing obligatory in the nature of a bond, recognizance, or conditional undertaking shall be valid and binding upon the Company when (a) signed by the President, any Vice Chairman, any Executive Vice President, any Senior Vice President or any Vice President, any Second Vice President, the Treasurer, any Assistant Treasurer, the Corporate Secretary or any Assistant Secretary and duly attested and sealed with the Company's seal by a Secretary or Assistant Secretary, or (b) duly executed (under seal, if required) by one or more Attorneys-in-Fact and Agents pursuant to the power prescribed in his or her certificate or their certificates of authority or by one or more Company officers pursuant to a written delegation of authority.

This Power of Attorney and Certificate of Authority is signed and sealed by facsimile (mechanical or printed) under and by authority of the following Standing Resolution voted by the Boards of Directors of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, which Resolution is now in full force and effect:

VOTED: That the signature of each of the following officers: President, any Executive Vice President, any Senior Vice President, any Vice President, any Assistant Vice President, any Secretary, any Assistant Secretary, and the seal of the Company may be affixed by facsimile to any power of attorney or to any certificate relating thereto appointing Resident Vice Presidents, Resident Assistant Secretaries or Attorneys-in-Fact for purposes only of executing and attesting bonds and undertakings and other writings obligatory in the nature thereof, and any such power of attorney or certificate bearing such facsimile signature or facsimile seal shall be valid and binding upon the Company and any such power so executed and certified by such facsimile signature and facsimile seal shall be valid and binding upon the Company in the future with respect to any bond or undertaking to which it is attached.

SPECIAL WORDING (11-00)

IN WITNESS WHEREOF, TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY have caused this instrument to be signed by their Senior Vice President, and their corporate seals to be hereto affixed this 7th day of August 2003.

STATE OF CONNECTICUT

)SS. Hartford

COUNTY OF HARTFORD

TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA
TRAVELERS CASUALTY AND SURETY COMPANY
FARMINGTON CASUALTY COMPANY

  

By _____

George W. Thompson
Senior Vice President

On this 7th day of August, 2003 before me personally came GEORGE W. THOMPSON to me known, who, being by me duly sworn, did depose and say: that he/she is Senior Vice President of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, the corporations described in and which executed the above instrument; that he/she knows the seals of said corporations; that the seals affixed to the said instrument are such corporate seals; and that he/she executed the said instrument on behalf of the corporations by authority of his/her office under the Standing Resolutions thereof.



Marie C Tetreault

My commission expires June 30, 2006  Notary Public
Marie C. Tetreault

CERTIFICATE

I, the undersigned, Assistant Secretary of TRAVELERS CASUALTY AND SURETY COMPANY OF AMERICA, TRAVELERS CASUALTY AND SURETY COMPANY and FARMINGTON CASUALTY COMPANY, stock corporations of the State of Connecticut, DO HEREBY CERTIFY that the foregoing and attached Power of Attorney and Certificate of Authority remains in full force and has not been revoked; and furthermore, that the Standing Resolutions of the Boards of Directors, as set forth in the Certificate of Authority, are now in force.

Signed and Sealed at the Home Office of the Company, in the City of Hartford, State of Connecticut. Dated this  24th  day of  March  , 2004 .

  

By _____

Kori M. Johanson
Assistant Secretary, Bond

**STATE OF ILLINOIS**

**COUNTY OF DUPAGE**

On this **24th** day of **March, 2004** before me came **R.O. Drost**, who executed the preceding instrument, to me personally known, and being by me duly sworn, said that he/she is the therein described and authorized ATTORNEY-IN-FACT of the **Travelers Casualty & Surety Company of America** that the seal affixed to said instrument is the Corporate Seal of said company.

In testimony whereof, I have hereunto set my hand and affixed my official seal the day and year first above written.

(SEAL)                    *Lynn A. Thompson*

Lynn A. Thompson, Notary

OFFICIAL SEAL
LYNN A THOMPSON
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES: 03/04/06

Bond No.: 8S10337849



## IMPORTANT DISCLOSURE NOTICE OF TERRORISM INSURANCE COVERAGE

On November 26, 2002, President Bush signed into law the Terrorism Risk Insurance Act of 2002 (the "Act"). The Act establishes a short-term program under which the Federal Government will share in the payment of covered losses caused by certain acts of international terrorism. We are providing you with this notice to inform you of the key features of the Act, and to let you know what effect, if any, the Act will have on your premium.

Under the Act, insurers are required to provide coverage for certain losses caused by international acts of terrorism as defined in the Act. The Act further provides that the Federal Government will pay a share of such losses. Specifically, the Federal Government will pay 90% of the amount of covered losses caused by certain acts of terrorism which is in excess of Travelers' statutorily established deductible for that year. The Act also caps the amount of terrorism-related losses for which the Federal Government or an insurer can be responsible at $100,000,000,000.00, provided that the insurer has met its deductible.

