IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

RIGGING SERVICES, INC., AND
ZION TOWNSHIP SLUDGE
RECYCLING FACILITY SERVICES,
INC., F/U/B RIGGING SERVICES,
INC.

       Plaintiff,

v.

INTERSTATE WELDING &
FABRICATION, INC., ZION
TOWNSHIP SLUDGE RECYCLING
FACILITY SERVICES, INC.,
JOSEPH J. HENDERSON & SON, INC.,
AND GREAT AMERICAN INSURANCE
COMPANY

       Defendants.

Case No. 05 CH 2095



**GREAT AMERICAN INSURANCE COMPANY'S ANSWERS TO RIGGING
SERVICES INC.'S FIRST AMENDED VERIFIED COMPLAINT AND
COUNTER-CLAIM**

Defendant, Great American Insurance Company ("Great American"), by

its attorneys T. Scott Leo and Bryan M. Seifert of the law firm Leo & Weber, P.C.,

hereby submits its answers to Rigging Services Inc.'s ("Rigging") first amended verified

complaint stating as follows:

**COUNT I**

1.     At all times relevant herein, Plaintiff, RIGGING SERVICES, INC.

("RIGGING") was an Illinois Corporation with its principal place of business in

Rockford, Illinois.

**ANSWER:**    Great American admits the allegations contained in paragraph 1 of

Count I of Rigging's first amended verified complaint.

EXHIBIT "A"

2.      Defendant INTERSTATE WELDING & FABRICATION, INC., ("IWF") had its principal place of business in Terra Haute, Indiana, IWF has filed for Bankruptcy protection.

**ANSWER:**      Great American admits the allegations contained in paragraph 2 of Count I of Rigging's first amended verified complaint as to the principal place of business of Interstate. Great American denies that Interstate filed for Bankruptcy protection; however, Great American admits that an involuntary bankruptcy proceeding was commenced against Interstate in the United States Bankruptcy Court of the Southern District of Indiana, pursuant to Chapter 7 of Title 11 of the United States Bankruptcy Code ("Code"), 11 U.S.C. § 101 et. seq.

3.      Defendant ("SURETY"), is a corporation authorized to transact an insurance and bonding business within the State of Illinois, under and by virtue of permission heretofore obtained from the Commissioner of Insurance of the State of Illinois.

**ANSWER:**      Great American admits the allegations contained in paragraph 3 of Count I of Rigging's first amended verified complaint.

4.      On or before March 28, 2004, JOSEPH J. HENDERSON & SON, INC., HENDERSON entered into a PRIME CONTRACT with NORTH SHORE SANITARY DISTRICT ("OWNER"), to furnish all labor and materials necessary for the work on the project known as NORTH SHORE SANITARY DISTRICT ZION TOWNSHIP SLUDGE RECYCLING FACILITY. ("PROJECT")

**ANSWER:**      Great American admits that Joseph J. Henderson & Sons, Inc. entered into a prime contract with the North Shore Sanitary District. Great American lacks sufficient information and

knowledge to admit or deny the allegation as to the date the prime contract was entered into as alleged in paragraph 4 of Count I of Rigging's amended verified complaint and therefore neither admits nor denies same but demands strict proof thereof. Great American admits that the project is known as the North Shore Sanitary District Zion Township Sludge Recycling Facility.

5.    On or before April 20, 2004, GENERAL CONTRACTOR and SURETY executed and delivered to the OWNER a contractor's Payment Bond pursuant to the Public Construction Bond Act, 30 ILCS 550/0.01-550/2 *et seq*, known as Bond No. 1-04-32-60. A copy of said Bond is attached and as Exhibit "A".

**ANSWER:**    Great American admits that it issued the bond, bond no. 1043260 ("Bond") attached to Rigging's first amended verified complaint as Exhibit A and that the Bond is itself the best evidence of its terms and conditions. Great American denies any allegations inconsistent with the Bond attached to Rigging's first amended verified complaint as Exhibit A. Great American further denies that the Bond attached as Exhibit A was issued pursuant to the Illinois Public Construction Bond Act, 30 ILCS 550/1 & 2.

6.    On or about October 20, 2004, GENERAL CONTRACTOR entered in a Subcontract with Defendant IWF to furnish labor and related work on a said PROJECT, IWF filed for Bankruptcy protection.

**ANSWER:**    Upon information and belief, Great American admits that Henderson entered into a subcontract with Interstate to furnish labor and related work on the Project. Great American has

insufficient knowledge and information to form a belief as to the

truth or falsity of the allegations contained in paragraph 6 of Count

I of Rigging's first amended verified complaint as to the date

Henderson and Interstate entered into the Subcontract and

therefore neither admits nor denies same but demands strict proof

thereof. Great American denies that Interstate filed for Bankruptcy

protection; however, Great American admits that an involuntary

bankruptcy proceeding was commenced against Interstate in the

United States Bankruptcy Court of the Southern District of

Indiana, pursuant to Chapter 7 of Title 11 of the United States

Bankruptcy Code ("Code"), 11 U.S.C. § 101 *et. seq.*

7.       On or about October 20, 2004, IWF entered into a written contract with

labor and equipment for the project known as Structural Steel and Miscellaneous Metals

RIGGING, whereupon RIGGING was to furnish labor for structural steel installation,

NORTH SHORE SANITARY DISTRICT ZION TOWNSHIP SLUDGE RECYCLING

FACILITY, ZION, ILLINOIS, a copy of which is attached and incorporated herein as

Exhibit "B".

ANSWER:       Great American admits that attached to Rigging's first amended

verified complaint as Exhibit B is a document describing the scope

of work for contract no. 8146 and that the document attached as

Exhibit B is itself the best evidence of its terms and conditions.

Great American denies any allegations inconsistent with the

document attached as Exhibit B.

8.       RIGGING furnished labor on the PROJECT, at the request and direction

of IWF, and the work provided by RIGGING to the PROJECT conformed to the terms

and conditions specified under the PRIME CONTRACT and GENERAL CONTRACTOR and the OWNER.

**ANSWER:**    Great American has insufficient knowledge and information to

form a belief as to the truth or falsity of the allegations contained

in paragraph 8 of Count I of Rigging's first amended verified

complaint and therefore neither admits nor denies same but

demands strict proof thereof.

9.    There is presently due and owing to RIGGING the sum of $295,608.05 for the materials and work furnished by RIGGING as described above; no part of said sum had been paid by IWF although RIGGING has frequently requested IWF pay the same. A copy of the Account Summary is attached and incorporated herein as Exhibit "C".

**ANSWER:**    Great American admits that attached to Rigging's first amended

verified complaint is an account summary and that the account

summary is itself the best evidence of its terms and conditions.

Great American denies any allegations inconsistent with the

account summary attached to Rigging's first amended verified

complaint as Exhibit C. Great American further denies that the

account summary attached to Rigging's first amended verified

complaint as Exhibit C is a true and accurate representation of

sums due and owing Rigging.

10.    On October 25, 2005, Plaintiff caused a notice of a bond claim to be filed with the OWNER, IWF and SURETY by certified mail, a copy of which bond claim is attached and incorporated herein as Exhibit "D".

**ANSWER:**    Great American admits that attached to Rigging's first amended

verified complaint as Exhibit D is a Notice of Claim under Labor

and Material Payment Bond and that the Notice is itself the best

evidence of its terms and conditions. Great American denies any

allegations inconsistent with the Notice attached to Rigging's first

amended verified complaint as Exhibit D.

## COUNT II

**ANSWER:**    Great American makes no response to Count II of Rigging's first

amended verified complaint as Count II is not directed towards

Great American. Great American reserves its right to answer Count

II of Rigging's first amended verified complaint if ordered to do so

by the Court.

## COUNT III

**ANSWER:**    Great American makes no response to Count III of Rigging's first

amended verified complaint as Count III is not directed towards

Great American. Great American reserves its right to answer Count

III of Rigging's first amended verified complaint if ordered to do so by the

court.

WHEREFORE, Great American Insurance Company prays this Court enter an

order dismissing Plaintiff's first amended verified complaint with prejudice, enter a

judgment in favor of Great American and against the Plaintiff granting Great American

its costs and attorneys' fees to defend this suit and granting such other relief this court

deems equitable and just.

# COUNTER-CLAIM

NOW COMES Great American Insurance Company ("Great American") by its attorneys T. Scott Leo and Bryan M. Seifert of Leo & Weber, P.C., for itself and as assignee and subrogee of Interstate Welding & Fabrication, Inc. ("Interstate") and in support of its counter-complaint against Defendant Joseph J. Henderson & Sons, Inc., ("Henderson") states as follows:

## Facts Common to all Counts

1. At all times relevant herein, Defendant, Great American, was an Ohio corporation and is licensed to transact surety business in the State of Illinois. (See Jeffrey S. Jubera Affidavit, ¶ 1 attached hereto as Exhibit A.)

