IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

North Shore Sanitary District for the use
and benefit of Great American Insurance
Company,

        *Plaintiff*

    v.

Travelers Casualty and Surety Company
of America,

        *Defendant.*

Case No.:  07 C 6322

**NORTH SHORE SANITARY DISTRICT FOR THE USE AND BENEFIT OF
GREAT AMERICAN INSURANCE COMPANY'S RESPONSE TO
TRAVELER'S MOTION TO STAY**

Plaintiff, North Shore Sanitary District for the use and benefit of Great American Insurance Company ("Great American"), by its attorney, Jennifer A. Nielsen of Lyman and Nielsen LLC, for its Response to Defendant, Travelers Casualty and Surety Company of America's ("Travelers"), Motion to Stay pursuant to *Colorado River*, states as follows:

**I.**    **Basis for the Response**

This federal action concerns Great American's claim on Traveler's Payment Bond and Travelers' failure to timely respond to Great American's bond claim. As a result of Travelers' failure to timely respond to Great Amercian's bond claim, under a series of recent federal cases, Travelers has the unfettered obligation to pay Great American. This federal action, based only upon the Payment Bond issued by Travelers and Travelers' failure to comply with its terms, is wholly independent of the facts and circumstances of the disputed Project which is the subject of a case currently pending in Lake County, Illinois.

Travelers' Motion to Stay should be denied. The arguments presented by Travelers do not present grounds for this Court to decline to exercise jurisdiction for the following reasons:

A.    The Lake County case and this action are not parallel.

B.    If determined to be parallel, this Court should still exercise jurisdiction due to exceptional circumstances.

## II.    Background Facts

Joseph J. Henderson & Sons, Inc. ("Henderson") was the general contractor in connection with a project known as the North Shore Sanitary District Zion Township Sludge Recycling Facility (the "Project"). See Great American's Complaint at ¶8. Pursuant to the Illinois Public Construction Bond Act, 30 ILCS 550/1 *et seq.* (the "Bond Act"), Travelers provided a payment bond in connection with Henderson's work on the project (the "Payment Bond"). *Id.* at 21. The Payment Bond provides that Travelers will pay subcontractors that Henderson fails to pay in connection with the Project. *Id.* at Exhibit C.

Henderson entered into a subcontract with Interstate Welding & Fabrication, Inc. ("Interstate"). *Id.* at ¶9. Interstate also provided a payment bond in connection with the Project. *Id.* at ¶10. Great American issued the payment bond. *Id.* at ¶10. The payment bond issued by Great American is not the subject of this action. It is the subject, in part, of the Lake County case.

Interstate entered into a sub-subcontract with Rigging Services, Inc. ("Rigging Services") and when Interstate failed to make payment to Rigging Services in connection with the Project, Rigging Services initiated the matter known as *Rigging Services, Inc. v. Interstate Welding &*

*Fabrication, Inc., et al.* Case No. 05 CH 2095 (the "Lake County case")[1] asserting an action on Great American's payment bond, for breach of contract against Interstate and for quantum meruit against Henderson in connection with the Project. A copy of Rigging Services First Amended Complaint in the Lake County case is attached hereto as Exhibit 1.

Great American filed a Counterclaim against Henderson in the Lake County case for breach of contract, for relief under the public section of the Illinois Mechanics Lien, 770 ILCS 60/23 (the Lien Act"), and under the Illinois Prompt Payment Act, 50 ILCS 505/9.

Travelers is not a party to the Lake County case.

On June 9, 2006, Great American, as a subcontractor to Henderson, made its claim on Travelers' Payment Bond in connection with the Project. See Great American's Complaint in the instant action at Exhibit D. On June 22, 2006, Travelers acknowledged receipt of Great American's claim on its bond and inquired about additional information from Great American. See Affidavit of Jeff Jubera attached hereto as Exhibit 2 at Exhibit A thereto. On August 31, 2006, seventy (70) days after Travelers acknowledged receipt of Great American's bond claim, Travelers sent a letter to Great American stating that Great American's claim was denied due to Travelers' assessment that it had insufficient information. See Exhibit 2 at Exhibit B thereto. No substantive basis for denying the amount of Great American's bond claim was provided; the claim was denied only for lack of information only.

On October 3, 2006, Great American provided Travelers with additional information related to Great American's bond claim and submitted Travelers' claim form as requested. See Exhibit 2

---

[1] Great American's counsel in this federal case does not and has never represented Great American in the Lake County case.

at Exhibit C. Since October 3, 2006, Travelers has never provided an answer to Great American "stating the amounts that are undisputed and the basis for challenging any amounts that are disputed" nor has Travelers paid or arranged "for payment of any undisputed amounts" as required by Paragraph 6 of Travelers' Payment Bond. See Exhibit 2.

On November 2, 2007, as a result of Travelers' failure to comply with Paragraph 6 of its Payment Bond, Great American made a demand upon Travelers to pay the amount claimed. See Exhibit 2 at Exhibit D thereto. When Travelers failed to pay in accordance with the Payment Bond, Great American filed the instant lawsuit against Travelers.

Travelers is not and has never been a party to the Lake County case. Great Amercian has asserted no claim under Travelers' Payment Bond in the Lake County case. The one and only case in which Travelers is a party and where a claim is made under Travelers' Payment Bond is the instant case.

As a result of Travelers' failure to timely (i) provide an answer to Great American "stating the amounts that are undisputed and the basis for challenging any amounts that are disputed"; or (ii) pay or arrange "for payment of any undisputed amounts" as required by Paragraph 6 of Travelers' Payment Bond, Great American should be entitled to expeditiously move for summary judgment on its Complaint pending before this court. See Section V.A.2, *below*. As a result of Travelers' failure to act in accordance with the terms of the Payment Bond, the facts and circumstances of the Lake County case are wholly irrelevant to this action. Travelers has an absolute obligation to pay Great American under the Payment Bond.

## III.    Travelers' Arguments in support of its *Colorado River* Motion

Travelers' Motion to Stay the instant action can be boiled down into two arguments stated

various ways throughout its Motion.

      A.      Travelers argues that it is only a "nominal party" to this lawsuit and that the real party in interest is Henderson. Travelers maintains that a private indemnity agreement between Travelers and Henderson, to which Great American is not a party nor a third party beneficiary, renders Travelers a mere "nominal party". Travelers argues that since Great American has already named Henderson (but not Travelers) as a party in the Lake County case, Great American is bringing a redundant action in this Court against Travelers.

      B.      Travelers also argues that public funds were deposited with the Lake County court pursuant to the Lien Act and, therefore, Great American should not be permitted to pursue Travelers in the instant case under Travelers' Payment Bond.

## IV.   Standard from Abstention

Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them by Congress. *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Only in "exceptional" circumstances may a federal court abstain from hearing a suit and "await the outcome of parallel proceedings as a matter of wise judicial administration, giving regard to the conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817, 96 S.Ct. 1236.

Because the federal courts have a "heavy obligation" to exercise jurisdiction, "only the clearest of justifications will warrant dismissal" of the federal action in deference to a concurrent state proceeding in the name of wise judicial administration. *Colorado River*, 424 U.S. at 819, 820, 96 S.Ct. 1236. The task of a federal court in determining whether abstention is appropriate is "not to find some substantial reason for the exercise of federal jurisdiction by the court, . . . [but] rather

. . . to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' that can suffice under *Colorado River* to justify the *surrender* of that jurisdiction." *AAR Intern., Inc. v. Nimelias Enterprises S.A.,* 250 F.3d 510 (7th Cir. 2001) citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25-26, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

To determine whether a stay under *Colorado River* is warranted, the Court must undertake a two-part inquiry. *LaDuke v. Burlington Northern R. Co.*, 879 F.2d 1556, 1559 (7th Cir.,1989). First, the court must determine whether the state and federal actions are parallel. *Id.* If the cases are determined to be parallel, the court must consider a number of factors that might result in a determination of "exceptional circumstances" to warrant a stay. *Id.*

## V.   Argument

### A.   The Lake County case and this federal case are not parallel.

Suits are "parallel" when substantially the same parties are contemporaneously litigating substantially the same issues in another forum. *LaDuke v. Burlington Northern R. Co.*, 879 F.2d 1556, 1559 (7th Cir.,1989).   The focus is not whether there exists an identity of parties in both actions, but whether the federal defendants "may be bound" by the result in the state litigation under principles of collateral estoppel. *U.S. ex rel. Hartigan v. Palumbo Bros., Inc.*, 797 F.Supp. 624 (N.D. Ill.,1992).

Travelers acknowledges in its Memorandum that in determining whether federal and state litigation are parallel, "[t]he important issue is that the state action encompasses the federal claims" and "the state litigation will dispose of all claims presented in the federal case".  For these very reasons, the Lake County case and the instant action are not parallel.

### 1.   *Travelers is a party only to this federal lawsuit, is not a party to the Lake County case and would not be bound by any judgment entered in the Lake County lawsuit.*

Great American has not asserted a claim against Travelers' Payment Bond in the Lake County case and Travelers has never been a party to the Lake County case. Travelers is not bound by any judgment rendered in the Lake County case.

Moreover, the unique facts of this federal action together with the distinction between the rights and defenses of an action under the Bond Act as opposed to the causes of action pending in the Lake County case, eliminate the potential of collateral estoppel.

The Lake County case is an action for breach of contract against Henderson and for relief under the Lien Act against Henderson and the public entity. The Bond Act, which serves as the basis for the instant lawsuit against Travelers, is a wholly separate legal theory than the Lien Act, with very different rights and defenses.

It is well settled that the Bond Act provides a separate and distinct remedy than that afforded by the public section of the Lien Act. *Walker Process Equipment, a Div. of McNish Corp. v. Advance Mechanical Systems, Inc.*, 282 Ill.App.3d 452, 458, 668 N.E.2d 132, 136, 217 Ill.Dec. 947, 951 (1st Dist.1996)*; Aluma Systems, Inc. v. Frederick Quinn Corp.*, 206 Ill. App. 3d 828, 853, 564 N.E.2d 1280, 1296, 151 Ill. Dec. 618, 634 (1st Dist. 1990); *Northwest Water Comm'n. v. Carlo v. Santucci*, 162 Ill. App. 3d 877, 898, 516 N.E.2d 287, 302 114 Ill. Dec. 132, 147 (1st Dist. 1987); *City of Chicago ex rel. Charles Equip. Co. v. United States Fidelity and Guaranty Co*, 142 Ill. App. 3d 621, 626, 491 N.E.2d 1269, 1272, 96 Ill. Dec. 809, 812, (1st Dist. 1986); *Decatur Housing Authority for Use and Benefit of Harlan E. Moore and Co. v. Christy-Foltz, Inc.*, 117 Ill.App.3d 1077, 1081, 454 N.E.2d 379, 382, 73 Ill.Dec 519, 522 (4th Dist., 1983).

In *Decatur Housing*, the court specifically found that "the same evidence would not sustain" verdicts under the Lien Act and the Bond Act. *Decatur Housing*, 117 Ill.App.3d at 1081, 454

N.E.2d at 382, 73 Ill.Dec at 522.

