IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| North Shore Sanitary District f/u/b Great American Insurance Company,<br><br>Plaintiff<br><br>v.<br><br>Travelers Casualty and Surety Company of America,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>) Case. No: 07 C 6322<br>)<br>)<br>)<br>)<br>)<br>) |

DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO STAY

**I. The two actions are parallel because there is a substantial likelihood that the pending, previously-filed state litigation will dispose of all claims presented in the federal case.**

**A. Identical defendants and identical causes of action are not required for the matters to be parallel; the issue is the recovery for the plaintiff's claims.**

"In determining whether two actions are parallel, a court looks 'not for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case.'" Lumen Constr. Inc. v Brant Constr. Co., 780 F. 2d 691, 695 (7th Cir. 1985). Plaintiff argues that the state court matters based upon the same claims are not parallel because the Defendant Travelers "would not be bound by any judgment entered in the Lake County lawsuit." (Reply, p. 6). The issue is not Travelers' liability, but recovery by GAIC for its claims. There cannot be two recoveries. The action in Lake County was far advanced when GAIC filed this federal action. GAIC had caused an amount in excess of its claims herein to be taken from the funds of the contractor and paid into court. Those funds, $ 579,391.25, are in

1

the possession of the Lake County Circuit Court, set aside to satisfy the Great American claims if valid.

There is no issue regarding the existence of claims under the Illinois Public Construction Bond Act as an additional remedy to a subcontractor on a public project. The pertinent issue in this Motion to Stay is not whether another cause of action exists, but rather that there is a prior proceeding regarding the same claims that has been brought by Plaintiff in state court.

Great American cites <u>Decatur Housing Authority v. Christy-Foltz</u>, 4th Dist. 1983, 117 Ill.App.3d 1077, where the issue was estoppel by judgment, as finding that "the same evidence would not sustain" verdicts under the Lien Act and the Bond Act. (Response, p. 7). In <u>Decatur</u>, the subcontractor plaintiff had previously brought a lien against public funds action, wherein it expressly stipulated that no funds were due the contractor who had hired it to perform its work and also stipulated to a voluntary dismissal of its action. The trial court then dismissed a subsequent suit under the Public Construction Bond Act based upon estoppel, and the Fourth District Appellate Court reversed, holding as follows: "The trial court's order dismissing the mechanic's lien action with prejudice was expressly based on the stipulation of the parties; this stipulation indicated only that no funds were owed by Christy-Foltz, Inc., to Floor, Inc. To speculate that the court also considered the affirmative defense asserted by Christy-Foltz, Inc., in that action, i.e., satisfaction of the debt, would remove from the party asserting the defense of estoppel by verdict the burden of showing what was determined by the prior judgment with certainty and clarity. (Redfern.) Defendants have failed to meet this burden and therefore have not shown that the doctrine of estoppel by verdict is applicable here." <u>Decatur,</u> 117

Ill.App.3d at 1083. The doctrine of estoppel by verdict is not an issue here for a Motion to Stay.

The language surrounding Great American's quote from Decatur further demonstrates its lack of applicability to this Motion to Stay: "Under the doctrine of estoppel by judgment, a final judgment may be asserted in bar of a second action where the parties and the cause of action are identical. (citation omitted). <u>Causes of action are identical</u> where the evidence necessary to sustain a second verdict would sustain the first, i.e., where the causes of action are based upon a common core of operative facts. (citation omitted and emphasis added.) Here, the parties agree that this complaint is based upon a different cause of action than that underlying the complaint in the action brought under the Mechanics' Liens Act; the same evidence would not sustain both verdicts." <u>Decatur</u>, 117 Ill.App.3d at 1081.

Unlike estoppel by verdict, there is no requirement that the causes of action be identical for a motion to stay to be granted pursuant to the <u>Colorado River</u> doctrine. "Even the presence of additional issues will not necessarily stave off abstention. Rather, the primary inquiry is whether there is a "substantial likelihood" that the non-federal litigation "will dispose of all claims presented in the federal case." <u>Day v. Union Mines, Inc.</u>, 862 F.2d 652, 656 (7th Cir. 1988). Similarly, there is no requirement that the defendants be identical. Parties with "nearly identical" interests are considered "substantially the same" for Colorado River purposes. See <u>Caminiti & Iatarola, Ltd. v. Behnke Warehousing, Inc.</u>, 962 F.2d 698, 700-701 (7th Cir. 1992).