Please note that passage of the Act does not result in any change in coverage under the attached policy or bond (or the policy or bond being quoted). Please also note that no separate additional premium charge has been made for the terrorism coverage required by the Act. The premium charge that is allocable to such coverage is inseparable from and imbedded in your overall premium, and is no more than one percent of your premium.

## NOTICE OF CLAIM UNDER CONTRACTOR'S BOND
## OF GREAT AMERICAN INSURANCE COMPANY

TO:

North Shore Sanitary District Board of Trustees
To the attention of:
Stephen J. Drew, President and Judy Morley,
Secretary
Wm. Koepsel Drive
Gurnee, IL 60031
Via Hand Delivery

St. Paul Travelers
Surety Department
125 Shuman Blvd
Suite 201
Naperville, IL 60563
Via Certified Mail
No. 7005 2579 0000 8795 6643
Return Receipt Requested

Joseph J. Henderson & Sons, Inc.
To the attention of:
Michael L. Henderson
Registered Agent
4288 Old Grand Avenue
Gurnee, IL 60031
Via Hand Delivery

Travelers Casualty and Surety Company
of America
One Town Square
Hartford, CT 06183-9062
Via Certified Mail
No. 7005 2579 0000 8795 6292
Return Receipt Requested

     Claimant, Great American Insurance Company ("GAIC"), a corporation organized and existing under the laws of the state of Ohio and authorized to transact business in the state of Illinois, with its principal place of business located at 580 Walnut Street, Cincinnati, Ohio, entered into a contract (the "Contract") with the Joseph J. Henderson & Son, Inc. ("Henderson") for the public improvement project known as NSSD Zion Township Sludge Recycling Facility (the "Project") located in Gurnee, Illinois. Under the Contract, GAIC was to undertake "to cause the performance of each and every one of the terms, covenants and conditions" of the subcontract agreement (the "Subcontract") between Henderson and Interstate Welding & Fabrication, Inc. ("IWF") for the furnishing and installation of the "Structural Steel & Miscellaneous Metals" (the "Work") for the Project. Additionally, under the Contract, GAIC "assumes all duties and responsibilities" to Henderson and to the North Shore Sanitary District due under the Subcontract. Under the Contract, GAIC performed the Work as the Completion Contractor as described in the Contract.

     GAIC did furnish and deliver to Henderson, at and for the improvement of the Project, Work required by the Subcontract, and the furnishing and delivery thereof was completed on or

1



about February 9, 2006.  After allowing Henderson all just credits and deductions, there is now due and owing to GAIC for the performance of the Contract the sum of $579,391.25.

Accordingly, GAIC makes claim for the sum of $579,391.25 still owing to GAIC against Travelers Casualty and Surety Company of America on the Construction Payment Bond (Bond Number 8510337849) furnished and delivered by Henderson.

Dated: June 9, 2006.

GREAT AMERICAN INSURANCE COMPANY

By:  _____

Jeffrey S. Jubera
Bond Claim Manager and Authorized Agent

### Verification

Jeffrey S. Jubera, being first duly sworn on oath, deposes and states that he is Bond Claim Manager and Authorized Agent of Great American Insurance Company, that he is duly authorized to make this verification on its behalf, that he has read the foregoing Notice of Claim under Contractor's Bond dated June 9, 2006, and knows the contents thereof, and that the statements made therein are true.

_____
Jeffrey S. Jubera

Subscribed and Sworn to before me
this 9 day of June, 2006.

_____
Notary Public

KAREN L. GROSHEIM
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES 02-20-11

2

# FORANGLENNONPALANDECH&PONZI

June 14, 2006

TO:

St. Paul Travelers
Surety Department
125 Shuman Blvd
Suite 201
Naperville, IL 60563
Via Certified Mail
No. 7005 2579 0000 8795 6643
Return Receipt Requested

Travelers Casualty and Surety Company of America
One Town Square
Hartford, CT 06183-9062
Via Certified Mail
No. 7005 2579 0000 8795 6292
Return Receipt Requested

As one of the attorneys for Great American Insurance Company, I have enclosed for service its Notice of Claim under Contractor's Bond dated June 9, 2006. I would appreciate your contacting the undersigned regarding your anticipated investigation of the matters upon which the Notice is based. In the interim, if you have any questions, please contact either me or Mr. Jeffrey S. Jubera of Great American Insurance Company at (410) 604-1596.

Thank you.

Best regards,

Paul T. Lively

cc: Jeffrey S. Jubera