2. At all times relevant herein, Defendant, Henderson, was an Illinois corporation with its principal place of business in Gurnee, Illinois and doing business in Lake County, Illinois.

3. At all times relevant herein, Defendant, Interstate, had its principal place of business in Terre Haute, Indiana and was doing business in Lake County, Illinois.

4. At all times relevant herein, Plaintiff, Rigging Services, Inc. ("Rigging") was an Illinois Corporation with its principal place of business in Rockford, Illinois.

5. On or before March 28, 2004, Henderson entered into a contract ("Contract") with the North Shore Sanitary District Zion Township Sludge Recycling Facility ("NSSD") in which Henderson, as prime contractor, agreed to perform construction improvements in connection with the project commonly known as

the North Shore Sanitary District Zion Township Sludge Recycling Facility ("Project").

6. On or about March 26, 2004, Henderson, entered into a subcontract ("Subcontract") with Interstate for structural steel and miscellaneous metals in connection with the Project in the amount of $2,400,000.00.

7. On or about October 20, 2004, Interstate contracted with Rigging ("Sub-Subcontract") to furnish certain labor and related work for a portion of the Project.

8. On or about March 26, 2004, Great American, as surety, at the request of and on behalf of Interstate, issued a surety performance and payment bond, bond no. 104 32 60 ("Subcontract Bond") in the penal sum of $2,400,000.00 in which Interstate appeared as principal and Henderson appeared as obligee, which Subcontract Bond guaranteed Interstate's Project performance obligations under the Subcontract and Interstate's payment to its subcontractors, material suppliers and laborers. (See Jeffrey S. Jubera Affidavit, ¶ 2 and Exhibit 1 attached hereto as Exhibit A)

9. On or about December 6, 2005, Interstate was the subject of an involuntary bankruptcy proceeding commenced in the United States Bankruptcy Court of the Southern District of Indiana, which matter is now pending as a Chapter 11 proceeding.

10. On July 7, 2005, Henderson issued a notice of default and termination to Interstate in connection with the Project and subsequently thereafter made a demand against Great American under the Subcontract Bond demanding Great

American complete the Subcontract pursuant to its obligations under the Subcontract Bond. (See Jeffrey S. Jubera Affidavit, ¶ 3, attached hereto as Exhibit A)

11. Henderson and Great American entered into a takeover agreement ("Takeover Agreement") in which Great American agreed to complete or procure completion of the Subcontract in accordance with the terms of the Subcontract, the Bond and the Takeover Agreement in consideration for Great American's receipt of the entire Subcontract balance from Henderson. (See Jeffrey S. Jubera Affidavit, ¶ 4 and Exhibit 2, attached hereto as Exhibit A)

12. Under the terms of the Takeover Agreement, Great American is entitled to all rights, title and interest of Interstate in all respects as if Great American was the original party to the Subcontract. (See Jeffrey S. Jubera Affidavit, ¶ 4 and Exhibit 2, ¶ 2, attached hereto as Exhibit A)

13. Pursuant to the Takeover Agreement and the Subcontract, Great American is deemed the original contractor under the Subcontract and became assignee and subrogee to all rights, title and interest of Interstate in the Subcontract. (See Jeffrey S. Jubera Affidavit, ¶ 4 and Exhibit 2, ¶ 2, attached hereto as Exhibit A)

14. Pursuant to the terms and conditions of the Takeover Agreement, Great American agreed to perform the remainder of Interstate's Project work in accordance with terms and conditions of the Subcontract and in accordance with Great American's obligations under the Subcontract Bond. (See Jeffrey S. Jubera Affidavit, ¶ 4 and Exhibit 2, ¶ 2, attached hereto as Exhibit A)

15. Great American performed its obligations in completion of Interstate's Subcontract work pursuant to the terms and conditions of the Subcontract, the Subcontract Bond and the Takeover Agreement. (See Jeffrey S. Jubera Affidavit, ¶ 5, attached hereto as Exhibit A)

16. Great American, for itself and as assignee and subrogee of all of Interstate's rights under the Subcontract has incurred $235,865.25 for unpaid Subcontract Project work and $343,526.00 for pending and not yet approved change order work for a total amount due and owing Great American in the amount of $579,391.25. (See Jeffrey S. Jubera Affidavit, ¶ 6, attached hereto as Exhibit A)

17. Henderson has refused and failed to pay Great American the Subcontract Balance pursuant to the terms and conditions of the Subcontract and the Takeover Agreement. (See Jeffrey S. Jubera Affidavit, ¶ 6, attached hereto as Exhibit A)

18. On June 28, 2005 Rigging filed its first amended verified complaint for claim on the payment bond, breach of contract, and quantum meruit for funds allegedly owed Rigging under its Sub-Subcontract with Interstate and pursuant to the terms and conditions of Great American's Subcontract Bond.

## COUNT I
## Foreclosure of Public Mechanics' Lien

19. Great American, as completing Subcontractor, takeover surety and as subrogee and assignee of Interstate has duly served a written notice of claim for lien on all monies, bond or warrants due or to become due under the Subcontract between Henderson and Interstate in accordance with the provisions of 770 ILCS § 60/23 et. seq. relating to mechanics' liens on public improvements, upon the secretary of the North Shore Sanitary District and registered agent of Henderson via certified

mail return receipt requested. (See Group Exhibit B, Great American Notice of Mechanics' Lien Claim)

20. Within 90-days of the service of Great American's Notice of Mechanics' Lien Claim pursuant to 770 ILCS § 60/23, Great American timely instituted its action by filing a cross-complaint against Henderson on March 22, 2006 and duly served a copy of its cross-complaint upon the secretary of the District. (See Exhibit C, Great American Insurance Company's Third-Party Cross-Complaint)

21. Great American's counter-complaint for foreclosure of its lien claim asserted herein as part of its answer to Rigging's first amended verified complaint relates back to Great American's original filing of its counter-complaint for foreclosure of its mechanics' lien claim filed March 22, 2006 and arises out of the same transaction and occurrence.

22. Although demand has been made by Great American upon Henderson to pay $579,391.25, no part has been paid.

WHEREFORE, Great American Insurance Company, requests this court enter an order: 1) for judgment in favor of Great American and against Joseph J. Henderson & Sons, Inc., in the amount of $579,391.25, plus interest, costs, attorneys' fees and prejudgment interest; and, 2) for an order requiring the North Shore Sanitary District to pay $579,391.25 from funds being held on account of the Project and Great American's mechanics' lien claim; and 3) for judgment against Joseph J. Henderson & Sons, Inc., in the amount of 2% per month of the portion of any such payment that Joseph J. Henderson & Sons, Inc., received from the North Shore Sanitary District for

work performed by Great American, for each month beginning 15 days after said payment was received; and 4) granting all other relief this Court deems equitable and just.

## COUNT II
## Breach of the Takeover Agreement

23-44.  Great American incorporates herein for paragraph 23-44 paragraphs 1-22 of its counter-claim for Count II.

45. Pursuant to the Takeover Agreement, Henderson and Great American agreed that the original contract value was $2,400,000.00, the adjusted contract value was $2,552,000.00 after all approved change orders, that Henderson has paid Interstate, prior to the Takeover Agreement, for Subcontract work in the amount of $1,970,197.20 and there remains $581,802.80 ("Subcontract Balance") in remaining Subcontract funds. (See Jeffrey S. Jubera, ¶ 4 and Exhibit 2, ¶ 5, attached hereto as Exhibit A)

46. Pursuant to the Takeover Agreement, Henderson and Great American agreed that the Subcontract Balance would be available to Great American for completion of Interstate's work. (See Jeffrey S. Jubera, ¶ 4 and Exhibit 2, ¶ 5, attached hereto as Exhibit A)

47. Pursuant to the Takeover Agreement, Henderson agreed to pay Great American the Subcontract Balance as work progresses. (See Jeffrey S. Jubera, ¶ 4 and Exhibit 2, ¶ 6, attached hereto as Exhibit A)

48. Great American performed its obligations in completion of Interstate's Subcontract work and there remains due and owing to Great American $579,391.25.

12

Joseph I. Henderson & Sons, Inc., received from the North Shore Sanitary District for

work performed by Great American, for each month beginning 15 days after said

payment was received; and 4) granting all other relief this Court deems equitable and

just.

## COUNT III
## Breach of the Illinois Prompt Payment Act

54-85. Great American incorporates herein for paragraph 54-85 paragraphs 1-22 and

45-53 of its counter-complaint for Count III.

86. The Illinois Prompt Payment Act, 50 ILCS § 505/9, provides that if a contractor,

without reasonable cause, fails to make any payments to its subcontractors within

15-days after receipt of payment under the public construction contract, the

contractor shall pay to its subcontractors, in addition to the payment due, interest

in the amount of 2% per month.