Moreover, a surety has far fewer defenses to a bond claim than a public entity and contractor have under a contract action or under the Lien Act. *Decatur Housing*, 117 Ill.App.3d at 1081, 454 N.E.2d at 382, 73 Ill.Dec at 522. For instance, a "pay when paid" defense may be a defense to an upper tier contractor in a contract action. It is not a defense to payment bond claim. *See Brown & Kerr Inc. v. St. Paul Fire and Marine Ins. Co.*, 940 F.Supp 1245, 1250 (N.D. Ill 1996).

In *Brown & Kerr*, the court noted that a subcontract agreement and a payment bond are two separate and distinct agreements. Accordingly, while a pay when paid provision may be a defense available under the subcontract, it is not a defense available to a surety to a subcontractor's claim on a payment bond. *Brown & Kerr Inc.,* 940 F.Supp at 1250 (N.D. Ill 1996).

Unlike the public section of the Lien Act which limits a lien claimant's recovery to the sum still due the lien claimant's immediate upstream-contractor at the time the lien notice is served, recovery under the Bond Act is limited only by the total amount of the bond which is provided by the surety. *Aluma Systems, Inc.*, 206 Ill. App. 3d at 854, 564 N.E.2d at 1297, 151 Ill. Dec. at 635; *Decatur Housing*, 117 Ill.App.3d at 1081, 454 N.E.2d at 382, 73 Ill.Dec at 522. Hence, there is no "contract price" defense available for a surety to assert against a subcontractor under the Bond Act. *Aluma Systems, Inc.*, 206 Ill. App. 3d at 854, 564 N.E.2d at 1297, 151 Ill. Dec. at 635; *Housing Auth. v. Holtzman*, 120 Ill. App. 2d 226, 240, 256 N.E.2d 873, 880 (5th Dist. 1970).

As discussed in more detail in Section V.A.2, *below,* a surety that provides a payment bond in the form at issue in the instant action has no defense to a bond claim when it fails, within forty-five (45) days of receipt of a bond claim, to either (i) provide an answer to the bond claimant "stating the amounts that are undisputed and the basis for challenging any amounts that are disputed"; or (ii)

pay or arrange "for payment of any undisputed amounts". *National Union Fire Ins. Co. of Pittsburgh v. Wadsworth Golf Const. Co.*, 160 Md. App. 257, 863 A.2d 347 (Md.  App., 2004)*; National Union Fire Ins. Co. of Pittsburgh v. David A. Bramble, Inc.*, 388 Md. 195, 879 A.2d 101 (Md. 2005); *J.C. Gibson Plastering Co., Inc. v. XL Specialty Ins. Co.*, 521 F.Supp.2d 1326 (M.D. Fla., 2007); *Casey Industrial v. Seaboard Surety Co.*, 2006 WL 2850652 (E.D. Va., 2006).

Where different facts and defenses support a judgment on a payment bond than those which support a judgment for breach of contract or under the Lien Act, the cases are not "parallel". Accordingly, this court should exercise jurisdiction over the instant action.

### 2.    *As a result of Travelers' failure to comply with the express provisions of its bond, Travelers is the real party in interest.*

Travelers argues that the Lake County case and this matter are parallel because the "real party in interest" is Henderson. Travelers argues that since Henderson must indemnify Travelers for any sums paid by Travelers under the Payment Bond, the instant action is really against Henderson. This argument is erroneous.

An indemnity agreement is a contract and is subject to the rules for interpreting contracts. *Mountbatten Sur. Co., Inc. v. Szabo Contracting, Inc.*, 349 Ill.App.3d 857, 812 N.E.2d 90 (2d. Dist., 2004).  Only Henderson and Travelers are parties to the indemnity agreement.  Great American is not a party to this indemnity agreement and Great American has no rights under this indemnity agreement, either against Henderson or Travelers.  Great American's rights are against Travelers under the Payment Bond and the Bond Act.  The separate indemnity agreement between Travelers and Henderson is of no consequence to Great American and affords Great American no rights of any kind.  The indemnity agreement between Travelers and Henderson does not render Henderson the "real party interest" to Great American's claim under the Bond Act.

In fact, as a result of Travelers' own failure to timely dispute Great American's bond claim under Paragraph 6 of the Payment Bond, Travelers now has the unfettered obligation to pay Great American the amount claimed due it. Travelers' failure to comply with its express obligations under the Payment Bond may provide an absolute defense to Henderson under its indemnity agreement to Travelers. Accordingly, Travelers and not Henderson, is the real party in interest, with the unconditional obligation to pay Great American's bond claim.

On June 9, 2006, Great American provided notice of its bond claim. See Exhibit 2 and Great American's Complaint in the instant action at Exhibit D. Travelers' Payment Bond expressly provides that when a claimant provides notice, Traveler's shall either "send an answer to the Claimant, with a copy to the Owner, within 45 days after receipt of the claim, stating the amounts that are undisputed and that basis for challenging any amounts that are disputed" or "pay or arrange for payment of any undisputed amounts." See Great American's Complaint in the instant action at Exhibit C, ¶6. In this case, Travelers did neither. See Exhibit 2.

This exact scenario was presented to the court in *National Union Fire Ins. Co. of Pittsburgh v. David A. Bramble, Inc.*, 388 Md. 195, 204-5, 879 A.2d 101,107 (Md. 2005). The payment bond at issue in *Bramble* was nearly identical to the Payment Bond at issue in the instant case. The *Bramble* court held that where the payment bond required the surety to delineate the portions of the bond claimant's claim that were disputed within the forty-five (45) days and where the surety failed to timely do so, the entirety of the bond claim was undisputed. *Id.* at 110. The surety was then obligated to pay the amount of the bond claim submitted. *Id.* at 110. The court found that the forty-five (45) day time requirement contained in the payment bond would be rendered "essentially nugatory" if the surety was allowed to later dispute amounts that which had not been timely and

properly answered. *Id.*

In *National Union Fire Ins. Co. of Pittsburgh v. Wadsworth Golf Const. Co.*, 160 Md.App. 257, 863 A.2d 347 (Md., 2004), the court similarly found that the surety failed to answer the bond claimants' claim within forty-five (45) days of receiving it as required by the language of the payment bond. As a consequence of that failure, the surety was foreclosed from disputing the bond claim.

The *Bramble* and *Wadsworth Golf* cases are not anomalies. When presented with a surety's failure to dispute the amount of a bond claim within the time period provided by the language of the payment bond, courts across the country are following the Maryland Courts' lead. See also *J.C. Gibson Plastering Co., Inc. v. XL Specialty Ins. Co.*, 521 F.Supp.2d 1326 (M.D. Fla., 2007); *Casey Industrial v. Seaboard Surety Co.*, 2006 WL 2850652 (E.D. Va., 2006).

In each of these cases, the court applied a payment bond provision identical to Paragraph 6 of Travelers' Payment Bond. In each of these cases, the court determined that the surety was barred from disputing the bond claim except as stated in the surety's *timely* response to the claim. The surety was limited only to the basis for challenging the claim stated in the surety's response to the claim, if any. *Id.*

Here, Great American's bond claim was made on June 9, 2006. Travelers acknowledged receipt of the bond claim by June 22, 2006. See Exhibit 2 at Exhibit A. Travelers waited until August 31, 2006 to deny Great American's bond claim. *Id.* at Exhibit B. Travelers' August 31, 2006 response was seventy (70) days after Travelers acknowledged receipt of Great American's bond claim, well past the time to dispute a claim as provided by the express language of Paragraph 6 of Travelers' Payment Bond.

Even after Travelers received the information a documentation requested, it never disputed the amount of Great American's bond claim. See Exhibit 2.

Because Travelers failed to comply with the time provision contained within its own Payment Bond which requires a detailed basis for denying the bond claim within forty-five (45) days, under the holdings of *Brambles*, *Wadsworth Golf*, *J.C. Gibson* and *Casey Industrial*, Travelers is barred from now denying Great American's bond claim.

Great American's absolute right to payment of its bond claim resulting from the limited facts of Travelers' failure to timely dispute the bond claim has nothing to do with any of the facts currently in dispute in the Lake County case. The facts and law in connection with this federal action are wholly independent of the Lake County case. Accordingly, the cases are not parallel and this Court should exercise jurisdiction over the instant case.

**B.    If the Court determines the cases are parallel, this court should still exercise jurisdiction due to "exceptional circumstances".**

The fact that a parallel action between the parties is pending in state court is not itself a bar to federal proceedings. Thus, the surrender of jurisdiction in deference to a parallel state proceeding is warranted under only "limited" and "exceptional" circumstances. *LaDuke v. Burlington N.R. Co.*, 879 F.2d 1556, 1559 (7th Cir.1989). There are at least ten factors that a district court can consider in deciding whether "exceptional circumstances" exist that would justify deference to the state courts under the *Colorado River* doctrine. *Id.*

To determine whether exceptional circumstances warrant abstention, this court must balance the following factors: (1) whether the state or federal court has assumed jurisdiction over property, (2) the geographical inconvenience, (3) the desirability of avoiding piecemeal litigation, (4) the order

in which jurisdiction was obtained by the concurrent forums, (5) the source of governing law, (6) the adequacy of the state court action to protect the federal plaintiff's rights, (7) the relative progress of the state and federal proceedings, (8) the presence or absence of concurrent jurisdiction, (9) the availability of removal, and (10) the vexatious or contrived nature of the federal claims. *LaDuke v. Burlington N.R. Co.*, 879 F.2d at 1559.  The decision to abstain under Colorado River, however, "does not rest upon a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case...." *Moses H. Cone Mem'l Hosp v. Mercury Constr. Corp.*, 460 U.S. 1, 16, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

In considering the ten (10) factors, the following factors weigh in favor of this Court continuing to exercise jurisdiction over the instant action:

> **1.    *Neither the state court nor this federal court have assumed jurisdiction over the property.***

The funds claimed due by Great American from Travelers is the "property" in dispute in the instant action.  No court has assumed jurisdiction over the funds due from Travelers.

While the public entity deposited liened funds in connection with the Lake County case, pursuant to the arguments made in Section 5.A.1 and 2, these are not the same funds claimed due from Travelers and which Travelers now has the absolute obligation to pay.

> **2.    *There is no geographical inconvenience to Travelers.***

Travelers is a large national surety company.  Travelers is currently a party to at least seven (7) cases pending before the Northern District of Illinois.  A copy of this Court's pending case status for cases in which Travelers is currently a party is attached hereto as Exhibit 3.  There is no geographical inconvenience to Travelers.

Travelers' argument that the public entity is a resident of Lake County is of no consequence.

The public entity is not a party to this bond action, nor will it ever be. The argument that Henderson is a resident of Lake County is also not dispositive. According to Henderson's own web site, it performs work in Northern Illinois, including Cook County. See Exhibit 4.

The 42 miles which separate the Lake County court and this Court are not the geographical inconvenience that would render the "exceptional circumstances" required for this Court to decline to exercise jurisdiction.

### 3.    *There will be no piecemeal litigation.*

For the reasons stated in Sections V.A.1 and V.A.2, there will be no piecemeal litigation. The facts and law at issue in connection with Great American's bond claim and Travelers' failure to timely dispute the bond claim, render the facts of this litigation entirely distinguishable from those in dispute the Lake County case.

### 4.    *The source of governing law is state and federal law.*

While the statute at issue in this federal proceeding is an Illinois statute, the payment bond at issue has been construed by a plentitude of federal courts. The specific case law related to a surety's failure to timely dispute a payment bond at the heart of this dispute, is federal law. Sections V.A.1 and V.A.2, above.