**B. The bond Principal general contractor remains the real party in interest in both state and federal forums.**

Plaintiff argues that the surety Defendant Travelers has a liability to Plaintiff not covered by the indemnity agreement between general contractor bond Principal and the Defendant Travelers, attached as an exhibit to the Motion to Stay, and as a result, Plaintiff should be allowed to litigate the same claim in two different forums if it chooses. Plaintiff's claim, its *raison d'etre* which will brook no Colorado River bar, is as follows: "In fact, as a result of Travelers' own failure to timely dispute Great American's bond claim under Paragraph 6 of the Payment Bond, Travelers now has the unfettered obligation to pay Great American the amount claimed due it." (Plaintiff's Response, p. 10.) Plaintiff finds this "unfettered obligation" in the language of a Maryland state court case, National Union Fire Ins. Co. of Pittsburgh v. David A. Bramble, Inc. , 388 Md. 195, 204-5, 879 A.2d 101, 107 (Md. 2005).

National Union involves a private construction bond for Maryland private construction where both the subcontractors involved had completed the work and then unsuccessfully attempted to collect the amount still owed. In National Union the surety never denied the claim. Upon receipt of the completed Proof of Claim, the surety had responded that it would immediately take this matter up with the Principal to ascertain their position on the claim. It further promised it would be in touch in due course regarding such position, but made no further reply. The Maryland court stated, "The sureties do not contest the fact that they breached the requirements of the Paragraph 6." National Union, 388 Md. at 109-110.

The facts, and most importantly, the nature of the bond are quite different in the instant matter. According to the Great American Response, Travelers denied the Great

4

American claim in its entirety on August 31, 2006. (Response, p. 3). In National Union, the court remarked that "the record contains no evidence that the sureties attempted to comply with the language of the bond" and held it would not be consistent with the plain meaning of the provisions of Paragraph 6 to interpret it to permit the sureties to dispute a claim in its entirety through inaction." National Union, 879 A.2d at 110. Great American admits that this was not the situation in the instant matter when it acknowledges the letter of denial of claim by Travelers on August 31, 2006.

Subsequently, on October 3, 2006, Great American submitted its claim again, this time with some documentation and a Proof of Claim. Great America alleges there was no further response. There is no language in Paragraph 6 or elsewhere in the Travelers bond that requires a second denial by the surety after a resubmission of the claim. Great American notes that seventy days had elapsed at the time of the denial of the claim by Travelers. It is alleged that Travelers had sent Great American a request for information and Proof of Claim with its acknowledgment of the first Great American letter, but when Great American failed to reply, Travelers denied the claim in its entirety. If the parties themselves interpreted Paragraph 6 of the public bond to mean "reply within 45 days or waive all defenses", why did Great American resubmit a second claim to the surety on October 3, 2006, as Plaintiff alleges, at a time when Great American had already commenced litigation on the same claims in state court in a multi-count complaint.

While claiming its assertion of total waiver of defenses by a surety is not based on an anomaly (Response, p.11), Plaintiff has cited only three cases advancing its theory of complete waiver of defenses, none of which deal with a public construction bond and certainly not with the Illinois Public Construction Bond Act. (While cited separately as

5

National Union Fire Ins. Co. of Pittsburgh v. Wadsworth Golf, 160 Md.App. 257, 863 A.2d 347 (Md. 2004), the Wadsworth Golf case is a part of the National Union Appellate Court decision and came to the Maryland Court of Appeals from the Maryland Special Court of Appeals where it was joined in National Union. ) In addition to National Union, Plaintiff cites two cases, one in Florida and one in Virginia.