87. Upon information and belief, Henderson has received payment from the District

for work performed by Great American, Interstate and subcontractors of Great

American and Interstate.

88. After Henderson and Great American executed the Takeover Agreement, Great

American is entitled to all rights, title and interest of the Subcontract as if Great

American were the original party to the Subcontract. (See Jeffrey S. Jubera, ¶ 4

and Exhibit 2, ¶ 2, attached hereto as Exhibit A)

89. Without reasonable cause, Henderson has refused and failed to pay any sums due

and owing Great America under the Subcontract and the Takeover Agreement

within 15-days of receiving payments for Great American work from the District.

WHEREFORE, Great American Insurance Company, requests this court enter an order: 1) for judgment in favor of Great American and against Joseph J. Henderson & Sons, Inc., in the amount of $579,391.25, plus interest, costs, attorneys' fees and prejudgment interest; and, 2) for an order requiring the North Shore Sanitary District to pay $579,391.25 from funds being held on account of the Project and Great American's mechanics' lien claim; and 3) for judgment against Joseph J. Henderson & Sons, Inc., in the amount of 2% per month of the portion of any such payment that Joseph J. Henderson & Sons, Inc., received from the North Shore Sanitary District for work performed by Great American, for each month beginning 15 days after said payment was received; and 4) granting all other relief this Court deems equitable and just.

Respectfully Submitted,

**Great American Insurance Company**

One of its Attorneys

T. Scott Leo
Bryan M. Seifert
Leo & Weber, P.C.
One N. LaSalle Street, Suite 3600
Chicago, Illinois 60602
(312) 857-0910
Atty No. 35644

15

## VERIFICATION

Under penalties as provided under Section 1-109 of the Illinois Code of Civil Procedure, the undersigned certifies that the statements set forth in this instrument are true and correct to the best of my knowledge.

Jeffrey S. Jukera, Bond Claim Director
Great American Insurance Company

Subscribed and Sworn before me
This 21st day of July 2006.

Andrea Castellanos

OFFICIAL SEAL
ANDREA CASTELLANOS
Notary Public - State of Illinois
My Commission Expires Apr 5, 2009

16

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

IN RE:                                    )
                                          )
INTERSTATE WELDING                        )    Case No. 05-83737 FJO 11
& FABRICATION, INC.,                      )
                                          )
        Debtor.                           )

## AFFIDAVIT OF JEFFREY S. JUBERA

I, Jeffrey S. Jubera, having been first sworn on oath, depose, and state, and could competently testify to the following matters within my personal knowledge if called upon to testify in the above referenced cause:

1. I am employed by Great American Insurance Company ("Great American") as a Bond Claim Director. Great American is a New York corporation with its principal place of business in Cincinnati, Ohio, and is in the business of issuing surety bonds, which bonds secure, among other things, the performance and payment of contractual undertakings.

2. I am responsible for handling, adjusting and supervising surety bond claims and litigation relating to claims against bonds issued by Great American on behalf of Interstate Welding & Fabrication Inc. ("Interstate"). Great American issued a performance and payment bond, bond no. 104 32 60 (the "Bond"), on behalf of Interstate Welding and Fabrication, Inc. ("Interstate"), as principal, and in favor of Joseph J. Henderson & Son, Inc. ("Henderson") as obligee, in the penal sum of $2,400,000.00 in connection with the North Shore Sanitary District Zion Township Sludge Recycling Facility project ("Project"). A true and accurate copy of the Bond is attached hereto as Exhibit 1.

1

tabbles

EXHIBIT

A

3. Henderson issued a notice of default and termination to Interstate in connection with the Project on July 7, 2005, and subsequently thereafter made a demand against Great American under the Bond demanding Great American complete Interstate's subcontract with Henderson.

4. Great American entered into a takeover agreement ("Takeover Agreement") with Henderson in which Great American agreed to complete or procure completion of the Interstate's subcontract with Henderson in accordance with the terms of the subcontract, the Bond and the Takeover Agreement in consideration for Great American's receipt of the entire Subcontract balance from Henderson. A true and accurate copy of the Takeover Agreement is attached hereto as Exhibit 2.

5. Great American performed Interstate's subcontract work pursuant to the terms and conditions of the Subcontract, the Subcontract Bond and the Takeover Agreement.

6. Great American has incurred $235,865.25 for unpaid subcontract Project work and $343,526.00 for pending and not yet approved change order work for a total amount due, owing and unpaid to Great American in the amount of $579,391.25.

7. I swear under penalty of perjury that the foregoing declaration is true and correct to the best of my knowledge, information and belief.

Jeffrey S. Jubeta
Bond Claim Director

2

Subscribed and sworn to before me
This 21st day of July 2006.

Notary Public

My Commission Expires:

OFFICIAL SEAL
ANDREA CASTELLANOS
Notary Public - State of Illinois
My Commission Expires Apr 5, 2009

3

$144

# GREAT AMERICAN INSURANCE COMPANY

An Ohio Corporation with Home Office at 580 Walnut Street, Cincinnati, Ohio 45202

Bond No.

## SUBCONTRACT PERFORMANCE BOND FORM A

KNOW ALL MEN BY THESE PRESENTS: That

INTERSTATE WELDING & FABRICATION, INC.

1670 EAST DAVIS DRIVE, TERRE HAUTE, INDIANA 47802

(Here insert the name and full title of the Subcontractor)

as Principal, hereinafter called Principal, and GREAT AMERICAN INSURANCE COMPANY, Cincinnati, Ohio

as Surety, hereinafter called Surety, are held and firmly bound unto

JOSEPH J. HENDERSON & SON, INC.

(Here insert the name or legal title of the General Contractor)

as Obligee, hereinafter called Obligee, in the amount of

(Here insert the address of the General Contractor)

TWO MILLION FOUR HUNDRED THOUSAND & NO/100----

4288 OLD GRAND AVENUE, GURNEE, ILLINOIS, 60031

Dollars ($ 2,400,000.00 ---------- ), for the payment whereof Principal and Surety bind themselves, their heirs, executors,

administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated MARCH 26, 2004

entered into a subcontract with Obligee for STRUCTURAL STEEL & MISCELLANEOUS METALS, NSSD ZION TOWNSHIP

SLUDGE RECYCLING FACILITY

(Here insert full name and title)

4343 SOUTH TAYLOR DRIVE, SHEBOYGAN, WISCONSIN

(Here insert the address)

which subcontract is by reference made a part hereof, and is hereinafter referred to as the subcontract.

in accordance with drawings and specifications prepared by DONOHUE & ASSOCIATES

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that, if Principal shall promptly and faithfully

perform the work as specified in said subcontract, then this obligation shall be null and void; otherwise it shall remain in full

force and effect.

Whenever Principal shall be, and be declared by Obligee to be in default under the subcontract, the Obligee having

performed Obligee's obligations thereunder.

(1)    Surety may promptly remedy the default subject to the provisions of paragraph 3 herein, or

(2)    Obligee after reasonable notice to Surety may, or Surety upon demand of Obligee may arrange for the
performance of Principal's obligation under the subcontract subject to the provisions of paragraph 3 herein;

(3)    The balance of the subcontract price, as defined below, shall be credited against the reasonable cost of
completing performance of the subcontract. If completed by the Obligee, and the reasonable cost exceeds the
balance of the subcontract price, the Surety shall pay to the Obligee such excess, but in no event shall the
aggregate liability of the Surety exceed the amount of this bond. If the Surety arranges completion or remedies the
default, that portion of the balance of the subcontract price as may be required to complete the subcontract or
remedy the default and to reimburse the Surety for its outlays shall be paid to the Surety at the times and in the
manner as said sums would have been payable to Principal had there been no default under the subcontract. The
term "balance of the subcontract price", as used in this paragraph, shall mean the total amount payable by
Obligee to Principal under the subcontract and any amendments thereto, less the amounts heretofore properly
paid by Obligee under the subcontract.

Any suit under this bond must be instituted before the expiration of two years from date on which final payment under the
subcontract falls due.

No right of action shall accrue on this bond to or for the use of any person or corporation other than the Obligee named
herein or the heirs, executors, administrators or successors of the Obligee.

Signed and sealed this    20TH    day of APRIL    2004

In the presence of:

INTERSTATE WELDING & FABRICATION, IN.(seal)

by _Steve VonDielingen_ (seal)
Steve VonDielingen, President
Principal

GREAT AMERICAN INSURANCE COMPANY
Surety

SCANNED

JUL 01 2004

By _____

by _____ (Seal)
John B. Douglas,
Attorney-in-Fact

Subcontract Performance Bond Form A.
SB5716(1)
Revised in August, 1956.
F.36478--(382)



EXH...

tabbies

Bond No. _____

# GREAT AMERICAN INSURANCE COMPANY

An Ohio Corporation with Home Office at 580 Walnut Street, Cincinnati, Ohio 45202

## SUBCONTRACT LABOR AND MATERIAL PAYMENT BOND

KNOW ALL MEN BY THESE PRESENTS: That

INTERSTATE WELDING & FABRICATION, INC.