### 5.    *The Lake County case does not adequately protect Great American's rights.*

As discussed in Section V.A.1, above, Travelers is not and has never been a party to the Lake County case. The bond action is not and has never been a part of the Lake County case. The specific obligation of payment resulting from Travelers' failure to timely dispute Great American's bond claim is not an issue raised in any form or related to any dispute pending in the Lake County case.

### 5.    *The vexatious or contrived nature of the federal claims.*

This is a diversity action. Payment bond claims are routinely handled in federal court under diversity jurisdiction. Case law providing for a surety's obligation to pay when it fails to timely dispute a payment bond is federal in nature. This action is neither contrived nor vexatious, but brought to achieve an expeditious result to this matter.

Wherefore, Plaintiff, North Shore Sanitary District for the use and benefit of Great American Insurance Company, prays this Honorable Court will deny Defendant, Travelers Casualty and Surety Company of America ("Travelers"), Motion to Stay pursuant to *Colorado River*, and for such other and further relief as this court deems just and proper.

Respectfully submitted,
North Shore Sanitary District for the use and benefit of Great American Insurance Company

By: _____
                One of its Attorneys

## Exhibits

1. Rigging Services First Amended Complaint in the Lake County case
2. Henderson's Answer in the Lake County case
3. Affidavit of Jeff Jubera
   A. Travelers' June 22, 2006 letter
   B. Travelers' August 31, 2006 letter
   C. Great American's October 3, 2006 letter
   D. Great American's November 2, 2007 demand letter

IN THE CIRCUIT COURT OF THE NINETEENTH JUDICIAL CIRCUIT
LAKE COUNTY, ILLINOIS

```
F I L E D
JUN 2 8 2006
CIRCUIT CLERK
```

| | |
|---|---|
| RIGGING SERVICES, INC., AND ZION TOWNSHIP SLUDGE RECYCLING FACILITY SERVICES, INC., F/U/B RIGGING SERVICES, INC.<br><br>        Plaintiff,<br><br>     v.<br>INTERSTATE WELDING & FABRICATION, INC., ZION TOWNSHIP SLUDGE RECYCLING FACILITY SERVICES, INC., JOSEPH J.HENDERSON & SON, INC., AND GREAT AMERICAN INSURANCE COMPANY<br><br>        Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Case No. 05 CH 2095<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

### FIRST AMENDED VERIFIED COMPLAINT

Plaintiff, RIGGING SERVICES, Inc., an Illinois corporation, and ZION TOWNSHIP SLUDGE RECYCLING FACILITY, for the use and benefit of RIGGING SERVICES, INC., by its attorneys, ADDIS, GREENBERG & SCHULTZ, L.L.C., and complains of the Defendants as follows:

### COUNT I
#### (Claim on Payment Bond)

Plaintiff, incorrectly named as ZION TOWNSHIP SLUDGE RECYCLING FACILITY, the correct name for Plaintiff is NORTH SHORE SANITARY DISTRICT for the use and benefit of RIGGING SERVICES, INC., complains of GREAT AMERICAN INSURANCE COMPANY ("SURETY"), as follows:

1.      At all times relevant herein, Plaintiff, RIGGING SERVICES, INC. ("RIGGING") was an Illinois Corporation with its principal place of business in Rockford, Illinois.

**EXHIBIT**
**1**

2.      Defendant INTERSTATE WELDING & FABRICATION, INC.,("IWF") had its principal place of business in Terra Haute, Indiana, IWF has filed for Bankruptcy protection.

3.      Defendant ("SURETY"), is a corporation authorized to transact an insurance and bonding business within the State of Illinois, under and by virtue of permission heretofore obtained from the Commissioner of Insurance of the State of Illinois.

4.      On or before March 28, 2004, JOSEPH J. HENDERSON & SON, INC., HENDERSON entered into a PRIME CONTRACT with NORTH SHORE SANITARY DISTRICT ("OWNER"), to furnish all labor and materials necessary for the work on the project known as NORTH SHORE SANITARY DISTRICT ZION TOWNSHIP SLUDGE RECYCLING FACILITY. ("PROJECT")

5.      On or before April 20, 2004, GENERAL CONTRACTOR and SURETY executed and delivered to the OWNER a contractor's Payment Bond pursuant to the Public Construction Bond Act, 30 ILCS 550/0.01-550/2 et seq, known as Bond No. 1-04-32-60. A copy of said Bond is attached and as Exhibit "A".

6.      On or about October 20, 2004, GENERAL CONTRACTOR entered in a Subcontract with Defendant IWF to furnish labor and related work on a portion of the said PROJECT. IWF filed for Bankruptcy protection.

7.      On or about October 20, 2004, IWF entered into a written contract with RIGGING, whereupon RIGGING was to furnish labor for structural steel installation, labor and equipment for the project known as Structural Steel and Miscellaneous Metals NORTH SHORE SANITARY DISTRICT ZION TOWNSHIP SLUDGE RECYCLING FACILITY, ZION, ILLINOIS, a copy of which is attached and incorporated herein as Exhibit "B".

8.      RIGGING furnished labor on the PROJECT, at the request and direction of IWF, and the work provided by RIGGING to the PROJECT conformed to the terms and conditions

2

specified under the PRIME CONTRACT between GENERAL CONTRACTOR and the OWNER.

9.    There is presently due and owing to RIGGING the sum of $295,608.05 for the materials and work furnished by RIGGING as described above; no part of said sum had been paid by IWF although RIGGING has frequently requested IWF pay the same. A copy of the Account Summary is attached and incorporated herein as Exhibit "C".

10.    On October 25, 2005, Plaintiff caused a notice of a bond claim to be filed with the OWNER, IWF and SURETY by certified mail, a copy of which bond claim is attached and incorporated herein as Exhibit "D".

WHEREFORE, Plaintiff claims the following relief:

(a)    That an accounting be taken as to the amount due to Plaintiff and that the Defendant SURETY be decreed to pay the same to Plaintiff within a date certain.

(b)    That Defendant SURETY be ordered and adjudged to pay Plaintiff the sum of $295,608.05 with interest thereon from a date fixed by this Court.

(c)    That Plaintiff have any other relief this court may deem to be just and equitable.

## COUNT II
### (Breach of Contract)

Plaintiff, incorrectly named as ZION TOWNSHIP SLUDGE RECYCLING FACILITY, for the use and benefit of RIGGING SERVICES, INC., complains of GREAT AMERICAN INSURANCE COMPANY ("SURETY"), as follows:

1.    At all times relevant herein, Plaintiff, RIGGING SERVICES, INC. ("RIGGING") was an Illinois Corporation with its principal place of business in Rockford, Illinois.

3

2.    On or before August 27, 2004, INTERSTATE WELDING & FABRICATION, INC., ("IWF") had its principal place of business in Terra Haute, Indiana, entered into a contract, hereinafter called "PRIME CONTRACT" with NORTH SHORE SANITARY DISTRICT ("NORTH SHORE") wherein IWF agreed to provide construction, labor, materials and related work required and necessary for a certain PROJECT known as NORTH SHORE SANITARY DISTRICT ZION TOWNSHIP SLUDGE RECYCLING FACILITY ("PROJECT"). IWF filed for bankruptcy protection and all actions against it are stayed.

3.    On or about October 20, 2004, IWF entered into a written subcontract whereby RIGGING was to furnish certain labor, materials, and related work for a portion of said PROJECT. A copy of the contract is attached hereto and incorporated herein as Exhibit "B".

4.    That the original contract sum to be paid to RIGGING for its work in connection with the construction PROJECT was $783,320.00.

5.    On or about September 23, 2005, RIGGING completed all work required pursuant to its written agreements with IWF, and there remains due and owing and unpaid from IWF to RIGGING the sum of $295,608.05, plus interest. A copy of an Account Summary is attached hereto and incorporated herein as Exhibit "C".

6.    Despite the fact that RIGGING has performed under the contract, there is an outstanding balance of $295,608.05 due from IWF.

7.    RIGGING has invoiced IWF for said sums.

8.    IWF has vexatiously refused to pay those sums to RIGGING.

9.    RIGGING claims prejudgment interest on said sums previously invoiced in accordance with Illinois statute.

10.    RIGGING also claims attorneys' fees and other costs of collection pursuant to the Mechanic's Lien Act.

4

11.    RIGGING has suffered other damages as a direct and proximate cause of IWF's breach, such as lost overhead and profit in the amount to be determined at trial.

WHEREFORE, RIGGING SERVICES, INC., demands judgment in its favor and against INTERSTATE WELDING & FABRICATION, INC., in the amount of $295,608.05, plus prejudgment interest in accordance with statute, plus court costs and reasonable attorneys' fees, plus additional incidental and consequential damages to be determined at trial, such as lost profits, and for other relief this court shall deem just and equitable.

### COUNT III
### (Quantum Meriut – Joseph J. Henderson & Son, Inc.)

Plaintiff, incorrectly named as ZION TOWNSHIP SLUDGE RECYCLING FACILITY, for the use and benefit of RIGGING SERVICES, INC., complains of GREAT AMERICAN INSURANCE COMPANY ("SURETY"), as follows:

1.    At all times relevant herein, Plaintiff, RIGGING SERVICES, INC. ("RIGGING") was an Illinois Corporation with its principal place of business in Rockford, Illinois.

2.    At all times relevant herein, Defendant INTERSTATE WELDING & FABRICATION, INC., ("IWF") had its principal place of business in Terra Haute, Indiana, and was doing business in Lake County, Illinois and all acts hereinafter related took place in Lake County, Illinois.

3.    Defendant JOSEPH J. HENDERSON & SON, INC., ("HENDERSON") was doing business in Lake County, Illinois, and all acts hereinafter related took place in Lake County, Illinois.

4.    On or before March 28, 2004, NORTH SHORE SANITARY DISTRICT, entered into a contract with JOSEPH J. HENDERSON & SON, INC., to perform work on the NORTH

5

SHORE SANITARY DISTRICT ZION TOWNSHIP SLUDGE RECYCLING FACILITY, ("PROJECT").

5.      On or before March 28, 2004, HENDERSON entered into a contract with IWF wherein IWF agreed to provide construction, labor, materials and related work required and necessary on the PROJECT.

6.      On or about October 20, 2004, IWF entered into a written subcontract whereby RIGGING was to furnish certain labor, and related work for a portion of said PROJECT.  A copy of the contract is attached hereto and incorporated herein as Exhibit "B".

7.      The original contract sum to be paid to RIGGING for its work in connection with the construction project was $783,320.00.

8.      On or about October 7, 2005, RIGGING completed all work required pursuant to its written agreements with IWF, the labor constitutes permanent and valuable improvement upon the PROJECT whereby the PROJECT was enhanced in value to a sum in excess of $783,320.00.

9.      There remains due and owing and unpaid from IWF to RIGGING the sum of $295,608.05, plus interest.  A copy of an Account Summary is attached hereto and incorporated herein as Exhibit "C".

10.     HENDERSON received and obtained the benefits of the material and labor provided to the Project by RIGGING

11.     It is unjust to allow HENDERSON to receive and obtain the benefits of the materials and labor provided by RIGGING without compensation to RIGGING for the reasonable value of the same which is $295,608.05.