In the Florida case, J.C. Gibson Plastering Co., Inc. v. XL Specialty Insurance Co., 2007 WL 2916399, 2006 LEXIS 74589 (M.D.Fla. Oct. 8, 2007), the claimant subcontractor gave notice of the claim to the surety and the owner stating the amount of its claim, the surety requested copies of the claimant's cost records which were provided, and the claimant stated the response time had run from the initial claim. The surety asserted the 45-day period did not begin to run until after receipt of the cost data, and denied the claim on the 48th day after receipt of the claim. The Florida court granted claimant's motion for summary judgment on this private bond claim stating: "In this case forty-eight days may as well have been a hundred days. Under Florida law, bond language must 'be strictly construed against the surety and in favor of the obligee.' Under such a construction, the forty-five day period set forth in Paragraph 6 means forty-five days. [The surety] could not comply with Paragraph 6 by answering within forty-eight days." Clearly, the Florida case does not involve a statutory bond or an Illinois public construction bond action, governed by a specific state statute.

In the Virginia case cited, Casey Industrial, Inc. v. Seaboard Surety Co., 2006 WL 2850652 (E.D. Va. Oct. 2, 2006), Casey Industrial, Inc. v. Seaboard Surety Co., 2006 U.S. Dist. LEXIS 74589 (E.D. Va. Oct. 2, 2006) the surety raised new defenses that were not included in its original letter. The U.S. District Court held that the surety's failure to

identify factual defenses within the 45-day period acted as a waiver of new factual defenses. The court, however, allowed the surety to raise legal defenses not asserted in the letter based on the reservation of rights. Again, the action at issue in Casey Industrial is neither an action governed by the Illinois Public Bond Act nor one involving a statutory bond.

None of the cases cited by Plaintiff deal with a statutory bond. In fact, the U.S. District Court in Florida specifically notes that it is treating the bond as a common law bond and excludes statutory bonds from the scope of its decision: "5. There are two types of construction payment bonds under Florida law, common law bonds and statutory bonds. So-called statutory payment bonds must comply with the requirements of section 713.23, Florida Statutes. Such bonds protect an owner from construction liens by subcontractors. The requirements for making a claim against a statutory bond are set by statute." J.C. Gibson Plastering Co., Inc. v. XL Specialty Insurance Co., 2007 WL 2916399, Note 5 (M.D.Fla. Oct. 8, 2007).

All of the opinions cited in support of Plaintiff's encouragement to adopt this radical viewpoint require the consideration of nothing but the language of the bond strictly construed against the surety, and this is not the situation when a statutory bond forms the basis of the action. Plaintiff's assertion that the "heart of this dispute" is "specific case law related to a surety's failure to timely dispute a payment bond" and "is federal law" is incorrect. (Response, p. 14). The fact that Florida and the Virginia citations are to District Court opinions does not convert the matter to "federal law." The present federal action is brought under the Illinois Public Construction Bond Act and

7

involves the construction of a state statute. It is not a suit to enforce a private bond on a private project.

The language of the Illinois Public Construction Bond Act provides for the payment of <u>just</u> claims only:

> Each such bond is deemed to contain the following provisions whether such provisions are inserted in such bond or not:
> 'The principal and sureties on this bond agree that all the undertakings, covenants, terms, conditions and agreements of the contract or contracts entered into between the principal and the State or any political subdivision thereof will be performed and fulfilled and <u>to pay</u> all persons, firms and corporations having contracts with the principal or with subcontractors, <u>all just claims due them under the provisions of such contracts</u> for labor performed or materials furnished in the performance of the contract on account of which this bond is given, when such claims are not satisfied out of the contract price of the contract on account of which this bond is given, after final settlement between the officer, board, commission or agent of the State or of any political subdivision thereof and the principal has been made.'

30 ILCS 550/1. (emphasis added).

As well as being just, the claims must also comply with the notice, limitation, and other provisions of the statute. Since plaintiff sued upon a statutory bond executed pursuant to the requirements of the Act relating to such a bond, its right to sue arises under and is subject to the conditions and limitations imposed by said Act. <u>McWane Cast Iron Pipe Co. v. Aetna Cas. and Surety Co., 3 Ill.App.2d 399, 122 N.E.2d 435 (3rd Dist. 1954)</u>. In short, there is no "unfettered obligation to pay" created by an alleged failure of a surety to respond in forty-five days under the Illinois Act. The purpose of this section is remedial and these sections are intended to protect subcontractors and materialmen for whom no right of mechanic's lien exists against a public body. <u>Chicago Hous. Auth. ex</u>

rel. Gen. Bronze Corp. v. United States Fid. & Guar. Co., 49 Ill. App. 2d 407, 199 N.E.2d 217 (1 Dist. 1964). The purpose is not to pay a claimant, just or not, if the surety fails to respond in forty-five days. The purpose is not to create an administrative nightmare that would only increase the cost of public construction.