1670 EAST DAVIS DRIVE, TERRE HAUTE, INDIANA 47802

(Here insert the name, or legal title, of the Subcontractor)

as Principal, hereinafter called Principal, and GREAT AMERICAN INSURANCE COMPANY, Cincinnati, Ohio

(Here insert the address of the Subcontractor)

as Surety, hereinafter called Surety, are held and firmly bound unto

JOSEPH J. HENDERSON & SON, INC.

(Here insert the name, or legal title, of the General Contractor)

4268 OLD GRAND AVENUE, GURNEE, ILLINOIS 60031

(Here insert the address of the General Contractor)

as Obligee, hereinafter called Obligee, for the use and benefit of claimants as hereinbelow defined, in the amount of

TWO MILLION FOUR HUNDRED THOUSAND & NO/100---

Dollars ($ 2,400,000.00--- ), for the payment whereof Principal and Surety bind themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated   MARCH 26, 2004

entered into a subcontract with Obligee for STRUCTURAL STEEL & MISCELLANEOUS METALS NSSD ZION TOWNSHIP

SLUDGE RECYCLING FACILITY

(Here insert full name and title)

in accordance with drawings and specifications prepared by   DONOHUE & ASSOCIATES

4343 SOUTH TAYLOR DRIVE, SHEBOYGAN, WISCONSIN

(Here insert full name and title)

which subcontract by reference made a part hereof, and is hereinafter referred to as the subcontract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that if the Principal shall promptly make payment to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the subcontract, then this obligation shall be void; otherwise it shall remain, in full force and effect, subject, however, to the following conditions:

(1) A claimant is defined as one having a direct contract with the Principal for labor, material, or both, used or reasonably required for use in the performance of the contract, labor and material being construed to include that part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to the subcontract.

(2) The above-named Principal and Surety hereby jointly and severally agree with the Obligee that every claimant as herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on which the last of such claimants work or labor was done or performed, or materials were furnished by such claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or sums as may be justly due claimant, and have execution thereon. The Obligee shall not be liable for the payment of any costs or expenses of any such suit.

(3) No suit or action shall be commenced hereunder by any claimant.

(a) After the expiration of one (1) year following the date on which Principal ceased work on said subcontract, it being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling the construction hereof, such limitation shall be deemed to be amended so as to be equal to the minimum period of limitation permitted by such law.

(b) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the state in which the project, or any part thereof, is situated, or in the United States District Court for the district in which the project, or any part thereof, is situated, and not elsewhere.

(4) The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith hereunder.

Signed and sealed this   20TH   day of APRIL   , 2004 .

In the presence of:

INTERSTATE WELDING & FABRICATION, INC.(Seal)
Principal

by _____

GREAT AMERICAN INSURANCE COMPANY (Seal)
Surety

by _____

John B. Douglas
Attorney-in-Fact

Steve VanDielingen, President

Subcontract Labor and Material Payment Bond.
This bond is issued simultaneously with another bond in favor of the general contractor conditioned for the full and faithful performance of the contract.
Revised to March, 1990.
F.8615-2 (3/92)

# GREAT AMERICAN INSURANCE COMPANY®

Administrative Office: 580 WALNUT STREET • CINCINNATI, OHIO 45202 • 513-369-5000 • FAX 513-723-2740

No. 017239

The number of persons authorized by
this power of attorney is not more than FOUR

## POWER OF ATTORNEY

KNOW ALL MEN BY THESE PRESENTS: That the GREAT AMERICAN INSURANCE COMPANY, a corporation organized and existing under and by virtue of the laws of the State of Ohio, does hereby nominate, constitute and appoint the person or persons named below its true and lawful attorney-in-fact, for it and in its name, place and stead to execute in behalf of the said Company, as surety, any and all bonds, undertakings and contracts of suretyship, or other written obligations in the nature thereof; provided that the liability of the said Company on any such bond, undertaking or contract of suretyship executed under this authority shall not exceed the limit stated below.

| Name | Address | Limit of Power |
|---|---|---|
| JOHN B. DOUGLAS | | |
| LINDA M.HOLLAND-READINGER | | |
| JOHN W. DINKEL | TERRE HAUTE INDIANA | |
| ROBERT R. PROX | ALL OF | ALL |
| | | UNLIMITED |

This Power of Attorney revokes all previous powers issued in behalf of the attorney(s)-in-fact named above.

IN WITNESS WHEREOF the GREAT AMERICAN INSURANCE COMPANY has caused these presents to be signed and attested by its appropriate officers and its corporate seal hereunto affixed this 23RD day of SEPTEMBER, 2003

Attest

GREAT AMERICAN INSURANCE COMPANY

STATE OF OHIO, COUNTY OF HAMILTON - ss:

On this 23RD day of SEPTEMBER, 2003 before me personally appeared DOUGLAS R. BOWEN, to me known, being duly sworn, deposes and says that he resides in Cincinnati, Ohio, that he is the Divisional Senior Vice President of the Bond Division of Great American Insurance Company, the Company described in and which executed the above instrument; that he knows the seal of the said Company; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by authority of his office under the By-Laws of said Company, and that he signed his name thereto by like authority.

DOUGLAS R. BOWEN (513-369-5341)

This Power of Attorney is granted by authority of the following resolutions adopted by the Board of Directors of Great American Insurance Company by unanimous written consent dated March 1, 1993.

RESOLVED: That the Division President, the several Division Vice Presidents and Assistant Vice Presidents, or any one of them, be and hereby is authorized, from time to time, to appoint one or more Attorneys-in-Fact to execute on behalf of the Company, as surety, any and all bonds, undertakings and contracts of suretyship, or other written obligations in the nature thereof, to prescribe their respective duties and the respective limits of their authority; and to revoke any such appointment at any time.

RESOLVED FURTHER: That the Company seal and the signature of any of the aforesaid officers and any Secretary or Assistant Secretary of the Company may be affixed by facsimile to any power of attorney or certificate of either given for the execution of any bond, undertaking, contract of suretyship, or other written obligation in the nature thereof, such signature and seal when so used being hereby adopted by the Company as the original signature of such officer and the original seal of the Company, to be valid and binding upon the Company with the same force and effect as though manually affixed.

## CERTIFICATION

I, RONALD C. HAYES, Assistant Secretary of Great American Insurance Company, do hereby certify that the foregoing Power of Attorney and Resolutions of the Board of Directors of March 1, 1993 have not been revoked and are now in full force and effect.

Signed and sealed this 20 th day of April · 2004

# TERRORISM COVERAGE RIDER

## NOTICE-DISCLOSURE OF TERRORISM COVERAGE AND PREMIUM

The Terrorism Risk Insurance Act of 2002 establishes a program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an Act of Terrorism. The Act provides that, to be certified, an Act of Terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States.

To be attached to and form part of Bond No. ~~Al/l1~~ effective ~~1-20-04~~ in accordance with the Terrorism Risk Insurance Act of 2002, we are providing this disclosure notice for bonds on which Great American Insurance Company, its affiliates (including, but not limited to Great American Alliance Insurance Company, Great American Insurance Company of New York and Great American Assurance Insurance Company) is the surety.

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the terms of the Act. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

This Coverage Part/Policy covers certain losses caused by terrorism. In accordance with the Federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the coverage arising from losses for Terrorist Acts Certified under that Act.

The portion of your annual premium that is attributable to coverage for Terrorist Acts Certified under the Act is : $.00.

TAKEOVER AGREEMENT

THIS AGREEMENT is between Great American Insurance Company ("GAIC"), and

Joseph J. Henderson & Son, Inc. ("Obligee"), and is effective on the date provided below.