WHERFORE, Plaintiff, RIGGING SERVICES, INC., prays for Judgment in its favor and against Defendant, JOSEPH J. HENDERSON & SON, INC. in the amount of $295,608.05, plus court costs and any other relief this court may deem to be just and equitable.

RIGGING SERVICES, INC.

By: _____
One of its attorneys.

Addis, Greenberg, Schultz, L.L.C
707 Skokie Blvd., Suite 540
Northbrook, IL 60062
847/ 412-1863
Atty No. 100202

Ls\riggingvzion\slsriggingamend26.com

7

STATE OF ILLINOS )
       )  SS
COUNTY OF LAKE  )

## VERIFICATION

I, Everett P. Bross III, on oath, state that I am the ~~Vice~~ President and duly authorized agent of Plaintiff, RIGGING SERVICES, INC., in the above-entitled action; that I have read the above and foregoing Verified Complaint against INTERSTATE WELDING & FABRICATION, INC., et al. and that the allegations contained therein are true and correct, except as to matters therein stated to be upon information and belief and that as to such matters the undersigned states that he believes the same to be true.

               _____
               Everett P. Bross III

SUBSCRIBED AND SWORN to me

Before this  _27_  day of

_June_   , 2006

_____
Notary Public

My Commission Expires: 7/13/06

> OFFICIAL SEAL
> SHARON LESTER
> NOTARY PUBLIC, STATE OF ILLINOIS
> MY COMMISSION EXPIRES 07/13/06

8

# EXHIBIT "A"

Bond No.

# GREAT AMERICAN INSURANCE COMPANY

An Ohio Corporation with Home Office at 580 Walnut Street, Cincinnati, Ohio 45202

## SUBCONTRACT LABOR AND MATERIAL PAYMENT BOND

KNOW ALL MEN BY THESE PRESENTS: That
INTERSTATE WELDING & FABRICATION, INC.

(Here insert the name, or legal title, of the Subcontractor)
1670 EAST DAVIS DRIVE, TERRE HAUTE, INDIANA 47802

(Here insert the address of the Subcontractor)
as Principal, hereinafter called Principal, and GREAT AMERICAN INSURANCE COMPANY, Cincinnati, Ohio
as Surety, hereinafter called Surety, are held and firmly bound unto
JOSEPH J. HENDERSON & SON, INC.

(Here insert the name, or legal title, of the General Contractor)
4288 OLD GRAND AVENUE, GURNEE, ILLINOIS 60031

(Here insert the address of the General Contractor)
as Obligee, hereinafter called Obligee, for the use and benefit of claimants as hereinbelow defined, in the amount of
TWO MILLION FOUR HUNDRED THOUSAND & NO/100

Dollars ($ 2,400,000.00 ) for the payment whereof Principal and Surety bind themselves, their heirs, executors,
administrators, successors and assigns, jointly and severally, firmly by these presents.

WHEREAS, Principal has by written agreement dated: MARCH 29, 2004

entered into a subcontract with Obligee for STRUCTURAL STEEL & MISCELLANEOUS METALS NSSD ZION TOWNSHIP
SLUDGE RECYCLING FACILITY

in accordance with drawings and specifications prepared by DONOHUE & ASSOCIATES
4343 SOUTH TAYLOR DRIVE, SHEBOYGAN, WISCONSIN

(Here insert full name and title)
which subcontract is by reference made a part hereof, and is hereinafter referred to as the subcontract.

NOW, THEREFORE, THE CONDITION OF THIS OBLIGATION is such that if the Principal shall promptly make payment
to all claimants as hereinafter defined, for all labor and material used or reasonably required for use in the performance of the
subcontract, then this obligation shall be void; otherwise it shall remain in full force and effect, subject, however, to the
following conditions:

(1) A claimant is defined as one having a direct contract with the Principal for labor, material, or both, used or
reasonably required for use in the performance of the contract, labor and material being construed to include that
part of water, gas, power, light, heat, oil, gasoline, telephone service or rental of equipment directly applicable to
the subcontract.

(2) The above-named Principal and Surety hereby jointly and severally agree with the Obligee that every claimant as
herein defined, who has not been paid in full before the expiration of a period of ninety (90) days after the date on
which the last of such claimant's work or labor was done or performed, or materials were furnished by such
claimant, may sue on this bond for the use of such claimant, prosecute the suit to final judgment for such sum or
sums as may be justly due claimant, and have execution thereon. The Obligee shall not be liable for the payment
of any costs or expenses of any such suit.

(3) No suit or action shall be commenced hereunder by any claimant,

(a) After the expiration of one (1) year following the date on which Principal ceased work on said subcontract it
being understood, however, that if any limitation embodied in this bond is prohibited by any law controlling
the construction hereof such limitation shall be deemed to be amended so as to be equal to the minimum
period of limitation permitted by such law.

(b) Other than in a state court of competent jurisdiction in and for the county or other political subdivision of the
state in which the project, or any part thereof, is situated, or in the United States District Court for the district
in which the project, or any part thereof, is situated; and not elsewhere.

(4) The amount of this bond shall be reduced by and to the extent of any payment or payments made in good faith
hereunder.

Signed and sealed this 26TH        day of APRIL        2004

In the presence of:

INTERSTATE WELDING & FABRICATION, INC.(Seal)
Principal

by

Subcontract Labor and Material Payment Bond:
This Bond is issued simultaneously with another
Bond in favor of the general contractor conditioned
for the full and faithful performance of the contract.
Revised in March, 1969.
CERTIFIED
F3810-30(1)

GREAT AMERICAN INSURANCE COMPANY (Seal)
Surety

by
John B. Douglas        Attorney-In-Fact

## TERRORISM COVERAGE RIDER

### NOTICE-DISCLOSURE OF TERRORISM COVERAGE AND PREMIUM

The Terrorism Risk Insurance Act of 2002 establishes a program within the Department of the Treasury, under which the federal government shares, with the insurance industry, the risk of loss from future terrorist attacks. The Act applies when the Secretary of the Treasury certifies that an event meets the definition of an Act of Terrorism. The Act provides that, to be certified, an Act of Terrorism must cause losses of at least five million dollars and must have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest to coerce the government or population of the United States.

To be attached to and form part of Bond No. _____ effective _____
In accordance with the Terrorism Risk Insurance Act of 2002, we are providing this disclosure notice for bonds on which Great American Insurance Company, its affiliates (including, but not limited to Great American Alliance Insurance Company, Great American Insurance Company of New York and Great American Assurance Insurance Company) is the surety.

The United States Government, Department of the Treasury, will pay a share of terrorism losses insured under the terms of the Act. The federal share equals 90% of that portion of the amount of such insured losses that exceeds the applicable insurer retention.

This Coverage Part/Policy covers certain losses caused by terrorism. In accordance with the Federal Terrorism Risk Insurance Act of 2002, we are required to provide you with a notice disclosing the portion of your premium, if any, attributable to the coverage arising from losses for Terrorist Acts Certified under that Act.

The portion of your annual premium that is attributable to coverage for Terrorist Acts Certified under the Act is : $.00.

# EXHIBIT "B"

# Interstate Welding & Fab., Inc.

812 234 6641 TO 918153973563    P.01/01

**CONTRACT**
No. 8146-E

1670 East Davis Drive
Terre Haute, IN 47802

Phone: 812-232-0474
Fax: 812-234-6641

| | |
|---|---|
| **TO:** Rigging Services, Inc.<br>4210 S. Eleventh St.<br>Rockford, IL 61109 | **DATE:** 8/25/2004<br>**PROJECT:** NSSD Zion Twp. Sludge Recycling Fac.<br>**JOB:** 04-02-39 |
| **ATTN:** Steve Hoskinson | **COMPLETED:** |
| **WORK AT** | **BILL TO** |
| NSSD Zion Twp Sludge Recycling Fac.<br>Southwest Corner of Greenbay/9th St<br>Zion, IL 60099 | Interstate Welding & Fab., Inc.<br>1670 E. Davis Dr.<br>Terre Haute, IN 47802 |

**TERMS:** Per attached Exhibits

**SHIP VIA:** Best Way

**DESCRIPTION**

**SCOPE OF WORK:** Rigging Services, Inc. (hereinafter designated as the Subcontractor) agrees to furnish and pay for all labor, tools, equipment, supervision, permits for equipment, taxes, and insurance necessary to complete the following work in strict accordance with the general conditions, special conditions, plans, specifications, all addenda, prepared by Donohue & Associates (hereinafter designated as the Architect) and the contract between Interstate Welding & Fabrication (hereinafter designated as the Contractor) and Joseph J. Henderson & Son, Inc. (hereinafter designated as the General Contractor) all of which are made apart of this agreement as if attached hereto or copied herein and are hereinafter designated as the Contract Documents: All field work required to complete the installation of all work related to or arising out of specification sections 05120 (structural steel), 05311 (steel deck), 05500 (metal fabrications), 05520 (aluminum handrail and railing), 05530 (bar grating), 05540 (diamond tread aluminum plate), and aluminum sunscreens for the NSSD Zion Twp Sludge Recycling Facility project.

All workmanship shall be provided in strict accordance with the Contract Documents. By signing below, Contractor and Subcontractor acknowledge receipt, review, and agreement to the Terms and Conditions, (attached hereto as Exhibit A), Exhibits B, C, D, & E, all of which are incorporated as a part of this Subcontract.

**RECEIVED**
OCT 18 2004
**I. W. F., INC.**

**ENTERED**
OCT 19 2004

| | |
|---|---|
| Unit Cost: | $0.00 |
| Unit Tax: | $0.00 |
| Lump Sum: | $783,320.00 |
| Lump Tax: | $0.00 |
| Freight: | $0.00 |
| **Total:** | **$783,320.00** |

| | |
|---|---|
| **Contracted By:**<br>Rigging Services, Inc. | **Contracted By:**<br>Interstate Welding & Fab., Inc. |
| Signed: _Steve Hoskinson_ | Signed: X |
| By: Steve Hoskinson | By: Mark VonDielingen |
| Date: 9-30-04 | Date: 10-20-04 |