**C. Plaintiff's claims in both the pending state action and this federal action are subject to the same defenses; there is no prejudice in requiring Plaintiff to proceed first with its earlier-filed, multi-count complaint in state court.**

In continuing its argument that the state court multi-count action is not parallel, Plaintiff raises the contention that the surety has far fewer defenses than those available to the Principal general contractor in the state court claims and enumerates three matters in support of that contention: 1) The "pay when paid" defense is not a defense to this bond claim; 2) The recovery in a public lien act claim is limited to the amount owed the upstream contractor but not so limited in a public bond claim; and 3) Plaintiff has an automatic right to its bond claim amount because it alleges it did not receive an answer to its claim from the Defendant within forty-five days. (Response, p. 8).

As noted before and shown by the Plaintiff's Amended Complaint attached to the Motion as Exhibit A, the state court complaint includes a count to foreclose a lien upon public funds brought pursuant to Section 23 of the Mechanic's Lien Act. The "pay when paid" defense is also specifically unavailable as a defense in such Section 23 actions by terms of Illinois statute (770 ILCS 60/21), which statute forms part of the basis for the appellate court's denial of the defense to the bond company defendant in the very case cited by Plaintiff, Brown & Kerr, Inc. v. St. Paul Fire and Marine Ins. Co, 940 F. Supp145 (N.D. Ill 1996). There is no advantage to the Plaintiff here that is not present in the state court. Non-payment by the Owner is not a defense to a Section 23 mechanics'

9

lien action Plaintiff brought in state court, and there is no greater exposure of the Surety here than the exposure of the Principal general contractor, Joseph J. Henderson & Son, Inc., presently being sued in Lake County, Illinois, by Great American. In fact, there is the additional advantage to the Plaintiff that it has caused more funds than herein claimed to have been set aside to pay its claims, which funds are being held by the state court.

Plaintiff's second attempt to differentiate its recovery possibilities in its state court litigation centers on the potential limitation of recovery to the amount due the up-stream general contractor. However, in this instance, the Plaintiff had actually liened and had placed in the custody of the state court more than $150,000.00 in excess of the amount it is now claiming due in this second federal action; therefore, there is no such actual limitation. Further, neither Plaintiff's contract count nor the Prompt Pay count of the state action has any such a limitation.

We have already discussed at length the Plaintiff's third theory of unfettered obligation and right to a summary judgment due to a failure to reply within 45 days. Plaintiff's argument is based on the unfounded expectation that another state's appellate court opinion applies to an action under the Illinois Public Construction Bond Act. To use, probably ill-advisedly, a mixed sports metaphor, this concept is definitely not a slam-dunk as advertised, but more of a "Hail, Mary" pass, one falling far short of the goal.

In its rush to judgment, Plaintiff glosses over the admitted facts in the instant matter: that litigation regarding the claim had previously been initiated by the Plaintiff in an Illinois state court two years ago and was on-going at the time the bond claim was made; that the Plaintiff's claim had been denied by the surety Defendant and then resubmitted by the Plaintiff; that the Plaintiff had already caused funds in excess of the

amount necessary to satisfy its claim to be paid into the state court; and that the enabling statute, the Illinois Public Construction Bond Act limits recovery, among other limitations, to "just" claims.

An attempt to engraft a Maryland state appellate court interpretation of a private construction bond document onto the Illinois public bond act, an Illinois statute, is not an excuse for a separate excursion to federal court, where the plaintiff has maintained an action in the Illinois state court for more than two years on the same underlying claim for recovery and the grounds for dispute and denial of payment were well known to Plaintiff and a subject of litigation even before the submittal of the bond claim. The instant federal action is based upon an Illinois statute. In interpreting a state statute, federal courts will defer to the interpretation placed on a statute by the state court itself. See, e.g., Doe v. City of Chicago, 360 F.3d 667 (7th Cir. Ill. 2004). In Doe, the Seventh Circuit clearly stated, "[a] litigant who wants an adventurous interpretation of state law should sue in state court ... rather than ask us to declare such an interpretation to be the law of Illinois. [citations omitted]." Id. at 672. Courts, in general, are reluctant to expand the scope of statutory payment bonds in deference to legislative decision. Further, the statute itself places venue in the circuit court where Plaintiff had already filed its other claims. While diversity of citizenship allows an action under the state statute to be brought in federal court, it surely does not justify this trip to a second forum, when the action in the first forum has been underway for two years and where the state court has taken custody of the funds to satisfy any valid claim.