Recitals

WHEREAS on or about March 26, 2004, Obligee entered into a written Contract (JJH-

IWF Contract) with Interstate Welding & Fabrication, Inc., ("Original Contractor" also

sometimes referred to herein as "the Principal,") for the Structural Steel & Miscellaneous Metals,

NSSD Zion Township Sludge Recycling Facility ("Project") in the amount of $2,400,000.00,

which JJH-IWF Contract has not been modified except by change orders contemplated under the

JJH-IWF Contract; and

WHEREAS on or about March 26, 2004, GAIC, as surety for Principal, executed a

Performance and Payment Bond in favor of Obligee for the Project each in the amount of

$2,400,000.00; and

WHEREAS Obligee advises $1,970197.20 has been paid to or on behalf of the

Original Contractor on the Project as of August 24, 2005; and

WHEREAS on July 7, 2005, Obligee issued a Notice of Termination of Default on the

Contract, with copy to GAIC and in July, 2005, the exact date of demand being a matter of

dispute between the parties, Obligee made demand upon GAIC to complete the Contract

pursuant to the Performance Bond; and

WHEREAS Principal asserts that Obligee has improperly terminated the Contract and

Obligee denies same; and

WHEREAS while GAIC has yet to complete its investigation into the propriety of the

Notice of Termination of Default, GAIC, under a complete reservation of rights, and Obligee,

under a complete reservation of rights, are entered into this agreement so that the completion

of the work covered by the Contract can proceed to avoid any additional costs and delays; and

tabbles·

EXHIBIT
2

WHEREAS GAIC is willing to complete or procure the completion of the JJH-IWF Contract in accordance with the terms of the JJH-IWF Contract, its Performance Bond and limiting penal sum, **and this Agreement**, provided that in doing so, it will receive the entire JJH-IWF Contract balance, as set forth herein, that is due or may become due pursuant to the JJH-IWF Contract **and that its liability shall not exceed in any manner the penal sum of the bond;** and

WHEREAS in consideration of GAIC agreeing to complete the work required by said JJH-IWF Contract and for other good and valuable consideration, the receipt of which is hereby acknowledged, GAIC and Obligee hereby agree as follows:

## AGREEMENTS:

1.  **Recitals are Incorporated into this Agreement.** The recitals are incorporated and made a part of this Agreement.

2.  **GAIC Assumes the Undertakings of the Original Contractor.** GAIC hereby undertakes to cause the performance of each and every one of the terms, covenants and conditions of the JJH-IWF Contract, including all modifications thereto, and agrees to be bound by the Contract subject to the limits of the Performance Bond's penal sum. Obligee acknowledges that GAIC, by its execution of this Agreement, is acting in its capacity as **Surety for the Original Contractor** in making its arrangements for the performance and completion of the Contract, and not as a completing contractor, and that GAIC is not assuming any obligations or liabilities beyond those set forth in the Bonds. As to the completion of the Contract, except as otherwise provided in this Agreement, GAIC is entitled to all rights, title and interest of the Original Contractor to the JJH-IWF Contract in all respects as if GAIC were the original party to the Contract. Similarly, GAIC assumes all duties and responsibilities **to the Obligee and the** Owner, North Shore Sanitary District, due under the JJH-IWF Contract, subject only to the limits of the Performance Bond's penal sum. The term "Contractor" as used in the

Contract shall be deemed, after the effective date of this Agreement, to refer to GAIC rather than to the Original Contractor.

3.    **The Scope of the Work.** The work under the Contract to be performed by GAIC under this Agreement is detailed in the Contract Documents.

4.    **Obligee Acknowledges the work will be performed by the Completion Contractor.** Obligee acknowledges that GAIC will subcontract the performance of the work under the JJH-IWF Contract to a completion contractor (the "Completion Contractor"). GAIC may satisfy the required insurance obligations under the JJH-IWF Contract by providing evidence of the required insurance coverage carried by the Completion Contractor, with GAIC being named as an additional insured under the policy or policies.

5.    **GAIC and Owner Stipulate to the Contract Amount, Amount Paid, Contract Adjustments and Pending Change Orders.** As of the date of the execution of this Agreement, GAIC and Owner agree that:

a)    The amount of the original Contract is  $ 2,400,000.00 .

b)    The amount of the approved change orders is:  $ 152,000.00 .

c)    The adjusted Contract amount is:  $ 2,552,000.00 .

d)    The amounts paid to date for the Contract work is  $1,970,197.20

e)    The amount remaining to be paid under the Contract and that is available to GAIC for completion of the work including any correction or repair of the work previously performed by the Original Contractor is $581,802.80  less any outstanding unpaid claims, debts or liens of subcontractors or suppliers for JJH-

IWF Contract work, and less set-offs or backcharges by Obligee per terms of the JJH-IWF Contract.

f) The amount of the pending change orders that have been submitted to Obligee, rejected by the Owner as unsupported and unacceptable as to costs claimed, with an Owner counter-offer of approximately $25,000.00, which counter-offer had not yet been responded to by Original Contractor is: $210,119.21, and were submitted for the work and for the values described in the Interstate Change Order log attached as Exhibit A and JJH Change Order Request log attached as Exhibit B to this Agreement.

g) Obligee advises $ 100,969.99 is the amounts of the costs it has incurred as of the date of this Agreement that are setoffs from the Contract Balance. GAIC reserves its rights to contest the amount and appropriateness of such setoff by Obligee.

6. Obligee will pay GAIC Original Contract Balance for Completion of the Work. Obligee shall pay to GAIC the JJH-IWF Contract Balance, as adjusted to account for any additional amounts of money or deletions on account of any modifications requested and authorized by Obligee, as the work progresses. The payment of the Contract Balance to GAIC shall be made in accordance with the terms of the Contract and as modified by Paragraph 7 of this Agreement. Payment of this Balance is subject to all the terms of the JJH-IWF Contract, including , but not limited to, keeping the Project free of claims or liens from subcontractor or suppliers employed by the Original or Completing Contractors.

7. GAIC will pay costs of Completion in Excess of the Original Contract Balance; Penal Sum of the Bond is the Maximum Liability of GAIC. GAIC agrees to spend its own funds as may be necessary from time to time to pay for the performance of the JJH-IWF Contract by the Completion Contractor in the event that the JJH-IWF Contract Balance is insufficient, with any such payments being credited against the penal sum of the Performance

IWF Contract work, and  less set-offs or backcharges by Obligee per terms of the JJH-IWF Contract.

    f)    The amount of the pending change orders that have been submitted to Obligee, rejected by the Owner as unsupported and unacceptable as to costs claimed, with an Owner counter-offer of approximately $35,000.00 , which counter-offer had not yet been responded to by Original Contractor is: $210,119.21, and were submitted for the work and for the values described in the Interstate Change Order log attached as Exhibit A and JJH Change Order Request log attached as Exhibit B to this Agreement.

    g)    Obligee advises $  100,969.99 is the amounts of the costs it has incurred as of the date of this Agreement that are setoffs from the Contract Balance.

GAIC reserves its rights to contest the amount and appropriateness of such setoff by Obligee.

6.    Obligee will pay GAIC Original Contract Balance for Completion of the Work.  Obligee shall pay to GAIC the JJH-IWF Contract Balance, as adjusted to account for any additional amounts of money or deletions on account of any modifications requested and authorized by Obligee, as the work progresses.  The payment of the Contract Balance to GAIC shall be made in accordance with the terms of the Contract and as modified by Paragraph 7 of this Agreement.  Payment of this Balance is subject to all the terms of the JJH-IWF Contract, including , but not limited to, keeping the Project free of claims or liens from subcontractor or suppliers employed by the Original or Completing Contractors.

7.    GAIC will pay costs of Completion in Excess of the Original Contract Balance;  Penal Sum of  the Bond is the Maximum Liability of GAIC.  GAIC agrees to spend its own funds as may be necessary from time to time to pay for the performance of the JJH-IWF Contract by the Completion Contractor in the event that the JJH-IWF Contract Balance is insufficient, with any such payments being credited against the penal sum of the Performance

Bond. Nothing in this Agreement constitutes a waiver of the applicable penal sum or a waiver of Obligee's right to claim against GAIC up to the full amount of the penal sum. Upon exhaustion of the penal sum, GAIC's liability is extinguished under the Performance Bond. Exhaustion of the penal sum is defined as the point in time when GAIC's expenditure toward completion of the Project exceeds $2,400,000.00 more than it has received of the Contract Balances. GAIC shall give notice to Obligee of all such Excess costs expended which reduce the available penal sum of the Performance Bond within ten business days of such expenditure.

8.    Obligee will permit GAIC use of Equipment and Materials. Insofar as the Obligee has any right, title or interest therein, the Obligee agrees that GAIC and its Completion Contractor shall have the right to use without charge, any of the equipment, materials and appurtenances furnished or supplied by the Original Contractor which may have been fabricated for use in connection with the Contract, whether or not presently upon the Project site, provided such equipment, materials, or appurtenances have been paid for and appropriate lien waivers supplied to the Obligee .

9.    GAIC will Designate an Authorized Representative to Communicate with Obligee about the work on a Day-to-Day Basis. GAIC shall be represented at the Project by the Completion Contractor. Prior to the issuance of the Notice to Proceed, GAIC shall specifically authorize in writing an individual with the Completion Contractor to be its representative (the "Authorized Representative") solely for the purposes set forth in this paragraph. The Authorized Representative will represent GAIC in dealing with Obligee on day-to-day construction issues with respect to the Project. Costs for such Authorized Representative may reduce the penal sum of the Performance Bond by up to $30,000.00.    GAIC hereby designates the Authorized Representative to prepare and process pay requisitions on the Contract. GAIC, however, will sign all pay requisitions submitted to Obligee.    Payments from Obligee shall be made payable to GAIC and transmitted to GAIC at the following address, unless Obligee is notified in writing that such payments are to be made to another individual at GAIC.