** TOTAL PAGE.01 **

** TOTAL PAGE.01 **

INTERSTATE     ZION TWP SLUDGE RECYCLING

| JOB # | CO# | DESCRIPTION | LABOR | 125'LIFT | 60'LIFT | WELDER | 60'LIFT | 30'LIFT | T&T | FORKLIFT |
|---|---|---|---|---|---|---|---|---|---|---|
| 3195 | 1 | Two columns that should not have been painted took two men to grind off cc 1000 - cc 1013. 12/29/04 | 16 | | | | | | | |
| | 2 | One man to take off the rest of columns cc 1013 on 12/30/04 | 8 | | | | | | | |
| | 3 | Col MK BC 1008 - Lower gusset plate. The holes are punched at wrong angle to match brace BU1004. Remove brace and mag drill new holes 1/19/05 | 8 | | | | | | | |
| | 4 | Brace CU2005. Center plate MK P307 was welded at wrong pitch. Cut loose to align properly. No burning. Grind only. 1/19/05 | 4 | | | | | | | 4 |
| | 5 | Remove clips from CB 2012 and reweld to receive CB2134 and CB 2085. Cut and reweld 1 clip CB2035 for PC CB2105. Cut and reweld clip on CB2107 for PC CB2042 1/19/05 | 12 | | | 6 | 6 | | | |
| | 6 | Brace CU 3000. Cut and spin center plate to align upper bracing. 2/7/05 | 4 | | | | | | | |
| | 7 | Bolt up 3rd floor safety cable. 2/16/05 | 52 | | 1 | | | | | |
| | 8 | 3 Beams were too long. Detail was correct. Fab, cut to length, drill new holes 2/16/05 | 3 | | | | | | | |
| | 9 | 3 Channels Missing - Fab new pieces from extra mezz channels 2/17/05. | 12 | | | | | | | |
| | 10 | Remove angles from beams, cut and grind fab missing channels 2/18/05 | 40 | | | | | | | |
| | 11 | Install 2 missev clips, set up and take down scaffold to reach beams, install channels 2/21/05 | 8 | | | | | | | |
| | 13 | Cut 5 plates to Fit. Were too long to fit in place 3/16/05 | 4 | | | | | | | |

| # | Description | | |
|---|---|---|---|
| 14 | Fix bolted connection on brace to column. Wrong size holes in plate. Center plate on brace BU1014 was welded at wrong pitch - Cut loose and rebolt. No torch work - all grinding. Cut new holes in plate P268. Beam BB1046 holes punched wrong - 3/18/05 | 8 | 3 |
| 20 | Cut off Kler plates welded on wrong end of pieces. Cut off over 2 ft. on piece MR DM06120. Sort TR# 113 & 164 to find beam CB 5007 and braces CU 5007 for area C - Reload 3/31/05 | 8 | 2 |
| 21 | Rework in Area D Cut and weld to fit wrong coped and lugs4/11/05 | 16 | |
| 22 | Beam CB 4059 was missing lugs P325. Fabricate 2 lugs grind paint and weld - Beam already installed Elev. 70-4 4/14/05 | 6 | 3 |
| 23 | Sort for mixed up steel on TR's - to start area E 4 & 5. 4/14/05 | 18 | 3 |
| 26 | Rework to beams. Clips and holes wrong for connections. Cut and reweld. 4/19/05 | 8 | 3 |
| 27 | Finish welding on beam, 3rd floor. Clips in wrong location. Make missing beam. Drill holes for mis. Fab on CHMT2 area C. 4/25/05 | 16 | 4 |
| 28 | Area H - Rework to mis, fabricate pieces. Make new lugs and weld cope beams to fit. 4/26/05 | 8 | |
| 30 | Fabricate missing braces for Area E. 4/29/05 | 4 | |
| 31 | Tube COL CM6006 missing 2 lugs. LA250 to bolt Interm. Tubes. 4 required. Only2 were welded on - Weld new clips. Two tube col's CM6002 are 4'4" too long. Put up, take down, cut to fit, reinstall 5/16/05 | 14 | 2 |
| 32 | Rework stairs per attached sheets. 5/23, 5/25, 5/26, 6/2 | 38 | 8 · 2 |
| 34 | Continued work from Friday on brace BU1014, Drill 21 holes on 5/21/05 | 5 | 4 |

| # | Description | | | | |
|---|---|---|---|---|---|
| 35 | Move trailers from mud to road 136, 137, 106, 146. Sort to find pieces for D & E 3rd floor. On 3/22/05. | 15 | | 5 | 5 |
| 36 | Rework to upper braces on E line, Area C. Building out of plumb 1". Remove bolts to plumb & drill new holes on 4/6/05. | 24 | 8 | 8 | |
| 37 | Drill missing holes in beam. Beam DB103B holes were in wrong location. Relocated holes to match to stringers. On 6/29/05 | | | | |
| 38 | Install two missed beams for stairs Area D on 7/6/05 | 8 | 8 | | |
| 39 | Drill missed holes. Stairs Area D, Refab to Stairs E Stringers fabricated wrong - take out and reinstall Item 19 on 7/7/05 | 12 | 12 | 4 | |
| | Total | 389 | | | |

| | | | | |
|---|---|---|---|---|
| labor | 389 = | $ 37,445.14 | 6 | 19 |
| Equipment | | | | |
| 125/hr | 25 | $ 2,800.00 | | |
| 60/hr | 6 | $ 276.00 | | |
| welder | 19 | $ 285.00 | | |
| 80/hr | 7 | $ 525.00 | | 14 |
| 30/hr | 14 | $ 392.00 | | |
| T & T | 8 | $ 984.00 | | 8 |
| Forklift | 10 | $ 1,530.00 | | 10 |
| OH & P | | $ 44,237.14 | | |
| Total | | $ 6,635.58 | | |
| | | $ 60,872.72 | | |

INTERSTATE   JOB 3195   ZION SLUDGE - DONAHUE REVISIONS

EXTRA WORK AS LISTED

| | ITEM # | DESCRIPTION | LABOR | 60'LIFT | WELDER | 80'LIFT | 30'LIFT |
|---|---|---|---|---|---|---|---|
| 1/21/2005 | 1296 | Gusset plates from beams BB1055 & BB1048 Chgs per RFI#58 | 7.5 | 1.5 | | | |
| 1/24/2005 | 1297 | RFI #58 - Donohue review memo 10/18/04 submitted 164 12/6/04 | 32 | 8 | 8 | | |
| 2/7/2005 | 1304 | Bracing changes due to HVAC duct location/conflict | 8 | 4 | | | |
| 2/11/2005 | 1312 | RFI #147 - Steel opening not large enough for equipment 2/10/05 and 2/11/05 | 15 | 1 | 1 | | |
| 2/16/2005 | 1313 | Donohue letter - Steel revisions - 12/4/04 change clips on beams, grind, paint 7 chg splice beams | 24 | | | | |
| 2/17/2005 | 1314 | RFI #135 - Changes in bracing for door opening | 18 | | | | |
| 2/21/2005 | 1317 | Add bracing area C level 3 A-5 to A8-6 - install gusset plates - Donohue letter | 9 | | | | |
| 2/22/2005 | 1318 | Add brace at Area c level 3 A-5 to A8-6 drill holes install gussets - Donohue letter | 24 | | | | |
| 2/22/2005 | 1320 | RFI #147 Mezz steel changed to enlarge opening | 16 | 2 | | | |
| 2/23/2005 | 1321 | Add braces to beam between BB and O at column line 3 - Donohue letter | 5 | 1 | | | |
| 2/25/2005 | 1322 | RFI #189- Donohue letter - Rework columns | 16 | | | | |

| Date | No. | Description | | | |
|------|-----|-------------|---|---|---|
| | | & beams | | | |
| 2/24/2005 | 1323 | RFI 189 Donohue letter - rework beams Area D 2/24/05 | 24 | | 4 |
| 3/7/2005 | 831 | Donohue letter - steel changes - added braces to column DC1006 moment weld to beam OB1020 | 12 | | 6 |
| 3/8/2005 | 832 | Donohue letter - change column - splice to moment | 10 | | 6 |
| 3/10/2005 | 15 0833 | Add brace between columns 7-5 & 7 on E Line, Steel work complete. Needs painting. 3/10/05 | 6 | | |
| INTERSTATE | JOB 3195 | ZION SLUDGE | | | |
| EXTRA WORK AS LISTED | | | | | |
| 3/15/2005 | 16 1835 | Weld added moment connection on Col. With beam DB 1020. Weld added tube bracing Area D 3/15/05 | 20 | 6 | 6 |
| 3/16/2005 | 17 1836 | Field fixes for Area D, 2nd floor. Cut clips weld new clips and drill holes. 3/16/05 | 8 | | |
| 3/28/05 | 18 0841 | Weld added moment on beam DB2017. Drill holes in 2 beams CB 4060 and mark as CB4060A 3/28/05 | 12 | | |
| 3/29/05. | 19 0842 | Due to added bracing DVMT 10-11-12-13- below beam DB 4061. The CK plate needs to be fit around bracing. 3/29/05 | 8 | | |
| 4/15/05 | 24 0849 | Install added bracing. 4/15/05 | 16 | | 8 |

| 4/27/05 | 29 | Weld added bracing. Finish work on added tube | | 8 | | 17.5 | | 4 | | 5 | | 4 |
| | 1334 | bracing. 4/27/05 | | 298.5 | | | | 29 | | | | 18 |
| | | | Totals | 298.5 | | 17.5 | | 29 | | 5 | | 18 |
| | | | Labor | 298.5 | $ 28,773.61 | | | | | | | |
| | | | 60' Lift | 17.5 | $ 805.00 | | | | | | | |
| | | | Welder | 29 | $ 435.00 | | | | | | | |
| | | | 80' Lift | 5 | $ 375.00 | | | | | | | |
| | | | 30' Lift | 18 | $ 504.00 | | | | | | | |
| | | | | | | | | | | | | |
| | | | OH&P | | $ 30,892.61 | | | | | | | |
| | | | Total | | $ 4,633.90 | | | | | | | |
| | | | | | $ 35,526.51 | | | | | | | |

# EXHIBIT "C"

| J 3195 ZION SLUDGE | | | | | | |
|---|---|---|---|---|---|---|
| ORIGINAL CONTRACT | | $ | 783,320.00 | | | |
| SIGNED CHANGE ORDERS | 1 | | | | | |
| | 2 | | | | | |
| | 3 | | | | | |
| TOTAL CONTRACT AMOUNT | | $ | 783,320.00 | PAYMENTS BY DATE | | |
| PAY APPLICATION | 1 | $ | 56,365.20 | DATE PD | CK # | AMOUNT |
| | 2 | $ | 47,354.40 | 2/22/2005 | 141041 | $ 103,719.60 |
| | 3 | $ | 81,073.80 | 3/17/2005 | 31705 | $ 81,793.80 |
| | 4 | $ | 159,894.08 | 5/15/2016 | 142204 | $ 133,389.60 |
| | 5 | $ | 154,893.60 | 6/3/2005 | 142912 | $ 154,893.60 |
| | 6 | $ | 76,244.40 | 6/23/2005 | 143141 | $ 76,244.40 |
| | 7 | $ | 24,403.50 | 8/31/2005 | 144391 | $ 28,945.80 |
| | | | | 10/18/2005 | 866723 | $ 50,000.00 |
| | | $ | 600,228.98 | | | $ 628,986.80 |
| TOTAL CONTRACT | | $ | 783,320.00 | | | |
| GAIC INVOICES | | $ | 15,922.03 | | | |
| JJ HENDERSON INVOICES | | $ | 32,100.00 | | | |
| SUBTOTAL | | $ | 831,342.03 | | | |
| AMOUNT PAID | | $ | 628,986.80 | | | |
| BALANCE DUE | | $ | 202,355.23 | | | |
| EXTRA CHANGE ORDERS | | $ | 93,252.82 | | | |
| TOTAL DUE | | $ | 295,608.05 | | | |
| EXTRA CHANGE ORDERS | # | | | | | |
| | 1.39 | $ | 50,872.72 | | | |
| | 2 | $ | 35,526.51 | | | |
| | 3 | $ | 6,853.59 | | | |
| TOTAL | | $ | 93,252.82 | | | |

# EXHIBIT "D"

STATE OF ILLINOIS     )
                   ) SS
COUNTY OF LAKE     )

## NOTICE OF CLAIM UNDER LABOR AND MATERIAL PAYMENT BOND

To:

Interstate Welding & Fabrication Corporation
1670 East Davis Drive
Terra Haute, Indiana 47802

Carl H. Linder III
Great American Insurance Company
11353 Reed Hartman Highway
Cincinnati, Ohio 45212

Michael L. Henderson, Agent
Joseph J. Henderson & Son, Inc.
4288 Old Grand Avenue
Gurnee, Illinois 60031

Judy Mackey, Clerk City and Township of Zion
2811 Sheridan Rd.
Zion, IL 60099

Pursuant to 770 ILCS 60/23 and 30 ILCS 550/1 & 550/2, the undersigned, attorney for RIGGING SERVICES, INC., an Illinois Corporation, located at 4210 Eleventh Street, Rockford, Illinois 61125, ("RIGGING"), hereby files this Notice, making claim against Labor and Material Payment Bond number 1-04-32-60, furnished by the general contractor INTERSTATE WELDING & FABRICATION, INC., through GREAT AMERICAN INSURANCE COMPANY, 11353 Reed Hartman Highway, Cincinnati, Ohio 45212, for structural steel installation, materials, labor and equipment provided for the project known as STRUCTURAL STEEL & MISCELLANEOUS METALS NSSD ZION TOWNSHIP SLUDGE RECYCLING FACILITY.