**II. The Colorado River factors favor grant of the Motion to Stay.**

The ten Colorado River factors are : 1) whether the state has assumed jurisdiction over the property; 2) the inconvenience of the federal forum; 3) the desirability of avoiding piecemeal litigation; 4) the order in which jurisdiction was obtained by the concurrent forums; 5) the source of governing law, state or federal; 6) the adequacy of state-court action to protect the federal plaintiff's rights; 7) the relative progress of state and federal proceedings; 8) the presence or absence of concurrent jurisdiction; 9) the availability of removal; and 10) the vexatious or contrived nature of the federal claim.  Sverdrup Corp. v. Edwardsville Comm. School Dist. No. 7, 125 F.3d 546, 549-50 (7th Cir. 1997).

Movant has pointed out in its Memorandum how each of these factors support the grant of the Motion to Stay. Of these factors Plaintiff raises argument as to only five. It first claims the funds on deposit are somehow different property from the property sought from Travelers. This suit seeks money; money has already been deposited in the state court from funds due the Principal general contractor and withheld from it as a result of the Plaintiff's lien. That money, the property, is available to pay any valid claims of Plaintiff. Plaintiff is entitled to only one recovery.

With regard to inconvenience of the federal forum, it notes Defendant Travelers has other cases pending in this forum, and brushes aside the inconvenience to witnesses and the public body. The public owner will inevitably be involved. The question of Plaintiff's defective work and failure to complete will require the public owner's records and testimony. The Illinois enabling statute placed venue in the local circuit court to minimize such inconvenience to public owners and witnesses.

Plaintiff then states there will be no piecemeal litigation because it is entitled to summary judgment because the surety didn't respond in forty-five days, and uses the

same reasoning to argue the Lake County circuit action doesn't adequately protect its rights. For all the reasons noted above at length, this argument fails. Finally, Plaintiff states that because there is diversity and because payment bond claims are often handled in federal court, there is no vexatious or contrived nature to bringing this matter here, ignoring completely the pending multi-count litigation which it brought in the state court some two years ago.

None of these arguments are persuasive. Plaintiff has made the choices that give rise to this motion. This is not a situation where the plaintiff has not been involved in existing prior litigation brought by others over the same matters; this is all the result of Plaintiff's actions and choices, which choices should not be allowed to cause simultaneous litigation in two different forums of the same claims for the same work for the same project. It could have brought the actions together in state court, as often occurs. It could have brought this present action now in state court, where the matters could and would have been consolidated with its first action for judicial economy and convenience. Instead, it chose to institute a new action in a new forum some two years after it initiated its first multi-count complaint in state court and after bringing seven other separate Mechanic's Lien Section 23 actions against the bond Principal for the same project, all of which have been involuntarily dismissed. (Exhibit A- Orders of Dismissal).

Plaintiff's previous unstinted use of the state forum highlights the applicability of the Colorado River doctrine to this matter. This action should stand in abeyance until the litigation Plaintiff first brought has been completed.

Respectfully submitted,

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA

By: /s/ Donna R. Henderson, One of its Attorneys

Donna R. Henderson (ARDC #1185276)
J. John Henderson (ARDC#1185497)
HENDERSON & HENDERSON, P.C.
700 S. Lewis Avenue, Waukegan, IL  60085
(847) 623-7880      (847) 623-7965 FAX

LIST OF EXHIBITS

A – Orders of Dismissal of additional state litigation

Movant notes that the List of Exhibits attached to Plaintiff's Response is at odds with the body of the Response and the exhibits attached, and Movant has only responded to the Exhibits actually attached and referred to in the Response.