Jeffrey S. Jubera, Esq.
Bond Claim Manager
Great American Insurance Company
PO Box 2119
Cincinnati, OH 45201

10.    The Authorized Representative is empowered to Negotiate Changes and Scope Issues for GAIC. The Authorized Representative shall have, on behalf of GAIC, the authority to negotiate and sign change orders for extra work (work that is different from, in excess of, or beyond the scope of the work required by the Original Contract) requested or required by Obligee (hereinafter "Change Order") without GAIC's prior written approval, provided the Completion Contractor is given additional time to perform the Change Order. If no additional time is given to the Completion Contractor to perform the Change Order, the Change Order must be signed by GAIC and not the Authorized Representative. **This provision is inserted to allow GAIC to ensure a reasonable period for the performance of such Change Order work is allowed, in order to avoid assessment of penalties for delay. GAIC agrees to promptly process such change orders and not unreasonably withhold approval. Even if GAIC fails to agree with the time allotment for the Change Order, nothing in this paragraph alters or amends the duties of GAIC or its Completion Contractor under the assumed JJH-IWF Contract, including the duty to perform work when and as directed, including Change Order work.**

11.    **Payment Bond Remains in Effect. The Obligee shall not withhold any of the** Contract Balance from GAIC because of or on account of any claims, liens, suits or demands by any persons or entities furnishing or alleging to have furnished labor and/or materials to the Project except as provided by statute or as provided in the Original Contract. There are several claims for outstanding work by subcontractors or suppliers of the Original Contractor. GAIC intends to resolve all of these claims under its Payment Bond or otherwise and provide lien waivers for such work to Obligee. The Payment Bond shall remain in full force and effect in accordance with its terms and provisions as they apply to

Original Contractor as Contractor for the Completion Contractor as well.

The total liability of GAIC under the Payment Bond is limited to and shall not exceed the penal sum of the Bond in the amount of $2,400,000.00. All Payment Bond payments properly made by GAIC shall be credited against the penal sum of the Payment Bond. Nothing in this Agreement constitutes a waiver of such penal sum or an increase in the liability of GAIC under the Payment Bond.

12.     Corrective Work Arising from Original Contractor's Work. The Owner already has deemed certain work performed by the Original Contractor to be defective or incorrect and may so deem other work of the Original or Completion Contractor, such work must be corrected pursuant to the terms of the JJH-IWF Contract. Nothing in this paragraph is intended to alter or amend the duties of the Original Contractor, GAIC, JJH, or the Completing Contractor under the assumed JJH-IWF Contract. Any and all warranties that were to be provided under the JJH-IWF Contract shall be provided. Any rights provided under the JJH-IWF Contract shall not be deemed waived by performance of corrective work, and when notice of corrective work is required to be given IWF under the Contract, it shall be given to GAIC's Authorized representative.

13.     GAIC reserves the right of the Original Contractor to Challenge the Obligee's Declaration of Default and Termination. By execution of this Agreement, GAIC does not waive the Original Contractor's rights, if any, to contest the validity of the default or any other rights the Original Contractor may have.

14.     Notices:    Notices under this Agreement shall be provided to the following individuals and addresses:

a)     All written notices made by Obligee in accordance with the Contract shall be made both to the Authorized Representative and to GAIC as follows:

b)     As to the Authorized Representative:

Daniel Power
Lovett Silverman
33 Bryant St., Suite 310
San Francisco, CA 94107

c)     As to GAIC:

Jeffrey S. Jubera, Esq.
Bond Claim Manager
Great American Insurance Company
PO Box 2119
Cincinnati, OH 45201

d)      All written notices made by GAIC or its Authorized Representative
        shall be made both to Obligee and its Attorneys:

e)      As to Obligee:

        David Henderson
        Joseph J. Henderson & Son, Inc.
        4286 Old Grand Avenue
        P.O. Box 9
        Gurnee, Illinois 60031-0009

f)      As to Attorneys of Obligee:

        Henderson & Henderson, P.C.
        700 S. Lewis Avenue
        Waukegan, IL 60085

15.     Obligee may opt to Take a Lump Sum Payment from GAIC in Lieu of
Performance under the terms of this Agreement. Within 20 days of the effective date of this
Agreement, obligee may elect to accept a lump sum payment for completion of the Contract work
in lieu of the obligations undertaken by GAIC under the terms of this Agreement. If a lump sum
option is offered by the Obligee and accepted by GAIC, the lump sum payment would fully
discharge and release the performance bond. In the event the performance bond is discharged by
a lump sum payment, GAIC agrees: a) the payment bond remains in effect for labor performed
and materials supplied before the receipt of the lump sum payment by the Obligee, and b) to
assign, upon the request of the Obligee, any rights GAIC has under the Completion Agreement or
under subcontracts of the Original Contractor. The performance bond is effectively discharged
upon receipt of payment of the lump sum by GAIC.

16.    **This Agreement is the Complete Agreement of the Parties.**  This Agreement constitutes the entire understanding, discussions, and agreements between the parties hereto with regard to the completion of the Contract.

17.    This Agreement is solely for the Benefit of the Parties.  This Agreement is solely for the benefit of Obligee and GAIC.  Obligee and GAIC do not intend by any provision of this Agreement to create any rights in or increase the rights of any third-party beneficiaries, nor to confer any benefit upon or enforceable rights under this Agreement or otherwise upon anyone other than Obligee and GAIC.

19.    **Illinois law applies.**  This Agreement shall be governed by and controlled by the laws of the State of Illinois.

21.    **Execution and Effective Date of the Agreement.**  The undersigned represent they are authorized to sign this Agreement for the parties; and that the Agreement was negotiated at arms length between the parties.  This Agreement shall be effective when of the parties have executed a counterpart.

JOSEPH J. HENDERSON & SON, INC.

By: _____

Its: __VICE PRESIDENT__

GREAT AMERICAN INSURANCE COMPANY

By: _____

Its: _____

# EXHIBIT A TO TAKEOVER AGREEMENT

## SUBMITTED CHANGE ORDERS

| TVA COR # | Submit Date | Description | Amount |
|---|---|---|---|
| COR 17.1 | 01/29/2005 | Unit F changes | $736.00 |
| COR 16.1 | 02/12/2005 | Revised Contract Drawings | $145,660.31 |
| COR 15.1 | 01/29/2005 | Unit D Canopy change | $561.20 |
| COR 14.0 | 01/12/2005 | Clip Angle changes | $4,393.82 |
| COR 12.1 | 01/30/2004 | Unit E approval changes | $12,686.70 |
| COR 11.1 | 01/29/2005 | Unit D approval changes | $9,730.96 |
| COR 10.1 | 01/29/2005 | Added Stub - RFI #8 | $1,880.18 |
| COR 8.1 | 01/30/2005 | Unit C Mezzanine Framing | $10,128.28 |
| COR 7.1 | 01/31/2005 | RFI #135 | $3,899.55 |
| COR 5.1 | 01/31/2005 | Added Beam Unit E | $6,659.31 |
| COR 4.1 | 01/31/2005 | Bracing Changes Unit B | $6,244.44 |
| COR 1.1 | 01/31/2005 | Column Splice Change | $7,538.48 |

Total $210,119.21

# EXHIBIT B TO TAKEOVER AGREEMENT

| JJH COR # | Interstate COR # | | |
|---|---|---|---|
| 8 | 1.1 | $ | 7,538.48 |
| 9 | 4.1 | $ | 6,244.44 |
| 10 | 5.1 | $ | 6,659.31 |
| 11 | 7.1 | $ | 3,899.55 |
| 12 | 8.1 | $ | 10,128.28 |
| 13 | 10.1 | $ | 1,880.18 |
| 14 | 11.1 | $ | 9,730.96 |
| 15 | 12.1 | $ | 12,686.70 |
| 16 | 14 | $ | 4,393.82 |
| 17 | 15.1 | $ | 561.20 |
| 18 | 16.1 | $ | 145,660.31 |
| 19 | 17.1 | $ | 736.00 |
| Total | | $ | 210,119.21 |

BRYAN M. SEIFERT
E-Mail: bseifert@leoweber.com

# LEO & WEBER, P.C.

ATTORNEYS AT LAW

SUITE 3600
ONE NORTH LASALLE STREET
CHICAGO, ILLINOIS 60602

TELEPHONE: (312) 857-0910
FACSIMILE:  (312) 857-1240

FILE NO. 032.797

December 22, 2005

*Via Certified Mail Return Receipt*

Judith L. Morley, Secretary
North Shore Sanitary District
Post Office Box 750
Wm. Koepsel Dr.
Gurnee, IL 60031

Michael L. Henderson, Agent
Joseph J. Henderson & Son Inc.
4288 Old Grand Ave.
Gurnee, IL 60031

Re:    Owner:    North Shore Sanitary District
       Contractor: Joseph J. Henderson & Son Inc. ("Henderson")
       Claimant:  Great American Insurance Company ("Great American")
       Project:   Zion Township Sludge Recycling Facility
       Notice of Claim for Lien Against Public Funds Pursuant to 770 ILCS § 60/23

Dear Ms. Morley:

Our law firm represents Great American in the referenced matter. Enclosed is Great American's mechanics' lien notice against public funds pursuant to the Illinois Mechanics' Lien Act, 770 ILCS § 60/23 ("Act"). The North Shore Sanitary District is hereby directed to withhold project contract funds pursuant to the Act in an amount sufficient to satisfy Great American's lien. Great American makes this demand as subcontractor to Henderson pursuant to a takeover agreement and as assignee and subrogee of the rights of Interstate Welding & Fabrication, Inc.