Name and Address of Claimant:
Rigging Services, Inc.
4210 Eleventh Street
Rockford, IL 61125

Amount of Claim:
$353,041.46

Name of General Contractor:
Interstate Welding & Fabrication, Inc.
1670 East Davis Drive
Terra Haute, Indiana 47802

RIGGING SERVICES, INC.

By
 Anthony G. Suizzo
 Its Attorney and Agent.

ANTHONY G. SUIZZO
LAW OFFICES OF ANTHONY G. SUIZZO
3201 Old Glenview Road, Suite 225
Wilmette, IL 60091-2942
Telephone No. (847) 853-0300

X:\WPDOCSB\Bond Claim Rigging Interstate Zion

STATE OF ILLINOIS )
                         ) SS
COUNTY OF COOK  )

## VERIFICATION

I, ANTHONY G. SUIZZO, being first duly sworn on oath, states that I am the attorney

and duly authorized agent for RIGGING SERVICES, INC., that I have read the foregoing Notice

of Claim Under Material and Payment Bond, and the statements contained therein are true and

correct to the best of my information and belief.

_____
Anthony G. Suizzo

Subscribed and Sworn to before me
this 9th day of November, 2005.

_____
Notary Public

```
OFFICIAL SEAL
ETABUNO ERUTEYA
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:04/28/09
```

ANTHONY G. SUIZZO
LAW OFFICES OF ANTHONY G. SUIZZO
3201 Old Glenview Road, Suite 225
Wilmette, IL 60091-2942
Telephone No. (847) 853-0300

10/01/2005 FRI 13:57   FAX 8478530374 Law Offices                                    013/016

STATE OF ILLINOIS )
                  ) SS
COUNTY OF COOK    )

## VERIFICATION

I, EVERETT P. BROSS III, being first duly sworn on oath, states that I am the Vice-President and duly authorized agent for RIGGING SERVICES, INC., that I have read the foregoing Notice of Claim Under Material and Payment Bond, and the statements contained therein are true and correct to the best of my information and belief.

EVERETT P. BROSS III

Subscribed and Sworn to before me
this 7th day of October, 2005.

Notary Public

OFFICIAL SEAL
SHARON LESTER
NOTARY PUBLIC, STATE OF ILLINOIS
COMMISSION EXPIRES:07/13/06

ANTHONY G. SUIZZO
LAW OFFICES OF ANTHONY G. SUIZZO
3201 Old Glenview Road, Suite 225
Wilmette, IL 60091-2942
Telephone No. (847) 853-0300
Attorney No. 13235

4

## PROOF OF SERVICE BY MAIL

I, Anthony G. Suizzo, an attorney, certify that I served the foregoing Public Bond Notice by mailing it to: Judy Mackey, Clerk City and Township of Zion, 2811 Sheridan Rd., Zion, IL 60099 (via certified mail, return receipt requested) and mailing copies to: Michael Henderson, Joseph J. Henderson & Son, Inc., 4288 Old Grand Avenue, Gurnee, Illinois 60031, (via certified mail, return receipt requested), Interstate Welding & Fabrication, Inc., 1670 East Davis Drive, Terra Haute, Indiana 47802 (via certified mail, return receipt requested); and Carl H. Linder III, Great American Insurance Companies, 11353 Reed Hartman Highway, Cincinnati, OH 45212 (via certified mail, return receipt requested); and deposited said mailed items at the U.S. Post Office, Village of Wilmette, Illinois with proper postage prepaid, before the hour of 5:00 p.m. on November 9, 2005.


_____
Anthony G. Suizzo



ANTHONY G. SUIZZO
LAW OFFICES OF ANTHONY G. SUIZZO
3201 Old Glenview Road, Suite 225
Wilmette, IL 60091-2942
Telephone No. (847) 853-0300



**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Cheri Ditvig
Zion Township
2800 Sheridan Road
Zion, IL 60099

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label)
7005 1820 0005 2931 2537

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Carl H. Linder III
Great American Insurance Company
1351 Reed Hartman Highway
Cincinnati, Ohio 45212

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
10-28-05

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☒ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label)
7004 0750 0000 8074 9141

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540

---

**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

Zion, IL 60099

Postage $  0.60    UNIT ID: 0091

Certified Fee    2.30

Return Receipt Fee
(Endorsement Required)    1.75

Total Postage & Fees $  4.65    Clerk: KF7009    10/25/05

Sent To    Cheri Ditvig
Zion Township
Street, Apt. No.;    2800 Sheridan Road
or PO Box No.
City, State, ZIP+4    Zion, IL 60099

7005 1820 0005 2931 2537

---

**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

CINCINNATI, OH 45212

Postage $  0.60    UNIT ID: 0091

Certified Fee    2.30

Return Receipt Fee
(Endorsement Required)    1.75

Total Postage & Fees $  4.65    Clerk: KF7009    10/25/05

Sent To    Carl H. Linder III
Great American Insurance Company
Street, Apt. No.;    1351 Reed Hartman Highway
or PO Box No.
City, State, ZIP+4    Cincinnati, Ohio 45212

7004 0750 0000 8074 9141







## SERVICE LIST

Great American Insurance Company
11353 Reed Hartman Highway
Cincinnati, Ohio 45241

Interstate Welding & Fabrication, Inc.
1670 East Davis Drive
Terre Haute, IN 47802-4039

Michael L. Henderson (Registered Agent)
For:    Joseph J. Henderson & Son, Inc.
        4288 Old Grand Avenue
        Gurnee, IL 60031

Judy Macky, Clerk
City and Township of Zion
2811 Sheridan Road
Zion, IL 60099

ls\riggingvzion\alariggingZionserv.lst.doc

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

North Shore Sanitary District for the use
and benefit of Great American Insurance
Company,

        *Plaintiff*

      v.

Travelers Casualty and Surety Company
of America,

        *Defendant.*

Case No.:  07 C 6322

## AFFIDAVIT OF JEFF JUBERA

I, Jeff Jubera, being first duly sworn and under oath, depose and state, as follows:

1.    At all times relevant to Great American Insurance Company's ("Great American")
involvement in North Shore Sanitary District Zion Township Sludge Recycling Facility (the
"Project"), I have been Bond Claim Director for Great American.  I have personal knowledge of
all facts stated herein.

2.    I have handled all communication, either personally or through Great American's
counsel, both from and to Great American related to Great American's bond claim.

3.    On June 9, 2006, Great American made its claim on Travelers' Payment Bond in
connection with the Project.  A true and correct copy of Great American's bond claim is attached
to Great American's Complaint in the instant action at Exhibit D.

4.    On June 22, 2006, Travelers acknowledged receipt of Great American's claim in the form
of a letter to Great American dated June 22, 2006.  A true and correct copy of Travelers' June 22,
2006 letter is attached hereto as Exhibit A.

5.    On August 31, 2006, seventy (70) days after Travelers acknowledged receipt of Great
American's bond claim, Travelers sent a letter to Great American stating that since it had not
received the additional information requested, Travelers was denying Great American's claim.  A
true and correct copy of Travelers' August 31, 2006 letter is attached hereto as Exhibit B.

6.    On October 3, 2006, Great American provided Travelers with additional information
related to Great American's bond claim and submitted Travelers' claim form as requested.  A
true and correct copy of Great American's October 3, 2006 letter is attached hereto as Exhibit C,
without attachments.

EXHIBIT

2

7.    Since October 3, 2006, Travelers has never provided an answer to Great American "stating the amounts that are undisputed and the basis for challenging any amounts that are disputed" nor has Travelers paid or arranged "for payment of any undisputed amounts" as required by Paragraph 6 of Travelers' Payment Bond.

8.    On November 2, 2007, as a result of Travelers' failure to comply with Paragraph 6 of its Payment Bond, Great American made a demand upon Travelers to pay the amount claimed. A true and correct copy of Great American's demand letter is attached hereto as Exhibit D. When Travelers failed to pay in accordance with the Payment Bond, Great American filed the instant lawsuit against Travelers.

Further Affiant sayeth not.

The undersigned certifies that the statements set forth in this instrument are true and correct, except as to matters stated to be on information and belief and as to such matters the undersign certified as aforesaid that he verily believes the same to be true.

Jeff Jubera

Subscribed and sworn to before
me this 22 day of April, 2008

Notary Public

JEANNE R. McQUAY
NOTARY PUBLIC
QUEEN ANNE'S COUNTY
MARYLAND
MY COMMISSION EXPIRES JUNE 22, 2011



**ST PAUL TRAVELERS**

One Tower Square - Bond Claim
Mail Drop - 2S1
Hartford, CT 06183

Theresa M. Asikainen
Bond Claim Representative
St. Paul Travelers Bond
Phone: (860) 277-6014
Fax: (860) 277-1303

June 22, 2006

Great American Insurance Company
150 South Wacker Drive
Suite 1100
Chicago, IL 60606

Attention: Paul T. Lively

| | |
|---|---|
| Surety: | Travelers Cas. & Surety Co. of America |
| Our File No.: | 090-SC-T0505401-NR |
| Bond No.: | 008-SB-103337849 |
| Principal: | Joseph J. Henderson & Son Inc. |
| Obligee: | NORTH SHORE SANITARY DISTRICT |
| Claimant: | Great American Insurance Company |
| Project: | Zion Township Landill Recycling Facility, Gurnee Illinois |

Dear Attorney Lively:

We are in receipt of communication from you indicating that you wish to file a claim on the above-referenced bond. To facilitate our independent investigation of the claim, we request that you fill out and return the enclosed claim form, attaching copies of all documents requested in the claim form.

Our purpose in requesting information from you is to develop a complete understanding of the circumstances surrounding the claim. As such, if other information or documents exist which you feel would assist our evaluation of the claim we ask that you furnish that information as well. In the interim, we will correspond with Joseph J. Henderson & Son Inc. to gain an understanding of their position.

This correspondence and all prior or subsequent communications and/or investigative efforts are made with the express reservation of all rights and defenses the Surety or Joseph J. Henderson & Son Inc. has or may have at law, equity or under the terms and provisions of the bond and contract documents. This reservation includes, without limitation, defenses that may be available under any applicable notice and suit limitation provisions. Subject to this strict and continuing reservation, we look forward to hearing from you.