Should you wish to discuss this matter, please contact the undersigned.

Very truly yours,

LEO & WEBER, P.C.

By:

Bryan M. Seifert



tabbies
EXHIBIT
[handwritten]

cc:
   Jeffrey Jubera
   Mark Vicario
   T. Scott Leo

encl.

LEO & WEBER, P.C.

2

# NOTICE OF CLAIM FOR LIEN AGAINST PUBLIC FUNDS PURSUANT TO 770 ILCS § 60/23

TO:               NORTH SHORE SANITARY DISTRICT

PROJECT:      NSSD ZION TWP SLUDGE RECYCLING FACILITY

CLAIMANT:   GREAT AMERICAN INSURANCE COMPANY, and GREAT
AMERICAN INSURANCE COMPANY AS SUBROGEE AND
ASSIGNEE OF INTERSTATE WELDING AND
FABRICATION, INC.

AMOUNT OF LIEN:      $579,391.25

      YOU ARE HEREBY NOTIFIED that Great American Insurance Company ("GAIC"),
located at 580 Walnut Street, Cincinnati, Ohio, was hired as a subcontractor by Joseph I.
Henderson & Son, Inc. ("Henderson"), the general contractor for the North Shore Sanitary
District (the "NSSD"), to provide labor and materials under the terms of a takeover agreement
for miscellaneous steel work on a project known as NSSD Zion Township Sludge Recycling
Facility. GAIC also asserts this claim as the assignee and subrogee of the rights of Interstate
Welding & Fabrication, Inc. ("Interstate"), which was the miscellaneous steel subcontractor for
Henderson, and to which Henderson issued a notice of default and termination, requiring GAIC
to takeover the balance of the subcontract work. The adjusted amount of the Interstate
subcontract is $2,552,000.00, for which there are pending change orders of $475,338.00.
Interstate/GAIC have been paid to date the sum of $1,941,201.00. GAIC is due the sum of
$235,865.25 for subcontract work, and the sum of $343,526.00 for pending change order work,
or a total of $579,391.25. The undersigned therefore claims a lien on all money, bonds or
warrants due or to become due from the North Shore Sanitary District to Henderson as the
general contractor in the amount of $579,391.25 and you are hereby notified to withhold payment
to Henderson as the general contractor an amount sufficient to pay the amount for which the lien
is claimed pursuant to 770 ILCS § 60/23, as amended, relating to liens against funds due or to
become due contractors for public improvements.

GREAT AMERICAN INSURANCE
COMPANY, for itself and as subrogee
and assignee of INTERSTATE
WELDING & FABRICATION, INC.

By: _____
      Jeffrey S. Talbert, Bond Claim
      Director

STATE OF MARYLAND
COUNTY OF Queen Annes

The affiant, Jeffrey S. Jubera, being first duly sworn, deposes and states that the affiant is
a Bond Claim Director of Great American Insurance Company, the claimant. That the affiant has
read the foregoing notice and claim for lien and knows the contents of the notice and that the
statements contained in the notice are true.

By: _____
Jeffrey S. Jubera

Subscribed and sworn to before me on this _____ 22nd _____ day of December, 2005.

_____
Notary Signature

My Commission Expires: 3/1/06





**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**O F F I C I A L   U S E**

| | |
|---|---|
| Postage | $ .374 |
| Certified Fee | $2.30 |
| Return Receipt Fee (Endorsement Required) | $1.75 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 4.42 |

Postmark Here

Sent To: Judith L. Motley
Street, Apt. No.; or PO Box No. P.O. Box 450
City, State, ZIP+4 Buford, TN 40031

PS Form 3800, June 2002    See Reverse for Instructions

7003 2260 0000 4961 7900

---

**U.S. Postal Service™**
**CERTIFIED MAIL™ RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

**O F F I C I A L   U S E**

| | |
|---|---|
| Postage | $ .374 |
| Certified Fee | $2.30 |
| Return Receipt Fee (Endorsement Required) | $1.75 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 4.42 |

Postmark Here

Sent To: Michael E. Henderson
Street, Apt. No.; or PO Box No. 8 Old Grand Avenue
City, State, ZIP+4 Buford, TN 40031

PS Form 3800, June 2002    See Reverse for Instructions

7003 2260 0000 4961 7894

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

RIGGING SERVICES, INC., and ZION
TOWNSHIP SLUDGE RECYCLING
FACILITY SERVICES, INC., f/nb/ RIGGING
SERVICES,

                    Plaintiff,

          v.                                    No. 05 CH 2095

INTERSTATE WELDING & FABRICATION,
INC., ZION TOWNSHIP SLUDGE RECYCLING
FACILITY SERVICES, INC., JOSEPH J.
HENDERSON & SON, INC., and GREAT
AMERICAN INSURANCE COMPANY

                    Defendants.

GREAT AMERICAN INSURANCE COMPANY,
for itself and as assignee and subrogee of
INTERSTATE WELDING & FABRICATION,
INC. and the NORTH SHORE SANITARY
DISTRICT for the use and benefit of GREAT
AMERICAN INSURANCE COMPANY
as assignee and subrogee of INTERSTATE
WELDING & FABRICATION INC.,

                    Third-Party Plaintiffs,

          v.

JOSEPH J. HENDERSON & SONS, INC.

                    Third-Party Defendant.

FILED
MAR 22 2006

CIRCUIT CLERK

GREAT AMERICAN INSURANCE COMPANY'S THIRD-PARTY CROSS-
COMPLAINT

NOW COMES Great American Insurance Company ("Great American") by its attorneys

T. Scott Leo and Bryan M. Seifert of Leo & Weber, P.C., for itself and as assignee and subrogee



complaint against third-party defendant Joseph J. Henderson & Sons, Inc., ("JJH") states as follows:

## Facts Common to all Counts

1. At all times relevant herein, Defendant and Third-Party Plaintiff, Great American, was an Ohio corporation and is licensed to transact surety business in the State of Illinois.

2. At all times relevant herein, Third-Party Defendant, JJH, was an Illinois corporation with its principal place of business in Gurnee, Illinois and doing business in Lake County, Illinois.

3. At all times relevant herein, Defendant, Interstate, had its principal place of business in Terre Haute, Indiana and was doing business in Lake County, Illinois.

4. At all times relevant herein, Plaintiff Rigging Services, Inc. ("Rigging") was an Illinois Corporation with its principal place of business in Rockford, Illinois.

5. On or before March 28, 2004, JJH entered into a contract ("Contract") with the North Shore Sanitary District Zion Township Sludge Recycling Facility ("District") in which JJH, as prime contractor, agreed to perform construction improvements in connection with the project commonly know as the North Shore Sanitary District Zion Township Sludge Recycling Facility ("Project").

6. On or about March 26, 2004, JJH entered into a subcontract ("Subcontract") with Interstate for structural steel and miscellaneous metals in connection with the Project in the amount of $2,400,000.00.

7. On or about October 20, 2004, Interstate contracted with Rigging ("Sub-Subcontract") to furnish certain labor and related work for a portion of the Project.

8. On or about March 26, 2004, Great American, as surety, at the request of and on behalf of Interstate, issued a surety performance and payment bond, bond no. 104.32.60 ("Subcontract Bond") in the penal sum of $2,400,000.00 in which Interstate appeared as principal and JJH appeared as obligee, which Bond guaranteed Interstate's Project performance obligations under the Subcontract and Interstate's payment to its subcontractors, material suppliers and laborers. (See Exhibit A, Subcontract Bond)

9. On or about December 6, 2005, Interstate was the subject of an involuntary bankruptcy proceeding commenced in the United States Bankruptcy Court of the Southern District of Indiana, which matter is now pending as a Chapter 11 proceeding.