Sincerely,

*Theresa Asikainen*

Theresa M. Asikainen
Bond Claim Representative

encl:   Claim Form

cc:    Joseph J. Henderson & Son Inc.

**EXHIBIT**

_A_

Rev 01/30/04

C-01

 **ST PAUL TRAVELERS**

**CLAIM FORM
(SUBCONTRACTOR)**

**Principal:** Joseph J. Henderson & Son Inc.

**Claim No.:** 090-SC-T0505401-NR

**Claimant:** Great American Insurance Company

**INSTRUCTIONS:** Please complete the following form, sign and have it notarized, and return it with all enclosures to the address indicated on the accompanying cover letter.

**SECTION 1.**              **CLAIMANT INFORMATION**

1.1    Claimant Identification

Contact Person: _____

Company: _____

Address: _____

_____

_____

Telephone: (_____) _____    Fax: (_____) _____

1.2    Tier Information

Who did you contract with directly? (Check one)

☐ The principal listed above.

☐ A subcontractor to the principal. Name: _____

☐ Other. Explain: _____

**SECTION 2.**              **CLAIM INFORMATION**

2.1    Project Information:

Please describe the project to which your claim relates: _____

_____

2.2    Contract Information:

a.    Did you have a written contract with the person or company listed in 1.2, above?
☐ Yes       ☐ No

b.    If yes, please attach a copy of the contract. If the contract was oral, please describe briefly what the terms were and when it was made:

_____

_____

_____

_____

(attach additional sheet if necessary)

c.    Have you provided labor and/or materials to the principal on any other project?
☐ Yes       ☐ No

d.    Did you take any collateral or personal guarantees with respect to this account?

❏ Yes        ❏ No

e.    Date you began work on the project:  _____/_____/_____

f.    Date you last worked on the project (not including warranty work):  _____/_____/_____

2.3    Contract Accounting

a.    Amount of Original Contract............................    $ _____
b.    Approved Changes to Date............................    $ _____
c.    Adjusted Subcontract/Purchase Order Amount............    $ _____
d.    Value of Work Performed and/or Approved    $ _____
       Material Stored on Job Site Through _____/_____/_____
              (date of last owner paid progress estimate)
e.    Retainage on amount in line *d*, above....................    $ _____
f.    Net Value of Work Performed (line *d* minus line *e*)..............    $ _____
g.    Total Payments Received............................    $ _____
h.    Net Current Amount Due (line *f* minus line *g*)..............    $ _____
i.    Value of Contract Yet to be Performed    $ _____
              (line *c* minus line ..........................

2.4    Vendor Debts

Do you owe any sums to your subcontractors and/or suppliers on this project?
❏ Yes    ❏ No
If yes, please indicate vendor names and amounts owed below:

| Subcontractor / Supplier Name | Amount owed |
|---|---|
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |
|  | $ |

(attach additional sheet if necessary)

2.5    Contract Administration

a.    Did you provide any lien waivers and/or lien releases (of any type) on this job?
❏ Yes    ❏ No

b.    Have you been named on any joint checks (whether or not you actually received any funds out of the proceeds of the joint check)?
❏ Yes    ❏ No

2.6    Disputes

a.    Has the principal disputed any portion of the amount claimed?
❏ Yes    ❏ No

b.    If yes, please describe:

_____
_____
_____
_____

(attach additional sheet if necessary)

**SECTION 3.**        **DOCUMENTS**

Please attach the following documents. If you have already provided any of the requested documents, please so indicate. It is not necessary to send a second set.

a.   A copy of your contract, purchase order, or other form of agreement between your company and the principal or the principals' subcontractor, as appropriate.

   ❑ Attached        ❑ Already Provided        ❑ Not attached

   Reason if not attached: _____

b.   Copies of all invoices and/or pay estimates.

   ❑ Attached        ❑ Already Provided        ❑ Not attached

   Reason if not attached: _____

c.   Copies of all change orders.

   ❑ Attached        ❑ Already Provided        ❑ Not attached

   Reason if not attached: _____

d.   Copies of all checks received from the principal (whether on this project or any other project), including joint checks, since you started work on this project.

   ❑ Attached        ❑ Already Provided        ❑ Not attached

   Reason if not attached: _____

e.   A copy of any overall ledger or similar record listing the dates and amounts of all payments received from the principal or on behalf of the principal (on this job or any other job). This need go back only to the last zero balance.

   ❑ Attached        ❑ Already Provided        ❑ Not attached

   Reason if not attached: _____

f.   Copies of any correspondence between yourself, the principal, the owner, and the principal's subcontractor(s), relating to your claim.

   ❑ Attached        ❑ Already Provided        ❑ Not attached

   Reason if not attached: _____

g.   Copies of any and all notices sent to any party by you or on your behalf regarding this claim, including copies of any return receipts for such notices.

   ❑ Attached        ❑ Already Provided        ❑ Not attached

   Reason if not attached: _____

h.   Copies of any and all lien waivers or lien releases you provided.

   ❑ Attached        ❑ Already Provided        ❑ Not attached

   Reason if not attached: _____

i.   Copies of any documents relating to collateral and/or personal guarantees taken by you with regard to this account.

    1.  ❑ Attached    ❑ Already Provided    ❑ Not attached

Reason if not attached: _____

j.   A copy of your contractor registration or license, if such registration or license is required by state law.

   ❑ Attached    ❑ Not Required    ❑ Not attached

Reason if not attached (if required): _____

**[Notes:**

1. **Insert Fraud Warning Here –**
   a. **If your <u>claimant</u> <u>state</u> is one of <u>these</u>:**

   Alaska, Arkansas, Arizona, California, Colorado, Washington, D.C., Delaware, Florida, Idaho, Indiana, Kentucky, Louisiana, Maine, Minnesota, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oklahoma, Pennsylvania, Tennessee, Virginia...

   **...use the language for the fraud warning found in:**
   **Bond Shared Library / Procedures / Contract:**
   *Fraud Warnings by Claimant State*
   b. **For states not listed, use the <u>default</u> language below.**
2. **<u>Delete</u> these notes before printing the form.]**

Any person who knowingly and with intent to defraud any insurance company or other person files an application for insurance or statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime and subjects such person to criminal and civil penalties.

The Undersigned hereby swears that the information provided is true and accurate to the best of his or her knowledge.

### *Certification of Claim*

I, _____ (person completing form), being first duly sworn, say under penalty of perjury that I am responsible for the compilation of the information provided herein, and the foregoing is a true, accurate and complete statement of my claim or my company's claim, and I hereby affirm that the amount claimed is justly due me or my company.

Dated this _____ day of _____, 20_____

By:_____

_____
(print name)

_____
Notary Public in and for the

State of _____

Residing at _____

My commission expires ____/____/_____

 **ST PAUL TRAVELERS**

One Tower Square - Bond Claim
Mail Drop - 2S1
Hartford, CT 06183

Kimberly J. Tibbetts
Bond Claim Associate Counsel
St. Paul Travelers Bond
Phone: (860) 277-8057
Fax: (888) 201-5528

August 31, 2006

Great American Insurance Company
150 South Wacker Drive
Suite 1100
Chicago, IL 60606

Paul T. Lively

Re:   Surety          Travelers Cas. & Surety Co. of America ("the Surety")
      Our File No.:   090-SC-T0505401-NR
      Bond No.:       008-SB-103337849
      Principal:      Joseph J. Henderson & Son, Inc.
      Obligee:        North Shore Sanitary District
      Project:        Zion Township Landill Recycling Facility, Gurnee Illinois

Dear Attorney Lively:

On June 22, 2006 Travelers Cas. & Surety Co. of America (the "Surety") requested that you
document your claim against Joseph J. Henderson & Son, Inc. (the "Principal") and execute an
Affidavit of Claim form. To date, we have not received a response to that request. As the Surety
does not possess sufficient information to determine the validity of your claim, it must be
respectfully denied at this time.

This correspondence and all prior or subsequent communications are made with express reservation
of all rights and defenses that may be available to the Surety and/or the Principal, at law or in equity,
under the terms and provisions of the bond and contract documents.

Please feel free to the call the undersigned with any questions.

Sincerely,

Kimberly J. Tibbetts

cc:    Joseph J. Henderson & Son, Inc.


EXHIBIT
B

New 04/04/05

C-15b



PRESORTE
FIRST CLAS

**≣ ST PAUL TRAVELERS**

Bond Claim, 2S1
One Tower Square
Hartford, CT 06183-9062

Great American Insurance Company
150 South Wacker Drive
Suite 1100
Chicago, IL 60606

GAL.TSM3 &06O6

# FORANGLENNONPALANDECH&PONZI

October 3, 2006

Ms. Kimberly J. Tibbetts
Bond Claim Associate Counsel
St. Paul Travelers Bond
One Tower Square – Bond Claim
Mail Drop 2S1
Hartford, CT 06183

|      |               |                                                              |
|------|---------------|--------------------------------------------------------------|
| Re:  | Surety:       | Travelers Cas. & Surety Co. of America                       |
|      | Your File No: | 090-SC-T0505401-NR                                           |
|      | Bond No:      | 008-SB-103337849                                             |
|      | Principal:    | Joseph J. Henderson & Son Inc. ("Henderson")                 |
|      | Obligee:      | North Shore Sanitary District                                |
|      | Claimant:     | Great American Insurance Company ("Great American")          |

Project: Zion Township Landfill Recycling Facility, Gurnee ("Project")

Dear Ms Tibbets:

In response to your claim acknowledgment letter of June 22, 2006 and your follow-up letter of August 31, 2006, I have enclosed documentation in support of Great American's claim and demand in the amount of $420,969.89 on your above- referenced bond. This documentation for ease of reference is numbered sequentially with a "GA" designation.

Great American, as surety, issued its subcontract performance and payment bond no. 104-32-60 ("Subcontract Bond") for the referenced Project naming your principal, Henderson, as obligee, and Interstate Welding & Fabrication Inc. ("Interstate"), as principal. (See Exhibit 5, Subcontract Bond) On or about July 7, 2005, Henderson subsequently declared Interstate to be in default and terminated its subcontract ("Subcontract") with Interstate. (See Exhibit 1, Subcontract)  Subsequently, Henderson made a demand under the Subcontract Bond.

Pursuant to the Subcontract Bond, Great American entered into a takeover agreement ("Takeover Agreement") with Henderson, with Great American agreeing to complete or procure completion of Interstate's work. Also, as part of the Takeover Agreement, Henderson agreed to make the entire Subcontract balance available to Great American. (See Exhibit 3, Takeover Agreement, ¶ 6) Despite Henderson's agreement to pay the Subcontract balance available to Great American, Henderson has refused and failed to pay Great American. Henderson, moreover, refused to allow Great American to perform work under the Takeover Agreement and unilaterally completed the remaining Interstate work in breach of the Takeover Agreement. Henderson's actions have prejudiced Great American's ability to mitigate its exposure under the Subcontract Bond and impaired Great American's equitable and contractual rights of subrogation to the remaining Subcontract balance.