10. On July 7, 2005, JJH issued a notice of default and termination to Interstate in connection with the Project and subsequently thereafter made a demand against Great American under the Subcontract Bond demanding Great American complete the Subcontract pursuant to its obligations under the Subcontract Bond.

11. JJH and Great American entered into a takeover agreement ("Takeover Agreement") in which Great American agreed to complete or procure completion of the Subcontract in accordance with the terms of the Subcontract, the Bond and the Takeover Agreement in consideration for Great American's receipt of the entire Subcontract balance from JJH. (See Exhibit B, Takeover Agreement)

12. Under the terms of the takeover agreement, Great American is entitled to all rights, title and interest of Interstate in all respects as if Great American was the original party to the Subcontract. (See Exhibit B, Takeover Agreement, ¶ 2)

13. Pursuant to the Takeover Agreement and the Subcontract, Great American is deemed the original contractor under the Subcontract and became assignee and subrogee to all rights,

3

title and interest of Interstate in the Subcontract. (See Exhibit B, Takeover Agreement, ¶

2)

14. Pursuant to the terms and conditions of the Takeover Agreement, Great American agreed

to perform the remainder of Interstate's Project work in accordance with terms and

conditions of the Subcontract and in accordance with Great American's obligations under

the Subcontract Bond. (See Exhibit B, Takeover Agreement, ¶ 2)

15. Great American performed its obligations in completion of Interstate's Subcontract work

pursuant to the terms and conditions of the Subcontract, the Subcontract Bond and the

Takeover Agreement.

16. Great American, for itself and as assignee and subrogee of all of Interstate's rights under

the Subcontract has incurred $235,865.25 for unpaid Subcontract Project work and

$343,526.00 for pending and not yet approved change order work for a total amount due

and owing Great American in the amount of $579,391.25.

17. JJH has refused and failed to pay Great American the Subcontract Balance pursuant to

the terms and conditions of the Subcontract and the Takeover Agreement.

18. On December 16, 2005 Rigging filed this action for foreclosure of mechanics' lien, claim

on the Subcontract Bond and breach of contract, for funds allegedly owed Rigging under

its Sub-Subcontract with Interstate and pursuant to the terms and conditions of Great

American's Subcontract Bond.

**COUNT I**
**Foreclosure of Public Mechanics' Lien**

19. Great American, as completing Subcontractor, takeover surety and as subrogee and

assignee has duly served a written notice of claim for lien on all monies, bond or warrants

due or to become due under the Subcontract between JJH and Interstate in accordance

4

with the provisions of 770 ILCS § 60/23 *et. seq.* relating to mechanics' liens on public improvements, upon the secretary of the North Shore Sanitary District and registered agent of JJH via certified mail return receipt requested. (See Group Exhibit C, Great American Notice of Mechanics' Lien Claim)

20. Within 90-days of the service of Great American's Notice of Mechanics' Lien Claim pursuant to 770 ILCS § 60/23, Great American instituted its action by filing this third-party cross-complaint and duly served a copy of its cross-complaint upon the secretary of the District.

21. Although demand has been made by Great American upon JJH to pay $579,391.25, no part has been paid.

WHEREFORE, Third-Party Plaintiff, Great American Insurance Company, requests this Court enter an order: 1) for judgment in favor of Great American and against Joseph J. Henderson & Sons, Inc., in the amount of $579,391.25, plus interest, costs, attorneys' fees and prejudgment interest; and, 2) for an order requiring the North Shore Sanitary District to pay $579,391.25 from funds being held on account of the Project and Great American's mechanics' lien claim; and 3) for judgment against Joseph J. Henderson & Sons, Inc., in the amount of 2% per month of the portion of any such payment that Joseph J. Henderson & Sons, Inc., received from the North Shore Sanitary District for work performed by Great American, for each month beginning 15 days after said payment was received; and 4) granting all other relief this Court deems equitable and just.

5

## COUNT II
## Breach of the Takeover Agreement

22-42. Great American incorporates herein for paragraph 22-42 paragraphs 1-21 of its third-party cross-claim for Count II.

43. Pursuant to the Takeover Agreement, JJH and Great American agreed that the original contract value was $2,400,000.00, the adjusted contract value was $2,552,000.00 after all approved change orders, that JJH has paid Interstate, prior to the Takeover Agreement, for Subcontract work in the amount of $1,970,197.20 and there remains $581,802.80 ("Subcontract Balance") in remaining Subcontract funds. (See Exhibit B, Takeover Agreement, ¶ 5)

44. Pursuant to the Takeover Agreement, JJH and Great American agreed that the Subcontract Balance would be available to Great American for completion of Interstate's work. (See Exhibit B, Takeover Agreement, ¶ 5)

45. Pursuant to the Takeover Agreement, JJH agreed to pay Great American the Subcontract Balance as work progresses. (See Exhibit B, Takeover Agreement, ¶ 6)

46. Great American performed its obligations in completion of Interstate's Subcontract work and there remains due and owing to Great American $579,391.25.

47. Despite the fact that Great American has performed pursuant to the Takeover Agreement, JJH has failed to make progress payments or any payments whatsoever to Great American.

48. JJH has breached the terms of the Takeover Agreement and has vexatiously refused to make payment to Great American under the Takeover Agreement.

6

49. As a result of JJH's breach of the Takeover Agreement, Great American has incurred attorneys' fees and costs of collection in filing its mechanics' lien claim under the Illinois Mechanics' Lien Act.

50. As a result of JJH's breach of the Takeover Agreement, Great American has incurred direct and consequential damages, including prejudgment interest pursuant to 815 ILCS § 205/2, in an amount to be determined at trial.

51. As a result of JJH's breach of the Takeover Agreement and its failure to pay Great American, Great American has been forced to defend itself in this action due to mechanics' liens filed on the Project by subcontractors of Interstate.

WHEREFORE, Third-Party Plaintiff, Great American Insurance Company, requests this court enter an order: 1) for judgment in favor of Great American and against Joseph J. Henderson & Sons, Inc., in the amount of $579,391.25, plus interest, costs, attorneys' fees and prejudgment interest; and, 2) for an order requiring the North Shore Sanitary District to pay $579,391.25 from funds being held on account of the Project and Great American's mechanics' lien claim; and 3) for judgment against Joseph J. Henderson & Sons, Inc., in the amount of 2% per month of the portion of any such payment that Joseph J. Henderson & Sons, Inc., received from the North Shore Sanitary District for work performed by Great American, for each month beginning 15 days after said payment was received; and 4) granting all other relief this Court deems equitable and just.

7

## COUNT III

## Breach of the Illinois Prompt Payment Act

52-81. Great American incorporates herein for paragraphs 52-81 paragraphs 1-21 and 43-51 of its third-party cross-claim for Count III.

82. The Illinois Prompt Payment Act, 50 ILCS § 505/9, provides that if a contractor, without reasonable cause, fails to make any payments to its subcontractors within 15-days after receipt of payment under the public construction contract, the contractor shall pay to its subcontractors, in addition to the payment due, interest in the amount of 2% per month.

83. Upon information and belief, JJH has received payment from the District for work performed by Great American, Interstate and subcontractors of Great American and Interstate.

84. After JJH and Great American executed the Takeover Agreement, Great American is entitled to all rights, title and interest of the Subcontract as if Great American were the original party to the Subcontract. (See Exhibit B, Takeover Agreement, ¶ 2).

85. JJH, without reasonable cause, has refused and failed to pay any sums due and owing Great America under the Subcontract and the Takeover Agreement within 15-days of receiving payments for Great American work from the District.

WHEREFORE, Third-Party Plaintiff, Great American Insurance Company, requests this court enter an order: 1) for judgment in favor of Great American and against Joseph J. Henderson & Sons, Inc., in the amount of $579,391.25, plus interest, costs, attorneys' fees and prejudgment interest; and, 2) for an order requiring the North Shore Sanitary District to pay $579,391.25 from funds being held on account of the Project and Great American's mechanics' lien claim; and 3) for judgment against Joseph J. Henderson & Sons, Inc., in the

amount of 2% per month of the portion of any such payment that Joseph J. Henderson &

Sons, Inc., received from the North Shore Sanitary District for work performed by Great

American, for each month beginning 15 days after said payment was received; and 4)

granting all other relief this Court deems equitable and just.

Respectfully Submitted,

Great American Insurance Company

One of its Attorneys

T. Scott Leo
Bryan M. Seifert
Leo & Weber, P.C.
One N. LaSalle Street, Suite 3600
Chicago, Illinois 60602
(312) 857-0910
Atty No. 35644

9