The original Subcontract value is $2,400,00.00 and approved additive Subcontract change orders are $152,000.00, increasing the Subcontract value to $2,552,000.00. The current value of Subcontract funds paid for work is $1,970,197.20. (See Exhibit 1, Subcontract and approved change orders; see Exhibit 2 pay application log and Subcontract pay applications; see Exhibit 3 Takeover Agreement, ¶

Paul T. Lively, Attorney at Law, direct 312.863.5096, email plively@fgpp.com
Foran Glennon Palandech & Ponzi PC    Attorneys at Law    Chicago | Los Angeles
150 South Wacker Drive, Suite 1100, Chicago, Illinois 60606, tel 312.863.5000, fax 312.863.5099, www.fgpp.com

**EXHIBIT**

tabbies

C

Kimberly J. Tibbetts
October 3, 2006
Page 2

5). Henderson and Great American agreed that $581,802.80 in Subcontract funds was available for completion of Interstate's work. (See Exhibit 3, Takeover Agreement, ¶ 5)

Also, pursuant to the Takeover Agreement, Great American conducted an analysis of the remaining Subcontract work based on outstanding Subcontract line items and replacement work and determined that the reasonable cost to complete Interstate's remaining Subcontract work is $293,720.16. Great American's analysis of remaining Subcontract work, material/labor unit costs and equipment costs is enclosed as Exhibit 3. Pursuant to the Takeover Agreement, Henderson has asserted $100,969.99 in offsets. (See Exhibit 3, Takeover agreement, ¶ 5.g) In addition, Great American submitted change order requests to Henderson in the total amount of $233,857.25 which remain outstanding. Enclosed as Exhibit 4 are the requests for change orders no(s) 0001.1 through 0029 with supporting documentation. After all due offsets, Great American is owed $420,969.89 as follows:

| | |
|---|---|
| $581,802.80 | Subcontract Balance – Exhibits 1, 2 & 3 |
| ($293,720.16) | Cost to Complete – Exhibit 3 |
| $288,082.64 | Subcontract Balance at Completion of the Subcontract Work |
| ($100,970.00) | Henderson Setoffs – Exhibit 3 |
| $187,112.64 | Subcontract Balance Including Setoffs |
| $233,857.25 | Great American/Interstate Outstanding Change Orders – Exhibit 4 |
| $420,969.89 | Subcontract Balance Including Outstanding Change Orders |

Additionally, we have enclosed the completed proof of claim form you requested. Enclosed also as Exhibit 6 are Great American's loss payments under its Subcontract Payment Bond which, to date, total not less than $195,273.95. (See Exhibit 6, Releases) Great American is also entitled to the remaining Subcontract balance pursuant to its equitable and contractual subrogation rights and its contractual rights of assignment.

You will note that the Lovett-Silverman contract reconciliation reports and change order analysis reports are marked as confidential; however, Great American is supplying these reports to help facilitate Travelers' analysis of this claim. Great American's supply of this documentation is not be construed as a waiver of any privileges, either through attorney-client or otherwise, and Great American expressly reserves those rights.

Should you have any questions regarding Great American's claim or the enclosed documentation, please do not hesitate to contact the undersigned, or as indicated previously, Mr. Jeff Jubera of Great American. His direct telephone is 410.604.1596. Your prompt response is requested.

Best regards,

Paul T. Lively

cc: Jeff Jubera (via e-mail)

580 Walnut Street
Cincinnati, OH 45202-3180

PO Box 2119
Cincinnati, OH 45201
888.290.3706 fax (U.S. Only)
513.345.1360 fax



**GREAT**AMERICAN.

INSURANCE GROUP

**VIA FAX 888-201-5528 & US MAIL**

November 2, 2007

Ms. Kimberly J. Tibbetts
Bond Claims Associate Counsel
St. Paul Travelers Bond
One Tower Square – Bond Claim
Mail Drop 2S1
Hartford, CT 06183

RE:   Principal:      Joseph J. Henderson & Son, Inc.
      File No.:       090-SC-T0505401
      Bond No.:       008-SB-103337849
      Claimant:       Great American Insurance Co. ("GAIC")
      Claim Amount:   $420,969.89

Dear Ms. Tibbetts:

On June 14, 2006, GAIC submitted notice of a claim on the above-referenced project. On June 22, 2006, St. Paul Travelers ("Travelers") acknowledged receipt of the claim and requested that GAIC submit a claim form and copies of documents set out in the claim form. On August 31, 2006, (68 days from the initial claim) Travelers stated that it had not yet received a claim form or documentation of the claim and "respectively denied [it] at this time."

On September 11, 2006, GAIC acknowledged your August 31st correspondence and notified you that the documentation would be forthcoming. On October 3, 2006, the claim form, along with documentation substantiating GAIC's claim in the amount of $420,969.89, was forwarded to your attention. To date, GAIC has had no response from Travelers regarding this claim.

The bond in question is an AIA Document A312 form bond. Section 6 of this bond requires that Travelers, within 45 days after receipt of a claim, send an answer to GAIC, with a copy to the Owner, stating the amounts that are undisputed and the basis for challenging any amounts that are undisputed.

Ignoring for the moment the fact that Travelers' initial denial of the claim came 68 days after notice of GAIC's claim, Travelers has never responded to the documentation provided by GAIC on October 3, 2006. Since the 45 days available to Travelers to dispute GAIC's claim have long past, Travelers has accepted GAIC's claim in its full amount. Please immediately forward to my attention a check in the amount of $420,969.89. Failure to do so will result in suit being filed against Travelers and all available remedies sought.

If you have any questions, you may contact me directly at 410-604-1596.

Sincerely,

Great American Insurance Company

Jeffrey S. Jubera
Bond Claim Director

**EXHIBIT**

D

tabbies®



**GREATAMERICAN®**

INSURANCE COMPANIES

## FAX COVER SHEET

Date:        November 2, 2007

To:          Kimberly Tibbetts
             St. Paul Travelers

Fax:         888-201-5528

From:        Jeff Jubera
             jjubera@gaic.com
             (410) 604-1596 Phone
             (888) 290-3706 Fax
             P.O. Box 2119
             Cincinnati, OH  45201

Number of pages (incl. Cover page) - 2

Re:          J.J. Henderson
             Claim No. 090-SC-T0505401-NR

# Select A Case

**This person is a party in 7 cases.**

| 1:05-cv-04799 | Danny's Construction Company, Inc. et al v. Travelers Casualty and Surety Company of America | filed 08/19/05 |
|---|---|---|
| 1:06-cv-01209 | Intrastate Piping & Controls Inc et al v. Walsh Construction Company Of Illinois et al | filed 03/06/06 |
| 1:07-cv-03968 | Capital Development Board v. Travelers Casualty and Surety Company of America | filed 07/13/07 |
| 1:07-cv-04430 | Gurtz Electric Co v. Gilbane Building Company et al | filed 08/07/07 |
| 1:07-cv-06322 | North Shore Sanitary District for the use and benefit of Great American Insurance Company v. Travelers Casualty and Surety Company of America | filed 11/08/07 |
| 1:07-cv-06593 | Astor Plaza Condominium Association et al v. Travelers Casualty and Surety Company of America et al | filed 11/21/07 |
| 3:08-cv-50008 | Travelers Casualty and Surety Company of America v. Young Construction & Paving, LLC et al | filed 01/10/08 |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 04/21/2008 15:19:19 | | | |
| **PACER Login:** | bl0199 | **Client Code:** | great american |
| **Description:** | Search | **Search Criteria:** | Last Name: Travelers Casualty and Surety Company of America |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |



EXHIBIT

tabbies

2


HOME    CONTACT US

About JJH        Delivery Methods        Project Experience        Safety        Subs/Suppliers        Employment

News


"The Joseph J. Henderson & Son, Inc. Tradition...

your cornerstone for commitment and quality"


## ABOUT JJH

### Who is JJH?

*Joseph J. Henderson & Son, Inc.*

*"We are a family owned, financially strong, elite contractor established in 1928. We employ well-trained, motivated individuals whose goal is to treat everyone fairly. Together we build large, complex projects in both the public and private sector."*

Joseph J. Henderson & Son, Inc. (JJH) has grown to become one of the largest and most well respected commercial general contracting firms in northern Illinois. The Henderson Heritage has grown strong in the Chicagoland area especially in Lake, McHenry, DuPage, Will, Kane and Cook counties. The people who make it work are our employees, and each one embodies the foundation of trust, mutual respect and integrity that is Joseph J. Henderson & Son, Inc. JJH is a self-performing general contractor employing over 150 skilled craftsmen in the carpentry, concrete and millwork trades.

Now in its third generation of family management, JJH continues to offer a wide range of delivery methods including Design-Build, Design-Bid-Build, Construction Management At Risk, and Construction Management As Agent. We have learned that with the proper construction format and by working together as a team with our clients, architect/engineers, and developers we can provide the highest level of customer satisfaction and establish relationships that will last for years to come. Customer service and customer satisfaction have always been a hallmark of JJH. A significant number of complimentary letters from satisfied clients plus five certificates of appreciation from the Department of Defense prove our commitment to uphold and enhance the principles that JJH was founded on: Quality, Fairness, Honesty, and Excellent Customer Satisfaction.

At JJH we believe that our financial strength offers project security. JJH has a bonding capacity of $150,000,000 and an average annual volume of $81.5 million. JJH is experienced in all types of construction projects including commercial, institutional, federal/military, renewable fuel & chemical, and water and wastewater treatment.

*"We continue to conduct our business in an open, honest, and professional manner making every effort to please our business associates. We produce the highe[...] products possible and, at the best possible value. When owners place their c[...] and trust in Joseph J. Henderson & Son, Inc., for their building needs, we co[...]*

EXHIBIT
4

*provide total customer satisfaction and an uncommonly pleasant construction experience."*

~ *David A. Henderson, President*

| JJH Core Values | JJH Code of Expectations |
|---|---|
| • Be Ethical | • Resolve problems in a timely manner |
| • Be Fair | • Always do the job to the best of your ability |
| • Be Honest | |
| • Be Professional | • Display a positive attitude |
| • Be Loyal | • Provide excellent customer service at all times |
| • Be Consistent | |
| | • Be a team player |
| | • Respect everyone you come in contact with |
| | • Ask for help when needed |

**JJH Professional Affiliations:**

Lake County Contractors Association (LCCA)
• David A. Henderson: Chair
– Labor Committee, Member
– Governor's Affairs Committee
• Steven G. Dalbec: President
– Political Action Committee, Chairman
– Government Affairs Committee and Member – Board of Directors
• Jason Rudolph: Members
– Membership Committee

Design Build Institute of America (DBIA)
Construction Industry Service Corporation (CISCO)
• David A. Henderson: Past President

**Association of Subcontractors and Affiliates**
American Society of Professional Estimators (ASPE)
Society of American Military Engineers, Lake Michigan Post (S.A.M.E.)

National Association of Women in Construction (NAWIC)
• Jamie Shirling: Past President
– Lake/McHenry County Chapter #368,
– National Block Kids, National Chairperson,
– Construction Industry Chairperson, Region 13

**College of Lake County (CLC)98**
• Jamie Shirling: Member
– Building Construction Advisory Committee

**Chicago Commercial Architect/Builder Magazine**
• Jamie Shirling: Advisory Board

**Institute of Management Accountants**
**Gurnee Exchange Club**
American Water Works Association (AWWA)
American Public Works Association (APWA)
Water Environmental Federation (WEF)
**Fox Valley Operators Association**